

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

06 NOV -3 AM 11:49

CLERK-ALBUQUERQUE

UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

CIV - 06 - 1071 JB RHS

| | |
|---|---|
| LAWRENCE LANE, On Behalf of Himself and All Others Similarly Situated, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> BARBARA PAGE, SOSIMO S. PADILLA, ) <br> JOE S. CHAVEZ, JOSIE CASTILLO, ) <br> CHARLES V. PENA, GEORGIA BACA, ) <br> TROY K. BENAVIDEZ, RAY MARES, JR., ) <br> RANDOLPH M. SANCHEZ. WESTLAND ) <br> DEVELOPMENT COMPANY, INC. and ) <br> SUNCAL COMPANIES GROUP, ) <br> ) <br> Defendants. ) <br> ) | No. _____ <br><br> <u>CLASS ACTION</u> <br><br> COMPLAINT FOR VIOLATION OF §§14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934 AND SEC RULE 14a-9 |

## OVERVIEW OF THE ACTION

1. This is a stockholder class action brought by plaintiff on behalf of the holders of the common stock of Westland Development Company, Inc. ("Westland" or the "Company") against Westland, certain of its senior officers and directors and its merger partner SunCal arising out of defendants' dissemination of a false and misleading proxy statement in violation of §§14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "1934 Act"), and Securities and Exchange Commission ("SEC") Rule 14a-9 promulgated thereunder. Plaintiff hereby seeks to enjoin defendants from holding the shareholder vote on the acquisition of Westland by SunCal (the "Acquisition") until Westland shareholders are provided with a definitive proxy statement that is not false and misleading. The shareholder vote on the merger is scheduled to take place on Monday November 6, 2006 at 10:00 am.

2. Westland holds title to tens of thousands of acres of land conveyed by the King of Spain in 1692 in what was known as the Atrisco Land Grant. The descendants of the original grantees of the Atrisco Land Grant include plaintiff and are Westland's other shareholders. Westland's assets include 54,500 to 57,000 acres of undeveloped property, master planned communities, retail properties, water rights and untapped oil and gas rights in and around Albuquerque. Defendants acknowledge that the "size and location of these real estate holdings adjacent to Albuquerque, New Mexico, *makes these unique assets.*"

3. On or about September 20, 2006, the defendants caused a definitive proxy statement (the "Proxy Statement") to be filed with the SEC and mailed to Westland shareholders, a true and correct copy of which is attached hereto as Exhibit A. In the Proxy Statement, defendants misrepresented and/or omitted material information which will preclude Westland shareholders from casting an informed vote on the Acquisition. The Proxy Statement omits a number of material facts necessary to make statements made therein not false or misleading, including:

(a)   the fact that the Individual Defendants have no basis for stating at page 29 of the Proxy Statement that the Acquisition is "advisable, fair to and in the best interest of Westland and its shareholders," as defendants have admitted *under oath* that they do not know the value of the land, water or mineral rights that form the core of Westland's assets.

(b)   the fact that certain directors' interests are in conflict with shareholders due to promised positions with the successor entities. For example, no disclosure has been made as to how Barbara Page will be compensated by SunCal after the Merger even though she has told Company counsel, Thad Turk, that she will work under SunCal's direction after the Merger. Similarly, the Proxy Statement omits how much in annual or bonus compensation the Individual Defendants who are being rewarded for their approval of the SunCal Merger with trusteeships and/or directorships on the Boards of the Atrisco Heritage Foundation or Atrisco Oil & Gas, LLC are being paid for serving in these roles.

(c)   the facts necessary to make the Proxy Statement's disclosure of the defendants' financial interest not false and misleading as unbeknownst to Westland shareholders, the Individual Defendants are diverting nearly $8 million in proceeds to themselves via the receipt of 25,000 shares of Class B stock that were unlawfully issued.

(d)   the fact that, contrary to the representation at page 16 of the Proxy Statement that Westland expects to retain and compensate approximately 90 proxy solicitors, Page has testified that Westland has not hired *any* proxy solicitors at all. Instead, contrary to the direct vote of Westland's shareholders as expressed and voted upon at the June 2006 shareholder meeting, only the buyer, *SunCal*, has retained proxy solicitors who are secretly receiving lucrative payments for delivering votes in favor of the Acquisition.

