IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LAWRENCE LANE, On Behalf of Himself,
and All Others Similarly Situated,

        Plaintiff,

FRANK MARTIN,

        Intervenor-Plaintiff,

vs.                                     No. CIV 06-1071 JB/ACT

BARBARA PAGE, SOSIMO PADILLA,
JOE CHAVEZ, JOSIE CASTILLO, CHARLES
PENA, GEORGIA BACA, TROY BENAVIDEZ,
RAY MARES, JR., RANDOLPH SANCHEZ, and
WESTLAND DEVELOPMENT CO., INC.

        Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on: (i) Lawrence Lane's Motion for Appointment

as Lead Plaintiff and Approval of His Selection of Lead Counsel, filed January 19, 2007 (Doc.

27)("Motion for Appointment"); (ii) Motion to Intervene to Seek Order that Notice of Pendency of

Action be Republished, filed February 5, 2007 (Doc. 29)("Motion to Intervene"); and (iii) Motion

to Strike as Untimely Docket #35, filed April 17, 2007 (Doc. 36)("Motion to Strike"). The Court

held a hearing on these motions on June 20, 2007. The primary issues are: (i) whether the Court

should appoint Lawrence Lane as lead plaintiff in this litigation; (ii) whether the Court should

approve Lane's selection of Lerach Coughlin Stoia Geller Rudman & Robbins LLP ("Lerach") as

lead counsel in this litigation; (iii) whether the Court should require Lane to republish notice of his

filing of the Complaint in this case and permit new applications for lead plaintiff status; and (iv)

whether the Court should strike Intervenor-Plaintiff Frank Martin's Reply Memorandum in Response to Opposition Motion to Intervene and for Order for Republication of Notice of Pendency of Action Filed on February 23, 2007, filed April 12, 2007 (Doc. 35)("Martin's Reply"), because Martin's filing was untimely. Because the Court must decide the issues Martin wishes it to resolve regardless whether Martin is a party to this litigation, it will dismiss his Motion to Intervene as moot in part. Because the Court believes that Lane is an appropriate plaintiff to manage this litigation, that the notice he published complied with statutory requirements, and that Lerach is competent to represent him in this matter, the Court will grant Lane's Motion for Appointment and deny Martin's Motion to Intervene in part. Because the Court does not believe that considering Martin's Reply will prejudice any of the parties or unnecessarily prolong this litigation, the Court will not strike the reply.

## FACTUAL BACKGROUND

This case is a stockholder class action that Lane, on behalf of himself and the holders of common stock of Westland Development Co. ("Westland"), initiated against Westland, certain of its senior officers and directors, and its merger partner, SunCal Companies Group ("SunCal"). See Complaint for Violation of §§ 14(a) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 14a-9, filed November 3, 2006 (Doc. 1)("Lane's Complaint"). Lane alleges that, on or about September 20, 2006, the Defendants mailed to Westland shareholders a false and misleading proxy statement that misrepresented and/or omitted material facts, and that this proxy statement was used to obtain shareholder approval of the sale of Westland to SunCal. See Memorandum in Support of Lawrence Lane's Motion for Appointment as Lead Plaintiff and Approval of his Selection of Lead Counsel, filed January 19, 2007 (Doc. 28)("Lane's Memorandum"). Lane has chosen Lerach to represent him in this litigation.

There are approximately 6,100 Westland shareholders, most of whom are descendants of recipients of the Atrisco Land Grant and reside in the Albuquerque, New Mexico area. <u>See</u> Motion to Intervene at 2; Memorandum in Further Support of Lawrence Lane's Motion to be Appointed Lead Plaintiff and in Opposition to Frank Martin's "Motion to Intervene" at 13, filed February 22, 2007 (Doc. 30)("Lane's Response").   Transfer of Westland shares is subject to significant restrictions. <u>See</u> Motion to Intervene at 2.  At the time of the shareholder vote on the proposed merger, Lane owned approximately forty-eight shares of Westland stock. <u>See</u> Lane's Memorandum at 3.  Martin owned approximately 721 shares of Westland stock. <u>See</u> Motion to Intervene at 2.

## PROCEDURAL BACKGROUND

Lane filed his Complaint initiating this action on November 3, 2006.  On November 20, 2006, Lane caused notice of this action to be published in <u>Investor's Business Daily</u> and the <u>Albuquerque Journal</u>.  <u>See</u> Lane's Response at 3; Lane's Memorandum, Exhibit A, Notice in Investor's Business Daily (dated November 20, 2006)("IBD Notice"); Lane's Response, Exhibit B, Notice in Albuquerque Journal (dated November 20, 2006)(" AJ Notice").  That notice advised the class of the existence of the securities class action lawsuit against the Defendants and their right to move to serve as lead plaintiff.

> Notice is hereby given that an action has been filed in the United States District Court for the District of New Mexico, Case No. CIV-06-1071-JB(RHS), on behalf of a proposed class of Westland Development Company, Inc. ("Westland") shareholders and their successors-in-interest, other than defendants or those associated with defendants, who were holders of record on September 18, 2006 and eligible to vote at the November 6, 2006 shareholder meeting.