(e) facts that clarify the circumstances pursuant to which defendant Padilla will be paid $350,000 by SunCal by as part of a "consulting agreement" with Westland. According to the Proxy Statement, upon certain undefined events Padilla will be entitled to seven times his annual salary. Without sufficient facts to understand the circumstances by which Padilla will be entitled to severance, shareholders have no way of knowing to what degree Padilla may be aligned with SunCal.

(f) Westland Senior Executive Brent Lesley rendered a $377 million valuation of Westland at the behest of the Board *after* defendants agreed to sell Westland for approximately $160 million such that the Westland Board did *not* have "every reason to believe the post-signing market check would be effective in maximizing shareholder value," as stated at page 27 of the Proxy Statement.

4. Defendants' are attempting to consummate the shareholder vote on the SunCal Merger on Monday, November 6, 2006, requires immediate judicial intervention to ensure that the shareholder vote is not held unless and until disclosure is made to Westland shareholders of material information necessary to enable them to cast a fully informed vote on the Acquisition.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over all claims asserted herein pursuant to 28 U.S.C. §1331, as plaintiff's claims arise in part out of the laws of the United States, §27 of the 1934 Act, §14(a) and §20(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder.

6. Venue is proper in this County because Westland is located in this County, certain of the defendants reside in this County, defendants' wrongful acts occurred in this County and the harm caused by defendants was felt in this County.

## PARTIES

7.  Plaintiff Lawrence Lane is an heir of the Atrisco Land Grant, and since at least 2001 has been the owner of approximately 50 shares of Westland common stock.

8.  Defendant Westland is a New Mexico corporation that was formed in 1967. Westland is the successor in interest to tens of thousands of acres of land granted to the inhabitants and settlers of the Community of Atrisco in 1692 by the King of Spain.

9.  Defendant Barbara Page ("Page") is Westland's President and CEO. She has served on the Westland Board for most of the past 30 years. After being challenged about her use of a secret agreement to divert assets to herself in connection with the proposed sale of Westland to SHNM Acquisition Corp ("SHNM") pursuant to the SHNM Merger Agreement, Page agreed to waive certain rights thereunder. Page has now, however, changed her position in connection with the SunCal Merger Agreement and demanded from SunCal its agreement that she receive seven times her salary on the date of termination (or more than $750,000), plus all employment benefits if she is "involuntarily terminated."[1] Page has, and continues to have, direct oversight over all of the corporate misconduct detailed herein.

10. Defendant Sosimo S. Padilla ("Padilla") has been a Westland Director for 35 years and currently serves as the Chairman of the Board. Like Page, Padilla initially agreed to waive his rights to a severance payment under the SHNM Merger Agreement. In connection with the negotiation of the SunCal Merger Agreement, however, Padilla demanded that SunCal agree that he receive seven times his annual salary on the date of termination (or more than $350,000) if he is

---

[1] "Involuntarily Terminated" is not defined in the Proxy, making it impossible for shareholders to determine from the public filings whether this provision is simply an incentive to reward Page and Padilla for their agreement to engage in the unlawful conduct alleged herein or a legitimate corporate provision.

"involuntarily terminated." Padilla had, and continues to have, direct oversight over all of the corporate misconduct detailed herein.

11. Defendant Joe S. Chavez ("Chavez") has been a Westland Director for over ten years and has served as Westland's Secretary-Treasurer since 2003. As Secretary-Treasurer of the Company, Chavez has custody of the books and records of the Company and is in charge of the preparation and filing of reports, financial statements, and returns as required by law.

12. Defendant Josie Castillo ("Castillo") has been a Westland Director for over 20 years.

13. Defendant Charles V. Pena ("Pena") has been a Westland Director for 10 years.

14. Defendant Georgia Baca ("Baca") was selected and appointed as a Westland Director by defendants Page, Padilla, Chavez, Castillo and Pena in 2004. Baca has been employed by Westland for over a decade.

15. Defendant Troy K. Benavidez ("Benavidez") was selected and appointed as a Westland Director by defendants Page, Padilla, Chavez, Castillo and Pena in 2004. Benavidez and his family have held a so-called "grazing lease" on *all* of Westland's land for many decades.