> The complaint charges Westland and certain of its officers and directors with violations of federal securities laws for the failure to provide shareholders with all material information in the merger proxy statement (the "Proxy") seeking shareholder approval of the merger (the "Merger") between Westland and a wholly-owned

subsidiary of SCC Acquisition Inc., a member of SunCal Companies Group (collectively "SunCal"). Among other things, plaintiff alleges that the Proxy was false and misleading, having misrepresented and/or omitted the following: (i) that the defendant directors who recommended the Merger had no understanding of the value of Westland's assets, such as the value of Westland's land, water and mineral rights; (ii) that the director defendants' interests were in conflict with those of shareholders due to payments they would receive from SunCal-related entities post-Merger; (iii) undisclosed expressions of interest for more than the agreed-to Merger consideration; and (iv) payments made to Proxy solicitors by SunCal.

Pursuant to 15 U.S.C. § 78u-4, if you are a member of the proposed class described above, you may move the Court, not later than 60 days from the date of this Notice, to serve as lead plaintiff, however, you must meet certain legal requirements. If you wish to discuss this action or have any questions concerning this Notice or your rights or interest with respect to these matters, please contact plaintiff's counsel, Darren Robbins or Randall Baron of Lerach Coughlin at 800/449-4900 or 619/231-1058, or via e-mail at wsl@lerachlaw.com.

IBD Notice. The content of the notice published in the <u>Albuquerque Journal</u> was identical to that published in <u>Investor's Business Daily</u>. <u>Compare</u> IBD Notice, <u>with</u> AJ Notice.

No party filed a motion to serve as lead plaintiff in the sixty days subsequent to the publication of Lane's notice. On January 19, 2007, the sixtieth day after the filing of his notice, Lane filed his Motion for Appointment. Lane moves the Court for an order: (i) appointing him as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(3)(B) ("PSLRA"); and (ii) approving Lane's selection of Lerach as lead counsel. <u>See</u> Motion for Appointment at 1.

On February 5, 2007, after the date that responses to Lane's Motion for Appointment were due and before the Court ruled on Lane's motion, Martin filed his Motion to Intervene seeking leave to intervene to oppose Lane's appointment as lead plaintiff. <u>See</u> Motion to Intervene. Martin argues that: (i) Lane's notice is defective because it did not contain the required information to allow shareholders who may be interested in acting as lead plaintiff to step forward; (ii) that Lane is not

suited to be lead plaintiff because he has a negligible financial stake in the outcome of this action; and (iii) that Investor's Business Daily, while appropriate for a case involving a publicly traded stock, was not appropriate for this case. See Motion to Intervene at 2. Martin seeks an order directing Lane to republish the November 20, 2006 notice to correct deficiencies in that notice and to permit new applications for lead plaintiff status from shareholders with a larger financial stake in the litigation. See id.

Lane filed his brief in response to Martin's Motion to Intervene and in further support of his Motion for Appointment on February 22, 2007. On March 22, 2007, Lane filed a notice indicating that the time for further briefing had expired and that both motions were ripe for adjudication. See Notice of Completion of Briefing at 1, filed March 22, 2007 (Doc. 33).

On April 12, 2007, after Lane had filed his notice of completion of briefing, but before the Court had ruled on the motions of Lane and Martin, Martin filed a reply to Lane's Response. See Martin's Reply. Lane moved to strike Martin's Reply as untimely on April 17, 2007. On May 18, 2007, Lane filed a second notice of completion of briefing indicating that both of the parties' substantive motions and Lane's Motion to Strike were ripe for adjudication. See Second Notice of Completion of Briefing, filed May 18, 2007 (Doc. 40).

## PSLRA

Congress passed the PSLRA in 1995 with the intent to reform the method by which plaintiffs' lawyers initiated and prosecuted securities class actions. See Herrgott v. U.S. Dist. Ct. for the N. Dist. of Cal. (In re Cavanaugh), 306 F.3d 726, 729 (9th Cir. 2002)(noting Congress passed the PSLRA because it was dissatisfied with the system of selecting lead plaintiffs in securities litigation "by a race to the courthouse"). The PSLRA reflects Congress' desire that securities class

actions should be client-driven, rather than lawyer-driven, and attempts to empower a lead plaintiff, rather than the class' counsel, to control the litigation.  See In re Molson Coors Brewing Co. Sec. Litig., 233 F.R.D. 147, 149 n.4 (D. Del. 2005)(noting that Congress' goal in enacting the PSLRA was to make class action securities cases "more client-driven and less lawyer-driven"); In re Razorfish, Inc., 143 F. Supp. 2d 304, 308 (S.D.N.Y. 2001)(stating that the PSLRA "contemplates that client-driven litigation will replace lawyer-driven litigation").

The PSLRA requires the plaintiff in securities class actions to publish notice of the action, within twenty days of the date on which the complaint is filed, "in a widely circulated national business-oriented publication or wire service." 15 U.S.C. § 78u-4(a)(3)(A)(i).  The notice must advise potential class members: (i) "of the pendency of the action, the claims asserted therein, and the purported class period;" and (ii) "that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." 15 U.S.C. § 78u-4(a)(3)(A)(i)(I)-(II).  If more than one action under the PSLRA is filed, only the plaintiff that filed first is required to publish notice.  See 15 U.S.C. § 78u-4(a)(3)(A)(ii).  The notice that the PSLRA requires does not replace, but rather, is in addition to, any notice that the Federal Rules of Civil Procedure otherwise require.  See 15 U.S.C. § 78u-4(a)(3)(A)(iii).