16. Defendant Ray Mares, Jr. ("Mares") was selected and appointed as a Westland Director by defendants Page, Padilla, Chavez, Castillo and Pena in 2004. Page, Padilla, Chavez, Castillo and Pena have longstanding social or business relationships with Mares and his family, including with Mares' father who served as a Westland director for over 20 years, from 1973 until he died in 1996. Mares faces liability for acquiring 1,035 shares in August 2005, while in possession of inside information regarding the potential sale of Westland, and for failing to report such acquisitions to the SEC. The SEC is currently investigating insider selling at Westland.

17. Defendant Randolph M. Sanchez ("Sanchez") was selected and appointed as a Westland Director by defendants Page, Padilla, Chavez, Castillo and Pena in 2004.

18.     Defendant SunCal is comprised of SCC Acquisition Corp. ("SCC"), a Delaware corporation, formed solely for the purpose of acquiring Westland. SCC is wholly-owned by SCC Acquisitions, Inc., a California corporation ("SCC Acquisitions") which is a member of the SunCal Companies Group. SunCal acquires and develops property for sale to leading residential and commercial builders.

19.     Each of the defendants participated in the preparation, review and dissemination of the false Proxy Statement complained of herein. The Individual Defendants abdicated their obligation to Westland and its shareholders to file and distribute to plaintiff and the class a Proxy Statement that was not false and misleading.

## CLASS ACTION ALLEGATIONS

20.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all Westland shareholders, and their successors-in-interest, except the defendants named herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the defendants.

21.     This action is properly maintainable as a class action.

22.     The Class of stockholders is so numerous that joinder of all members is impracticable. Westland has approximately 794,927 outstanding shares held by approximately 6,100 shareholders.

23.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, but are not limited to, whether, in connection with the SunCal Merger:

(a)     whether defendants violated §14(a) and §20(a) of the 1934 Act and SEC Rule 14a-9 by filing a materially misleading Proxy Statement; and

(b) whether plaintiff and the other members of the Class have been damaged as a result of the conduct detailed herein.

24. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff does not have any interests adverse to the Class.

25. Plaintiff is committed to prosecuting this action, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class.

26. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class.

27. Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

28. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## THE FALSE AND MISLEADING PROXY STATEMENT

29. On July 19, 2006, SunCal and Westland entered into a merger agreement for the sale of Westland at a price of $315 per share for the 794,927 outstanding proper shares of Westland. On September 20, 2006, defendants caused Westland to file the Proxy Statement setting the shareholder vote on the SunCal Merger for November 6, 2006. Federal law requires that proxy materials shall not contain statements which are false or misleading with respect to any material fact, or which omit to state any material fact necessary in order to make the statements therein not false or misleading. The Proxy Statement violates §14(a) because it misrepresents and/or omits material facts.

**Defendants Lack Any Basis for Claiming that the Acquisition Is Fair**

30. The Proxy Statement omits the fact that defendants have admitted they lack any basis for claiming that the Acquisition is "advisable and fair to, and in the best interest of Westland and Westland shareholders," as the true facts are:

(a) that despite agreeing to sell Westland three different times in the last year, the Individual Defendants – amazingly – still do not know what the Company they're selling is worth as not once have the Individual Defendants attempt to determine: (i) what Westland's current land holdings were; (ii) what all of Westland's property was worth; (iii) what Westland's water rights were worth; or (iv) what Westland's oil and gas rights were worth;

(b) that when asked what Westland did to determine what its assets were or what they were worth in 2005, defendant Page responded in a deposition in another action that: (i) "I don't know that we did anything in 2005"; (ii) that she did "not recall" knowing the value of the land or ever hiring an appraiser to set forth the value of the land; (iii) has "no knowledge" of attempting to ascertain the value of Westland's oil reserves;

(c) that defendants Mares, Padilla and Sanchez have admitted in sworn testimony that they did not even attempt to engage in an active sales process or make any affirmative efforts to maximize shareholder value; and

(d) that, as testified to by a number of the Individual Defendants in another action, defendants then entered into merger agreements with ANM, SHNM and SunCal without any basis to know whether they were fair to Westland shareholders and without first receiving a fairness opinion.

**Failure to Fully Disclose Conflicts of Interest**

31. The Proxy Statement contains a section titled, "Interest of Westland's Officers and Directors in the Merger." However, the Proxy Statement omits the fact that certain directors' interests are in conflict with shareholders due to promised employment with the successor entity or

- 8 -

entities under SunCal's control, Barbara Page who has told Company counsel, Thad Turk, that she will be working under SunCal's direction after the Merger.