The process for selecting the lead plaintiff in a PSLRA action "begins once the first plaintiff files an action and publicizes the pendency of the action, the claims made, and the purported class period." In re XM Satellite Radio Holdings Sec. Litig., 237 F.R.D. 13, 17 (D.D.C. 2006).  Class members wishing to serve as lead plaintiff must file motions within sixty days of the first plaintiff's publication of notice. See Richardson v. TVIA, Inc., Nos. C-06-06304 RMW & C-06-07307 RMW,

2007 U.S. Dist. LEXIS 28406, at *9 (N.D. Cal. Apr. 16, 2007).  Courts have refused to consider the applications and supporting materials that movants submit outside this sixty-day window.  See In re NYSE Specialists Sec. Litig., 240 F.R.D. 128, 138 (S.D.N.Y. 2007); In re Telxon Corp. Sec. Litig., 67 F. Supp. 2d 803, 818 (N.D. Ohio 1999)("The plain language of the statute precludes consideration of a financial loss asserted for the first time in a complaint, or any other pleading, for that matter, filed after the sixty (60) day window has closed.").  The PSLRA's "strict time requirements" are designed "to ensure that the lead plaintiff is appointed at the earliest possible time, and to expedite the lead plaintiff process."  In re Telxon Corp. Sec. Litig., 67 F. Supp. 2d at 818-19. See In re XM Satellite Radio Holdings Sec. Litig., 237 F.R.D. at 17 ("The intent of this requirement is to promote the early appointment of a lead plaintiff.").

Within ninety days of the date of the first plaintiff's publication of notice, the court "shall consider any motion made by a purported class member in response to the notice, . . . and shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interest of class members."  15 U.S.C. § 78u-4(a)(3)(B)(i). The appointment of a lead plaintiff is subject to the rebuttable presumption that the "most adequate plaintiff" is the plaintiff that: (i) has filed the complaint in the action or made a timely motion to be considered lead plaintiff in response to the notice the first plaintiff published; (ii) has the largest financial interest in the relief that the class seeks; and (iii) otherwise satisfies the requirements of rule 23 of the Federal Rules of Civil Procedure.   15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc).  Once a plaintiff has made a prima facie showing that the presumption applies, "the process turns adversarial and other plaintiffs may present evidence that disputes the lead plaintiff's prima facie showing."  Herrgott v. U.S. Dist. Ct. for the N. Dist. of Cal. (In re Cavanaugh),

306 F.3d at 730.  To rebut the presumption, another member of the purported class must prove that the presumptively most adequate plaintiff will not fairly and adequately protect the class' interest or is subject to unique defenses that will prevent the plaintiff from adequately representing the class. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb).

Finally, the PSLRA vests authority in the lead plaintiff, subject to court approval, to select and retain counsel to represent the class.  See 15 U.S.C. § 78u-4(a)(3)(B)(v).  Courts recognize that, while the appointment of counsel is subject to the court's approval, "[s]electing a lawyer in whom a litigant has confidence is an important client prerogative and . . . the [PSLRA] clearly leaves the choice of class counsel in the hands of the lead plaintiff."  Herrgott v. U.S. Dist. Ct. for the N. Dist. of Cal. (In re Cavanaugh), 306 F.3d at 734.  Indeed, the Act "evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention."  In re Cendant Corp. Litig., 264 F.3d 201, 276 (3d Cir. 2001).

## RULE 23

Rule 23(a)(3) requires that the named representative's claims be typical of the class' claims. See Fed R. Civ. P. 23(a)(3).  The typicality requirement ensures that absent class members are adequately represented by evaluating whether the named plaintiff's interests are sufficiently aligned with the class' interest.  See Baby Neal ex rel. Kanter v. Casey, 43 F.3d 48, 57 (3d Cir. 1994); Nicodemus v. Union Pac. Corp., 204 F.R.D. 479, 490 (D. Wyo. 2001).  The essential characteristics of the named plaintiffs' claims must be the same or similar as the class' claims, but they need not be identical; the United States Court of Appeals for the Tenth Circuit has affirmed that factual differences among some of the class members will "not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial

theory." Adamson v. Bowen, 855 F.2d 668, 676 (10th Cir. 1988). See Penn v. San Juan Hosp., Inc.,

528 F.2d 1181, 1189 (10th Cir. 1975)("It is to be recognized that there may be varying fact situations

among individual members of the class and this is all right so long as the claims of the plaintiffs and

the other class members are based on the same legal or remedial theory."). Accordingly, differences

in the amount of damages will not defeat typicality. See Harrington v. City of Albuquerque, 222

F.R.D. 505, 511 (D.N.M. 2004)(Hansen, J.).

To protect the due process interests of unnamed class members -- who are bound by any

judgment in the action -- rule 23(a)(4) requires that the named representative provide fair and

adequate protection for the class' interests. See Matsushita Elec. Indus. Co. v. Epstein, 516 U.S.