32. The Proxy Statement also omits the facts that, unbeknownst to Westland shareholders, Westland's directors are diverting approximately $8 million to themselves via payment for 25,000 Class B shares which were not lawfully issued.

33. The Proxy Statement omits facts necessary for shareholders to understand the degree of defendant Padilla's self-interest as a result of his consulting agreement with Westland. According to the Proxy Statement, Padilla will be paid $350,000 by SunCal by as part of a "consulting agreement" with Westland under certain undefined circumstances. It is material to shareholders to understand the circumstances pursuant to which Padilla's severance and salary provisions are triggered. The Proxy Statement does not provide that information.

34. The Proxy Statement also omits the fact that defendants and other current and former Westland directors and officers collectively own 41,035 shares of Westland Class B stock and will receive more than $12.9 million of the consideration being paid in the SunCal Acquisition as a result thereof.

35. Defendants also failed to disclose in the Proxy Statement how much at least 4 Westland directors will receive as effectively lifelong trustees of the Atrisco Heritage Foundation[2] and/or as directors of Atrisco Oil & Gas, LLC, entities that are being granted hundreds of millions of

---

[2] The Foundation "will be operated exclusively for the purposes of (i) promoting and preserving the ancestral and cultural heritage of the general community of Albuquerque, New Mexico and the shareholders of Westland prior to the merger, (ii) promoting and preserving the history of the church and the cemeteries located on Westland's property, (iii) promoting and preserving the ancestral history of the Atrisco Heirs, and (iv) preserving and strengthening the community of the heirs of the Atrisco Land Grant through community development, scholarship grants *and such other activities as the trustees may deem to be within the purposes described above.*" Proxy at 53.

dollars in assets in connection with the SunCal Merger.[3] The trustees who will control the Foundation will be appointed by the defendants and "shall serve in office until such trustee resigns or is replaced by a majority of the trustees." Moreover, "[s]uccessor trustees will be appointed by a majority of the remaining trustees." Thus, the SunCal Merger will effectively ensure that defendants will be ensconced in lifelong positions in connection with and as part of recommending the SunCal Merger. Yet, the Proxy Statement does not disclose how much these trustees will be paid, nor how the trustees will spend (or keep) the proceeds given to them. Whether or not the Westland board members who are being rewarded with lifelong positions as trustees of the Foundation or as directors of Atrisco Oil & Gas LLC with lucrative annual retainers is information that is unquestionably material to shareholders' decision who would want to "give more careful scrutiny to the terms of the merger" as a result thereof.[4]

36.     Unfortunately, Westland's shareholders have endured at least twenty years of improper, fraudulent and defective shareholder votes. State and federal courts in New Mexico have repeatedly been forced to issue temporary restraining orders and/or preliminary injunctions for conduct similar to what is currently transpiring. In *Pena v. Westland Dev. Co.*, 761 P.2d 438 (N.M. Ct. App. 1988), the New Mexico Court of Appeals entered a temporary restraining order enjoining the counting of proxy votes and appointed a special master where allegations of voting irregularities

---

[3]     Atrisco Oil & Gas LLC will own a 100% interest in rents and royalties and shareholders will retain a 50% undivided interest in all minerals on Westland's current real property holdings. As with the Foundation, defendants Mares, Benavidez, Chavez and Sanchez will be paid undisclosed amounts in connection with their continued control over Atrisco Oil & Gas LLC.

[4]     Notably, only *after* the SunCal Proxy was distributed and 70% of the votes were tendered did defendants first communicate the identity of the directors of Atrisco Oil & Gas LLC to Westland's shareholders. Defendants still have not disclosed the identity of the Foundation's trustees – despite their in-house counsel's testimony that defendants know this information.

were made. In *Westland Dev. Co. v. Romero*, Civ. No. 87-1175HB (1987), this Court enjoined a shareholders' meeting one day prior to the vote on the basis of material omissions and misstatements in the proxy materials.

## COUNT I

### Against the Individual Defendants, Westland and SunCal for Violations of §14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder

37. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

38. SEC Rule 14a-9 (17 C.F.R. §240.14a-9 ("Rule 14a")), promulgated pursuant to §14(a) of the Securities Exchange Act of 1934, provides:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

39. During the Relevant Period, the Individual Defendants and SunCal disseminated the false and misleading Proxy Statement which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

40. As stated herein, the Proxy Statement contained untrue statements of material facts and omitted to state material facts necessary to make the statements that were made not misleading in violation of §14(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder.