367, 379 n.5 (1996)(characterizing adequacy of representation as a constitutional requirement); Lile

v. Simmons, 143 F. Supp. 2d 1267, 1277 (D. Kan. 2001)("Due process requires that the Court

'stringently' apply the competent representation requirement because class members are bound by

the judgment (unless they opt out), even though they may not actually be aware of the

proceedings."). The Tenth Circuit has identified two questions relevant to the adequacy of

representation inquiry: (i) whether the named plaintiffs and their counsel have any conflicts with

other class members; and (ii) will the named plaintiffs and their counsel vigorously prosecute the

action on behalf of the class. See Rutter & Wilbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 1187-88

(10th Cir. 2002). In considering this second question, the experience and competence of the attorney

representing the class may inform the court's analysis. See Lopez v. City of Santa Fe, 206 F.R.D.

285, 289-90 (D.N.M. 2002)(Vazquez, J.).

## RULE 24

Rule 24(a) grants a third-party the right to intervene in an existing action when the third-party

"claims an interest relating to the property or transaction which is the subject of the action."  Fed. R. Civ. P. 24(a)(2).  A third-party plaintiff may invoke rule 24(a) when the interest it seeks to protect is "direct, substantial and legally protectable."  Coalition of Ariz./N.M. Counties for Stable Econ. Growth v. Dep't of the Interior, 100 F.3d 837, 840 (10th Cir. 1996).  The right is not unconditional, however, and a third party wishing to intervene must show that: (i) its application is timely; (ii) its interest relates to the property or transaction that is the subject of the primary action; (iii) the disposition of the action without the third-party's participation may impair its ability to protect its interest subsequently; and (iv) existing parties do not adequately represent its interest.  See Utahns for Better Transp. v U.S. Dep't of Transp., 295 F.3d 1111, 1115 (10th Cir. 2002); Ute Distrib. Corp. v. Norton, 43 Fed. Appx. 272, 275 (10th Cir. 2002).

Pursuant to rule 24(b), a third-party may permissively intervene, at the court's discretion, when its "claim or defense and the main action have a question of law or fact in common."  Fed. R. Civ. P. 24(b)(2).  Allowing a party to intervene under rule 24(b) is a matter within the district court's sound discretion.  See United Nuclear Corp. v. Cranford Ins. Co., 905 F.2d 1424, 1427 (10th Cir. 1990).  In determining whether to permit a third party to intervene under rule 24(b), the court must consider whether  "the intervention would unduly delay or prejudice the adjudication of the rights of the original parties."  Nieto v. Kapoor, 61 F. Supp. 2d 1177, 1195 (D.N.M. 1999)(Vazquez, J.)(quoting Fed. R. Civ. P. 24(b)(2)).  Although not listed as a factor in the text of rule 24(b), the Tenth Circuit has indicated that whether existing parties are adequately representing the third party's interest is a relevant factor in evaluating an application for permissive intervention.  See Arney v. Finney, 967 F.2d 418, 421 (10th Cir. 1992).

<u>ANALYSIS</u>

At this point in the proceedings, Lane is the only plaintiff to have filed a complaint or a timely motion to be appointed lead plaintiff in this class action. Martin, however, alleges that Lane's notice was defective and requests leave to intervene to seek an order requiring Lane to republish his notice so that other interested parties may move the Court to be appointed lead plaintiff in this litigation. Because the Court must decide the issues Martin wishes it to resolve regardless whether Martin is a party to this litigation, the Court need not decide whether he may intervene in this action. Because the Court believes that the notice Lane published complied with statutory requirements, that Lane is an appropriate plaintiff to manage this litigation, and that Lerach is competent to represent him in this matter, the Court will grant Lane's Motion for Appointment. Because the Court does not believe that considering Martin's Reply will prejudice any of the parties or unnecessarily prolong this litigation, the Court will not strike the reply.

**I.      <u>THE COURT WILL NOT STRIKE MARTIN'S REPLY.</u>**

Lane filed his brief in response to Martin's Motion to Intervene and in further support of his Motion for Appointment on February 22, 2007. Pursuant to rule 7.6(a) of the Court's local rules, "[a] reply must be served within fourteen (14) calendar days after service of the response." D.N.M.LR-Civ. 7.6(a). Martin did not file his reply to Lane's response, however, until April 12, 2007 -- after Lane filed his first notice of completion of briefing. Lane argues that the Court should strike Martin's Reply so as not to permit indifference to its local rules. <u>See</u> Motion to Strike at 1. Lane contends that considering Martin's Reply would have the effect of unfairly prolonging the selection of a lead plaintiff in this litigation, a process Congress intended to be conducted expeditiously. <u>See</u> <u>id.</u>

The Court notes, as a preliminary matter, that a motion to strike is limited to challenges to pleadings, and is not properly directed at a motion or memorandum.  See Searcy v. Soc. Sec. Admin., No. 91-4181, 1992 U.S. App. LEXIS 3805, at *5 (10th Cir. Mar. 2, 1992)("[T]here is no provision in the Federal Rules of Civil Procedure for motions to strike motions and memoranda."); 2 Moore's Federal Practice, § 12.37[2] (Matthew Bender 3d ed.)("Only material included in a 'pleading' may be the subject of a motion to strike, and courts have been unwilling to construe the term broadly.  Motions, briefs, or memoranda, objections, or affidavits may not be attacked by the motion to strike.").  The Court acknowledges, however, that, because Martin's Reply is untimely, the Court could, consistent with its local rules, choose not to consider it.