41. As a result of the defendants' preparation, review and dissemination of the Proxy Statement, Westland's shareholders have suffered substantial harm. By reason of such misconduct,

the Individual Defendants are liable pursuant to §14(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder. The defendants have also failed to correct the Proxy Statement and the failure to update and correct false statements is also a violation of §14(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder.

42. The written communications made by the defendants described herein constitute violations of Rule 14a-9 and §14(a) because such communications are materially misleading, were provided in a negligent manner, will have a direct and clear impact on the voting process and will impact the outcome of the vote itself.

43. Defendants' violations of Rule 14a-9 and §14(a) entitle plaintiff to injunctive relief because plaintiff will suffer irreparable injury unless the injunction issues, in that the shareholder voting procedures has been impermissibly infected, the threatened injury to the moving party outweighs any damage to the opposing party, the injunction, if issued, will not be adverse to the public interest and a substantial likelihood exists that plaintiff will prevail on the merits.

### COUNT II

### For Violation of §20(a) of the 1934 Act Against the Individual Defendants and SunCal

44. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45. The Individual Defendants acted as controlling persons of Westland within the meaning of §20(a) of the 1934 Act. By reason of their positions as officers and/or directors of Westland, and their ownership of Westland stock, these defendants had the power and authority to cause, and did in fact cause, Westland to engage in the wrongful conduct complained of herein. By reason of such conduct, the Individual Defendants are liable pursuant to §20(a) of the 1934 Act.

46. SunCal is a controlling person of Westland and the Individual Defendants within the meaning of §20(a) of the 1934 Act. By reason of its contractual obligations with Westland and the

Individual Defendants, SunCal is a control person of Westland and the Individual Defendants as they cannot do any of the following without the written consent of SunCal: increase the compensation of any employee, acquire material assets, enter into any material contracts, commit to any capital expenditures in excess of $1 million, make any loans or incur any indebtedness or commence any new line of business. Thus, SunCal is liable pursuant to §20(a) of the 1934 Act.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

A.  Declaring this action to be a proper class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class;

B.  Requiring Westland to make corrective filings with the SEC;

C.  Declaring that communications distributed by defendants to shareholders are materially misleading, in violation of Rule 14a-9 and §14(a) and are invalid;

D.  Enjoining defendants from conducting a vote on the SunCal Merger until shareholders are provided with a Proxy Statement that is not false and misleading;

E.  Awarding plaintiff and the member of the Class compensatory and/or rescissory damages against the Individual Defendants, including, but not limited to pre-judgment and post-judgment interest, as well as reasonable attorneys' fees, expert witness fees and other costs;

F.  Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, and any appropriate state law remedies; and

G.  Awarding such other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: November 3, 2006

LAW OFFICES OF NICHOLAS
KOLUNCICH III, LLC
NICHOLAS KOLUNCICH III

*Nicholas Koluncich III* (signature)

NICHOLAS KOLUNCICH III
6501 Americas Parkway NE
One Park Square – Suite 620
Albuquerque, NM 87107-5375
Telephone: 505/881-2228
505/881-4288 (fax)

LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
DARREN J. ROBBINS
RANDALL J. BARON
AMBER L. ECK
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

PROVOST UMPHREY LAW FIRM, L.L.P.
JOE KENDALL
3232 McKinney Avenue, Suite 700
Dallas, TX 75205
Telephone: 214/744-3000
214/744-3015 (fax)

Attorneys for Plaintiff

Document1

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

LAWRENCE LANE ("Plaintiff") declares:

1. Plaintiff has reviewed the complaint and authorized its filing.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action: plaintiff holds 48 shares of Westland stock.

5. During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as detailed below:


6. The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 3rd day of November, 2006.

*/s/ Lawrence Lane*
LAWRENCE LANE

WESTLAND DEVELOPMENT CO.

*THE EXHIBITS ATTACHED TO THIS PLEADING ARE TOO VOLUMINOUS TO SCAN.. SAID EXHIBITS ARE ATTACHED TO THE ORIGINAL PLEADING IN THE CASE FILE WHICH IS LOCATED IN :*

*THE RECORDS DEPARTMENT
CLERK'S OFFICE
U.S. DISTRICT COURT......*