On the other hand, the Court has the authority to waive the application of any local rule to avoid injustice.  See D.N.M.LR-Civ. 1.7; Hernandez v. George, 793 F.2d 264, 266-67 (10th Cir. 1986)(citing the District of New Mexico's local rules and noting that "[t]his court has also recognized that district courts have discretion in applying local rules").  "[A]lthough district judges must follow local rules when adherence furthers the policies underlying the rules, they have discretion in applying and interpreting local rules."  Hernandez v. George, 793 F.2d at 267.  Because of the procedural posture of this case, and the timing in which the Court is reviewing the parties' substantive motions, the Court does not believe that considering Martin's Reply will prejudice any of the parties or unnecessarily prolong this litigation.  Martin had a right to file a timely reply; that he filed a late reply does not give him any strategic advantage that he otherwise would not have.  Moreover, the Court set a hearing after the parties filed all briefs on these motions.  Not only has Lane been able to use his motion to strike as a surreply to Martin's Reply, but, at the hearing, the Court gave the parties all the time they wanted to make any arguments they wanted.  See Transcript

-12-

of Hearing at 4:16-20 (Court)(taken June 20, 2007)("Transcript").[1]  Accordingly, pursuant to its authority under the local rules and Tenth Circuit case law, and consistent with the Court's preference for deciding the parties' motions on the merits rather than on procedural technicalities, the Court will consider Martin's Reply.

## II.   THE COURT NEED NOT DECIDE WHETHER MARTIN MAY INTERVENE IN THIS ACTION.

Martin contends that he is entitled to intervene as of right, because he has an interest in the transaction that is the subject of the class action that Lane filed and because, as a practical matter, his interest may be impaired if he is not permitted to participate.  See Motion to Intervene at 1-2 (citing Fed. R. Civ. P. 24(a)).  To intervene, Martin must demonstrate that: (i) his application is timely; (ii) his interest relates to the property or transaction that is the subject of the primary action; (iii) the disposition of the action without his participation may impair his ability to protect his interest subsequently; and (iv) existing parties do not adequately represent his interest.[2]  See Utahns for Better Transp. v U.S. Dep't of Transp., 295 F.3d at 1115; Ute Distrib. Corp. v. Norton, 43 Fed. Appx. at 275.

The Court believes that Martin has submitted his application to intervene at a point

---

[1]The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

[2]The Court notes that rule 24(c) also requires a party seeking to intervene submit with its motion "a pleading setting forth the claim or defense for which intervention is sought," Fed. R. Civ. P. 24(c), and that Martin has not submitted such a pleading.  At the hearing on these motions, however, Martin's counsel stated that he did not submit a pleading because his pleading would be substantially similar to the one which Lane has already filed, and that Lane's complaint sufficiently outlines the issues at play in this litigation.  See Transcript at 44:10-22 (Kick).  Based on the representation of Martin's counsel at the hearing, and because the Court believes that it will have to consider the sufficiency of the notice Lane published irrespective whether it permits Martin to intervene, the Court will overlook his technical non-compliance with rule 24(c).

sufficiently early in the proceedings that it is timely, and that he, as a class member in the underlying action, possesses an interest in the property or transaction that is the subject of the primary action. Moreover, because Martin, as a class member, will be bound by the result of the litigation Lane initiated, an unfavorable disposition in the action will impair, if not preclude, his ability to protect his interests subsequently.  The more difficult question is whether Lane is adequately representing Martin's interest in the action.

The Court understands that Lane is not representing Martin's interest in being lead plaintiff in this litigation.  Martin has not moved to be named lead plaintiff, however, and his motion to intervene seeks only to intervene in the class action that Lane has filed.  The Court is not convinced that Lane is not adequately representing Martin's interest in the underlying class action.  Martin concedes that the claims Lane articulates in his Complaint, and the relief he seeks, are substantially identical to the positions he would take were he lead plaintiff.  See Transcript of Hearing at 44:10-22 (Kick).  Lane has hired competent counsel with extensive experience in prosecuting class actions. In sum, to the extent that Martin's Motion to Intervene is premised on Lane's inability to represent his interests in the class action, the Court does not find it persuasive.

Nevertheless, the Court need not decide whether Martin may intervene to decide the issues he wishes the Court to resolve.  Regardless whether Martin is a party to this litigation or not, the Court will have to decide whether the notice Lane published complies with the PSLRA's requirements, whether Lane is the most adequate plaintiff to lead this litigation, and whether his choice of Lerach to represent him is appropriate.  To the extent that Martin's motion requests permission to intervene in this litigation, the Court will dismiss the motion as moot.

**III.    THE NOTICE THAT LANE PUBLISHED IN THIS MATTER COMPLIED WITH THE PSLRA'S REQUIREMENTS.**

Martin challenges both the sufficiency of the content of Lane's notice and the adequacy of his method of publication.  Martin asserts that Lane's notice is defective because it lacks essential and required information, and because his method of publication was not adequate to reach the purported class' members.  Because the Court believes that Lane's notice complied with the applicable requirements, the Court does not believe the notice was defective and will not require Lane to republish his notice.

**A.    LANE'S NOTICE DID NOT LACK REQUIRED INFORMATION.**

The PSLRA's plain language requires that a notice of a securities class action must advise potential class members: (i) of the pendency of the action; (ii) of the claims asserted therein; (iii) of the purported class period; and (iv) that other class members may move the court to be appointed lead plaintiff within sixty days of the date of publication.  See 15 U.S.C. § 78u-4(a)(3)(A)(i)(I)-(II). These elements are consistent with the due process requirement that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).

The notice that Lane published indicates that an action has already been filed against Westland in the United States District Court for the District of New Mexico.  See IBD Notice.  The notice explains that the Complaint charges the Defendants "with violations of federal securities laws for the failure to provide shareholders with all material information in the merger proxy statement (the "Proxy") seeking shareholder approval of the merger (the "Merger") between Westland and

[SunCal]," and enumerates five misrepresentations and/or omissions upon which the allegations are premised.  Id.  The notice describes the proposed class as Westland "shareholders and their successors-in-interest . . . who were holders of record on September 18, 2006 and eligible to vote at the November 6, 2006 shareholder meeting."  Id.  The notice informs members of the proposed class that they may move the Court to be appointed lead plaintiff within sixty days of the date of the notice's publication.  See id.  In sum, the notice satisfies all of the content requirements that the PSLRA expressly requires.

Nevertheless, Martin cites to a number of federal district court cases in which plaintiffs have been required to republish their notice of pending action and argues that, consistent with those decisions, Lane's notice lacks essential information.  The Court disagrees.  The Court believes that the notice publications in each of the decisions Martin cites can be meaningfully distinguished from the notice Lane issued.

In In re Lucent Technologies Securities Litigation, 194 F.R.D. 137 (D.N.J. 2000), the Honorable Alfred J. Lechner, Jr., United States District Judge for the District of New Jersey, ordered a plaintiff to republish a notice that he characterized as "a bare bones notification."  Id. at 147.  Judge Lechner noted that, although the notice at issue in In re Lucent Technologies Securities Litigation informed potential class members that an action had been filed against Lucent Technologies, it stated only that the complaint alleged violations of certain statutory and regulatory provisions and referred only to "'a series of materially false and misleading statements' without detailing either the content or dates of such statements."  Id.  Judge Lechner observed that the notice did not provide the caption of the case, the name of the plaintiffs, the name of the judge to whom the case had been assigned, the address of the court, or the vicinage within the District of New Jersey where the suit was venued.

-16-

See id. Judge Lechner concluded that the notice "would leave an interested class member wondering about not only the details of the complaint but where it, he or she could file the mentioned motion to seek appointment as lead plaintiff." Id.

In California Public Employees' Retirement System v. Chubb Corp., 127 F. Supp. 2d 572 (D.N.J. 2000), the Honorable Garrett E. Brown, Jr., United States District Judge for the District of New Jersey, required a plaintiff to republish notice after pointing out many of the same flaws that Judge Lechner referenced in In re Lucent Technologies Securities Litigation. Judge Brown reasoned that, although the notice in California Public Employees' Retirement System v. Chubb Corp. was lengthier than the notice issued in In re Lucent Technologies Securities Litigation, it did not include the caption of the case, the docket number, the judge to whom the case was assigned, the vicinage in which the judge sits, or the address of the court. See Cal. Pub. Employees' Ret. Sys. v. Chubb Corp., 127 F. Supp. 2d at 579.

Finally, in Holley v. Kitty Hawk, Inc., 200 F.R.D. 275 (N.D. Tex. 2001), the Honorable Jorge A. Solis, United States District Judge for the Northern District of Texas, determined that notice a plaintiff provided was inadequate and granted the plaintiff's motion to be appointed lead plaintiff conditioned upon the plaintiff republishing adequate notice. Judge Solis found the notice lacking because it failed to include the style of the case, the case number, an indication of which location within the Northern District of Texas the case was venued, or the statutory provisions under which the class' claims arose. See id. at 278-79. Moreover, Judge Solis criticized the notice because, although it informed class members that they needed to "take appropriate action" within sixty days if they desired to be appointed lead plaintiff, it did not inform them that they could move the court directly without involving the plaintiff's counsel. Id. at 278.

The Court believes that the notice in each of the cases that Martin cites can be distinguished from the notice that Lane published in this case.  The notice Lane filed lists the case number and the case number includes the initials of the presiding judge.  The notice provides a description of Lane's allegations and a number of examples of misrepresentation and/or omissions sufficient for a class member to understand the subject of the Complaint.  The notice informs class members of their right to move the Court directly should they wish to be appointed lead plaintiff.  Finally, although the Court recognizes that the district judges in the cases Martin cites expressed some concern that the notices in their cases did not identify the vicinage of the court in which the cases were venued, the Court does not share that concern.  While judges in the District of New Mexico sit in Albuquerque, Santa Fe, and Las Cruces, a movant wishing to file a motion to be appointed lead plaintiff could file that motion, and obtain more information about the case, in any of the Court's locations by referencing the case number that Lane's notice listed.

Drafting notices for class members is a bit of an art.  The balance is to give the members adequate information for them to make informed decisions without overwhelming them with so much information that they do not see the most important information or do not even read the notice because of its length.  A third party can almost always find fault with a notice, arguing it should contain other information.  In the PSLRA, however, Congress has statutorily specified what the notice should contain.  The Court is reluctant to add requirements that Congress did not choose unless necessary to address due process concerns.

Lane's notice contains all the information that the PSLRA expressly requires.  The Court also believes that the notice provides enough information for a potential class member to determine the subject matter of Lane's Complaint and assist him in obtaining more information about the case

-18-

directly from the Court.  The Court concludes that Lane's notice is not defective; it contains sufficient content and does not lack essential information.

### B.    LANE'S METHOD OF PUBLICATION IS NOT INADEQUATE.

Martin concedes that "Investor's Business Daily is a publication suitable for publication of a Lead Plaintiff notice under the PSLRA because it is a nationally circulated business oriented publication, and is read by sophisticated investors."  Motion to Intervene at 5 (citing Marsden v. Select Med. Corp., No. CIV 04-4020, 2005 U.S. Dist. LEXIS 714, at **16-17 (E.D. Pa. 2005)). Martin argues, however, that because Westland shares were sold on a closed market subject to significant transfer restrictions, and the shareholders were geographically concentrated in Albuquerque, "the notice should have been published in a publication that investors in New Mexico would be likely to read."  Motion to Intervene at 5.  In his written motion, Martin argues that, "[a]t a minimum, Lane should have ensured that the notice was available on line for the many Westland investors who presumably searched the Internet for information about the merger, and published in a manner considerate of the geographic concentration and non-publicly traded status of the shareholders and stock."  Id. at 6.  Martin also contends that, because many of the Westland shareholders are Spanish speakers, the notice should have been published in Spanish.  See id.

Martin maintains that, because of the significant numbers of Westland shares he was holding, and because he objected to the merger, he was actively searching for notice of litigation involving the Westland merger with SunCal.  See Martin's Reply at 13; Transcript at 12:17-19; 18:1-4 (Kick). Martin's counsel represents that he conducted searches of the internet for a notice that included Investor's Business Daily, but none of the internet searches revealed Lane's notice.  See Martin's Reply at 13; Transcript at 12:15-16 (Kick).  Martin has not cited any statutory authority or referenced

any caselaw, however, that would require Lane to publish his notice on-line or in Spanish.  In any case, a practical hurdle for Martin's argument is that Lane in fact published his notice "in a publication that investors in New Mexico would be likely to read" and "in a manner considerate of the geographic concentration and non-publicly traded status of the shareholders and stock."  Motion to Intervene at 5-6.  Simultaneous to his publication in <u>Investor's Business Daily</u>, Lane published the identical notice in the <u>Albuquerque Journal</u>, the most widely read newspaper in the geographic area in which the overwhelming majority of class members reside.  Moreover, the Court has reviewed the placement of the notice in the <u>Albuquerque Journal</u> -- which was published in the newspaper's Business section -- and finds that it was not in a particularly obscure location nor printed in small or difficult-to-read print.

Again, the Court is reluctant to add requirements relating to where the notice should be published that Congress has not mandated.  If Congress wanted the notice printed in multiple languages or on the internet, it could require such.  Instead, it required publication "in a widely circulated national business-oriented publication or wire service."  15 U.S.C. § 78u-4(a)(3)(A)(i).  Moreover, Lane pragmatically addressed any due process issues by publishing the notice in the largest local newspaper's business section.

The Court concludes that Lane's method of publication was sufficient to satisfy the PSLRA's distribution requirements.  The notice was published within twenty days of the date Lane filed his Complaint and his dual publication in <u>Investor's Business Daily</u> and the <u>Albuquerque Journal</u> was adequately tailored to account for the geographic concentration of the class members in this case.  Lane's notice was not defective because of its method of publication.

## IV.   LANE SATISFIES PSLRA'S REQUIREMENTS FOR MOST ADEQUATE PLAINTIFF, AND THE COURT WILL APPOINT HIM LEAD PLAINTIFF.

The Court must consider any motion a purported class member makes in response to the notice and appoint a lead plaintiff that it determines to be most capable of adequately representing the interests of the class members.  The appointment of a lead plaintiff is subject to the rebuttable presumption that the "most adequate plaintiff" is the plaintiff that: (i) has filed the complaint in the action or made a timely motion to be considered lead plaintiff in response to the notice the first plaintiff published; (ii) has the largest financial interest in the relief that the class seeks; and (iii) otherwise satisfies the requirements of rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc).

At this point in the proceedings, Lane is the only plaintiff to have filed a complaint or a timely motion to be appointed lead plaintiff in this class action.  See Transcript at 13:8-10 (Kick)(conceding that Martin is not moving to be appointed as lead plaintiff at this point in the proceedings).  Consequently, of those eligible to be appointed lead plaintiff, he has the largest financial interest in the relief that the class seeks.  Nevertheless, Martin asserts that Lane has a negligible financial stake in the outcome and argues that, because of this minimal stake, Lane will not have the incentive to monitor the litigation closely.  See Motion to Intervene at 6.

While the PSLRA does not identify any minimum financial stake a lead plaintiff must have, the Court acknowledges that appointing a plaintiff with little stake in the litigation might undermine Congress' intent to make securities class actions more client-driven.  The Court does not agree, however, that Lane's financial stake is negligible.  The parties agree that the value of Lane's shares is approximately $15,000.00.  See Transcript at 13:4-5 (Kick); 22:7-8 (Robbins).  The Court does

not believe that this amount is properly characterized as a de minimis interest.  Furthermore, Lane

has been actively involved in this litigation and in litigation in related state court cases.  See id. at

33:9-34:3 (Robbins); Lane's Response at 4 n.3.  The Court does not believe that the appointment of

Lane as lead plaintiff will contravene the policy underlying the PSLRA.

In addition to possessing a significant financial interest in the relief that the class seeks, Lane

must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  With respect to the class representatives' qualifications, rule

23(a) requires their claims to be typical of the claims of the class, and that they be willing to fairly

and adequately protect the class' interest.  See Fed. R. Civ. P. 23.

Typicality exists when "the claims of the class representative and class members are based

on the same legal or remedial theory."  Adamson v. Bowen, 855 F.2d at 676.  The dispositive

questions of law and fact upon which Lane's claims rest are identical to those upon which the claims

of the other class members depend.  Specifically, the relevant questions are: (i) whether the

Defendants violated sections 14(a) and 20(a) of the Securities Exchange Act of 1934 and/or

Securities and Exchange Commission rule 14a-9 by filing a false or materially misleading proxy

statement; and (ii) whether the members of the class have been damaged as a result of the

Defendants' conduct.  There is no indication that Lane's claims are premised on any unique theory,

or involve particularized facts, that would make them atypical as compared to other class members.

In determining whether Lane will adequately represent the class' interest, the Court must

consider: (i) whether Lane and his counsel have any conflicts with other class members; and (ii)

whether Lane and his counsel will vigorously prosecute the action on behalf of the class.  See Rutter

& Wilbanks Corp. v. Shell Oil Co., 314 F.3d at 1187-88.  In evaluating the latter question, the

experience and competence of Lerach, the counsel that Lane has selected, informs the Court's analysis.

The Court does not believe that Lane's interests are antagonistic to other class members or that he is subject to unique defenses that do not apply to the class as a whole.  Further, Lane's past participation in this litigation, and in the related state court litigation, suggest that he will vigorously prosecute the action on the class' behalf.  Finally, in selecting Lerach as his counsel, Lane has chosen counsel with the experience and competence to represent the class adequately.  <u>See</u> Lane's Memorandum, Exhibit C, Lerach Coughlin Stoia Geller Rudman & Robbins LLP Firm Resume.

Lane satisfies rule 23's requirements and all of the PSLRA's prerequisites for appointment as lead plaintiff in this action.  The Court will appoint Lane lead plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B).

## V.   THE COURT WILL APPROVE LANE'S SELECTION OF LERACH AS LEAD COUNSEL.

While the Court recognizes that the appointment of counsel is subject to its approval, the PSLRA "evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." <u>In re Cendant Corp. Litig.</u>, 264 F.3d at 276. Even without this presumption, however, the Court would have no concern appointing Lerach as lead counsel in this case.  The Court is familiar with Lerach's practice.  Moreover, at the hearing on these motions, Martin's counsel conceded that, if the Court were to appoint Lane lead plaintiff, Lerach "is . . . one of the preeminent securities firms in the country and clearly they're qualified to handle the securities matter."  Transcript at 20:17-19 (Kick).

The Court is confident that, by granting this motion, the members of the class will receive

high caliber legal representation from Lerach.  The Court will approve Lane's selection of Lerach as lead counsel in this matter.

**IT IS ORDERED** that Lawrence Lane's Motion for Appointment as Lead Plaintiff and Approval of His Selection of Lead Counsel is granted.  The Court appoints Plaintiff Lawrence Lane as Lead Plaintiff and approves his selection of Lerach Coughlin Stoia Geller Rudman & Robbins LLP as Lead Counsel for the class.  To the extent that Martin's Motion to Intervene to Seek Order that Notice of Pendency of Action be Republished requests to intervene in this action the motion is dismissed as moot.  To the extent that Martin's motion requests the Court order Lane to republish his notice, the motion is denied.  Lane's Motion to Strike as Untimely Docket #35 is denied.

_____
UNITED STATES DISTRICT JUDGE

-24-

*Counsel:*

Nicholas Koluncich
Albuquerque, New Mexico

-- and --

Joe Kendall
Provost Umphrey Law Firm LLP
Dallas, Texas

-- and --

Darren J. Robbins
Randall J. Baron
Amber L. Eck
Lerach Coughlin Stoia Geller, Rudman & Robbins LLP
San Diego, California

> *Attorneys for the Plaintiffs*

Taras Kick
The Kick Law Firm, APC
Los Angeles, California

-- and --

Turner W. Branch
Richard A. Sandoval
Branch Law Firm
Albuquerque, New Mexico

> *Attorneys for the Intervenor-Plaintiff*

Douglas G. Schneebeck
Brian K. Nichols
Modrall Sperling Roehl Harris & Sisk PA
Albuquerque, New Mexico

> *Attorneys for the Defendants Westland Development Company, Inc.*
> *and SunCal Companies Group*

Lily H. Shanks
Evan P. Singer
Jones Day
Dallas, Texas

     *Attorneys for the Defendant SunCal Companies Group*

Juan L. Flores
Sheehan Sheehan & Stelzner
Albuquerque, New Mexico

     *Attorneys for Barbara Page, Sosimo Padilla, Joe Chavez,*
        *Josie Castillo, Charles Pena, Georgia Baca, Troy Benavidez,*
        *Ray Mares, Jr., and Randolph Sanchez*