UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| LAWRENCE LANE, On Behalf of Himself and All Other Similarly Situated, | ) ) ) | No. Civ-06-1071-JB-ACT |
| Plaintiff, | ) ) ) | <u>CLASS ACTION</u> |
| vs. | ) ) ) ) | DIRECTORS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS |
| BARBARA PAGE, et al., | ) ) ) | |
| Defendants. | ) ) | |

AKIN GUMP STRAUSS HAUER & FELD LLP
PAUL R. BESSETTE
JESSE Z. WEISS
KIMBERLY G. DAVIS
YUSUF A. BAJWA
300 West 6th Street, Suite 2100
Austin, TX  78701
(512) 499-6200
(512) 499-6290 (Fax)

SHEEHAN, SHEEHAN & STELZNER, P.A.
LUIS G. STELZNER
JUAN FLORES
707 Broadway N.E., Suite 300
Post Office Box 271
Albuquerque, NM  87103
(505) 247-0411
(505) 842-8890 (Fax)

Counsel for Defendants

**TABLE OF CONTENTS**

I. THE PSLRA APPLIES TO PLAINTIFFS' SECTION 14(A) CLAIMS, AND PLAINTIFFS HAVE FAILED TO PLEAD THEIR SECTION 14(A) CLAIM WITH THE REQUISITE PARTICULARITY. ...................................................................1

    A. Plaintiffs Have Failed to Plead with the Requisite Particularity Under § 78u-4(b)(1) of the PSLRA. ...............................................................................2

    B. Plaintiffs Have Failed to Plead a Strong Inference of State of Mind Under § 78u-4(b)(2) of the PSLRA. ...............................................................................3

II. SECTION 14(A) CLAIMS DO NOT ALLOW GROUP PLEADING. ...............................5

III. PLAINTIFFS' MISMANAGEMENT CLAIMS CANNOT SUPPORT A SECTION 14(A) CLAIM. ......................................................................................................6

IV. THE PROXY DISCLOSURES WERE NOT FALSE, AND ANY ALLEGED OMISSIONS WERE IMMATERIAL. .....................................................................................6

    A. Plaintiffs failed to allege that the Directors' belief that the SunCal merger was in the shareholders' best interest was objectively and subjectively false when made. ...................................................................................................6

    B. Plaintiff's allegations regarding Westland's value and the 2005 Fairness Opinion lack particularity, and any alleged omission is immaterial. .......................7

    C. The Proxy disclosed all material information related to the Directors' interests in the SunCal merger. ...............................................................................9

    D. The Directors did not have a duty to disclose speculative oil and gas transactions that might have occurred in the future. .............................................10

    E. The Directors did not have a duty to disclose the TIDD. .....................................11

    F. The Proxy plainly disclosed that both SunCal and Westland participated in the Proxy solicitations. ......................................................................................12

V. CONTROL PERSON LIABILITY MUST BE DISMISSED. ...........................................12

VI. CONCLUSION .................................................................................................................12

# TABLE OF AUTHORITIES

## CASES

*Adams v. Kinder-Morgan, Inc.*,
    340 F.3d 1083 (10th Cir. 2003) ...................................................................................2

*Atmel Corp. Deriv. Litig., No. C 06-4592*,
    2007 WL 2070299 (N.D. Cal. July 16, 2007)..............................................................5

*Berlin Fin. LTD v. MPW Indus. Serv. Group, Inc.*,
    No. 06-1371, 2008 WL 161309 (S.D. Oh. Jan. 15, 2008) ............................................2

*Bertoglio v. Texas Intern. Co.*,
    488 F. Supp. 630 (D. Del. 1980)................................................................................11

*Bond Opportunity Fund v. Unilab Corp.*,
    No. 99 Civ. 11074 (JSM), 2003 WL 21058251 (S.D.N.Y. May 9, 2003).................2, 3

*Britton v. Parker*,
    Nos. 06-CV-01797, 06-CV-1922, 06-CV-02017, 2007 WL 2871003
    (D. Colo. Sept. 26, 2007) .............................................................................................1

*Cal. Pub. Emps.' Retirement Sys. v. Chubb Corp.*,
    394 F.3d 126 (3rd Cir. 2004) ...................................................................................2, 4

*City of Phila. v. Fleming Cos., Inc.*,
    264 F.3d 1245 (10th Cir. 2001) .................................................................................12

*Ellibee v. Posey*,
    No. 02-3233-JAR, 2006 WL 1133210 (D. Kan. April 26, 2006) .................................2

*Feerer v. Amoco Prod. Co.*,
    242 F.3d 1259 (10th Cir. 2001) ...................................................................................2

*Flynn v. Bass Bros. Enter., Inc.*,
    744 F.2d 978 (3d Cir. 1984).........................................................................................8

*Gerstle v. Gamble-Skogmo, Inc.*,
    478 F.2d 1281 (2d Cir. 1973).......................................................................................8

*Gould v. Am Hawaiian S.S. Co.*,
    535 F.2d 761 (3d Cir. 1976).........................................................................................3

*Grossman v. Novell, Inc.*,
    120 F.3d 1112 (10th Cir. 1997) ...................................................................................9

*In re AOL Time Warner, Inc. Sec. and ERISA Litig.*,
    381 F. Supp. 2d 192 (S.D.N.Y. 2004) ................................................................................2

*In re JPMorgan Chase & Co. Sec. Litig.*,
    No. 06-4674, 2007 WL 4531794 (N.D. Ill. Dec. 18, 2007) .............................................2, 3, 4

*In re McKesson HBOC, Inc. Sec. Litig.*,
    126 F. Supp. 2d 1248 (N.D. Cal. 2000) ..............................................................................4, 7

*In re Mesa Airlines, Inc. Sec. Litig.*,
    No. 94-690, 1996 WL 33419894 (D. N.M. May 31, 1996) .................................................5

*In re Premiere Techs., Inc. Sec. Litig.*,
    No. 1:98-CV-1804-JOF, 2000 WL 33231639 (N.D. Ga. Dec. 8, 2000) ..............................5

*In re Qwest Comms. Int'l, Inc. Sec. Litig.*,
    387 F. Supp. 2d 1130 (D. Colo. 2005) ................................................................................5

*In re US West, Inc. Sec. Litig.*,
    201 F. Supp. 2d 302 (D. Del. 2002) ....................................................................................2

*In re Verisign Inc. Deriv. Litig.*,
    531 F. Supp. 2d 1173 (N.D. Cal. 2007) ...............................................................................4

*In re Zoran Corp. Deriv. Litig.*,
    511 F. Supp. 2d 986 (N.D. Cal 2007) ..................................................................................4

*Kas v. Fin. Gen. Bankshares, Inc.*,
    796 F.2d 508 (D.C. Cir. 1986) .............................................................................................6

*Kennedy v. Venrock Assocs.*,
    348 F.3d 584 (7th Cir. 2003) ...............................................................................................3

*Knollenberg v. Harmonic, Inc.*,
    No. 03-16238, 2005 WL 2980628 (9th Cir. Nov. 8, 2005) .............................................2, 4, 7

*Kohn v. American Metal Climax, Inc.*,
    458 F.2d 255 (3d Cir.1972) ..................................................................................................8

*Little Gem Life Sciences LLC v. Orphan Medical, Inc.*,
    No. 06-1371, 2007 WL 2695787 (D. Minn. Sept. 13, 2007) ............................................2, 4

*New Jersey v. Sprint Corp.*,
    ---F. Supp. 2d---, No. 03-2071-JWL, 2008 WL 191780
    (D. Kan. Jan. 23, 2008) ....................................................................................................1, 2

*Resource Exploration v. Yankee Oil and Gas, Inc.*,
 566 F. Supp. 54 (N.D. Ohio 1983)..........................................................................................8

*Santa Fe Indus., Inc. v. Green*,
 430 U.S. 462 (1977)...............................................................................................................6

*Seinfeld v. Becherer*,
 461 F.3d 365 (3d Cir. 2006)...................................................................................................9

*Shaw v. Digital Equipment Corp.*,
 82 F.3d 1194 (1st Cir. 1996)..................................................................................................8

*Shidler v. All Am. Life & Fin. Corp.*,
 775 F.2d 917 (8th Cir. 1985) .................................................................................................3

*South Coast Services Corp. v. Santa Ana Valley Irrigation Co.*,
 669 F.2d 1265 (9th Cir. 1982) ............................................................................................8, 9

*Virginia Bankshares, Inc. v. Sandberg*,
 501 U.S. 1083, 1095-96, (1991) ..........................................................................................10

## STATUTES

15 U.S.C. § 78u-4(b)(1) ...............................................................................................1, 2, 3, 4
15 U.S.C. § 78u-4(b)(2) ...............................................................................................1, 3, 4, 5

I.  **THE PSLRA APPLIES TO PLAINTIFFS' SECTION 14(A) CLAIMS, AND PLAINTIFFS HAVE FAILED TO PLEAD THEIR SECTION 14(A) CLAIM WITH THE REQUISITE PARTICULARITY.**

Plaintiffs erroneously argue that the heightened pleading requirements of the PSLRA do not apply to their Section 14(a) claims.[1] (Lead Plaintiff's Memorandum of Law in Opposition to Directors' Motion To Dismiss ("Opp.") at 4.)  There are only two relevant cases addressing Section 14(a) in the Tenth Circuit, and neither holds that the PSLRA does not apply.[2]  In fact, both cases specifically apply §78u-(4)(b)(1) of the PSLRA to Section 14(a) claims.  *Britton*, 2007 WL 2871003, at *3; *Sprint*, 2008 WL 191780, at *11.  Furthermore, as discussed below, the overwhelming weight of authority plainly holds that the PSLRA applies to Section 14(a) claims.  Curiously, plaintiffs continually complain that the Directors are citing out-of-circuit authority supporting the application of the PSLRA to Section 14(a) claims, and urge this Court to offer no deference.  (Opp. at 4-6.)  Plaintiffs' protestations are greatly weakened by their own reliance on over 25 out-of-circuit cases in support of their claims.  Moreover, it is well-settled that Tenth Circuit courts can look to other circuits for guidance when dealing with issues that are not fully

---

[1] There are two components to the PSLRA's heightened pleading requirements.  The first, § 78u-(4)(b)(1), requires plaintiffs to plead all misstatements and omissions with particularity.  The second, § 78u-(4)(b)(2), requires plaintiffs to allege particularized facts that give rise to a "strong inference" of the required state of mind.  Both of these components apply to claims under § 14(a).

[2] *See New Jersey v. Sprint Corp.*, ---F. Supp. 2d---, No. 03-2071-JWL, 2008 WL 191780 (D. Kan. Jan. 23, 2008); *Britton v. Parker*, Nos. 06-CV-01797, 06-CV-1922, 06-CV-02017, 2007 WL 2871003 (D. Colo. Sept. 26, 2007).  Plaintiffs' suggestion that these two cases hold that the PSLRA does not apply to Section 14(a) claims is simply false.  In *Britton*, the court never held, as plaintiffs argue, that "the PSLRA's heightened pleading requirements ***only apply*** when the claim is grounded in alleged fraudulent conduct." (Opp. 6, n.12. (emphasis added).)  Rather, the court stated that the alleged conduct was grounded in fraud and the PSLRA should apply, but it never considered whether the application of the PSLRA turned on whether the alleged conduct was fraudulent, as plaintiffs here suggest.  *Britton*, 2007 WL 2871003, at *3.  Plaintiffs also opportunistically misconstrue *Sprint*, in which the court did not need to resolve whether the PSLRA's state-of-mind pleading requirement applied to Section 14(a) negligence claims because the plaintiff did not dispute it.  *Sprint*, 2008 WL 191780, at *11.

developed within the Tenth Circuit.  *See, e.g., Feerer v. Amoco Prod. Co.*, 242 F.3d 1259, 1263 n.4 (10th Cir. 2001); *Ellibee v. Posey*, No. 02-3233-JAR, 2006 WL 1133210, at *3 (D. Kan. April 26, 2006).

> A. **Plaintiffs Have Failed to Plead with the Requisite Particularity Under § 78u-4(b)(1) of the PSLRA.**

Courts hold that § 78u-4(b)(1) of the PSLRA, which requires plaintiffs to allege all misstatements and omissions with factual particularity, applies to Section 14(a) claims.[3]  This Court should hold the same.

Plaintiffs cherry-pick from their own authority to argue that, assuming it applies, § 78u-4(b)(1) "simply requires a plaintiff to identify in the complaint specific facts that support the allegation about the misleading nature of the defendant's statement."  (Opp. at 4, quoting *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1098 (10th Cir. 2003).)[4]  But *Adams* goes on to state that plaintiffs' allegations must be "particularly detailed, numerous, plausible, or objectively verifiable . . . before they will support a reasonable belief that the defendant's statements were false or misleading."  *Id.* at *1103.  Moreover, when "plaintiffs contend that the defendants had access to facts contrary to those stated in the Proxy materials, they must specifically identify the reports or statements containing this information."  *Bond Opportunity Fund v. Unilab Corp.*, No.

---

[3] *Sprint*, 2008 WL 191780, at *11; *Knollenberg v. Harmonic, Inc.*, No. 03-16238, 2005 WL 2980628, at *6-7 (9th Cir. Nov. 8, 2005); *Cal. Pub. Emps.' Retirement Sys. v. Chubb Corp.*, 394 F.3d 126,144-45 (3rd Cir. 2004); *In re AOL Time Warner, Inc. Sec. and ERISA Litig.*, 381 F. Supp.2d 192, 213 (S.D.N.Y. 2004); *In re US West, Inc. Sec. Litig.*, 201 F. Supp. 2d 302, 305-6 (D. Del. 2002); *In re JPMorgan Chase & Co. Sec. Litig.*, No. 06-4674, 2007 WL 4531794, at *7 (N.D. Ill. Dec. 18, 2007); *Berlin Fin. LTD v. MPW Indus. Serv. Group, Inc.*, No. 06-1371, 2008 WL 161309, at *6 (S.D. Oh. Jan. 15, 2008)*; Little Gem Life Sciences LLC v. Orphan Medical, Inc.*, No. 06-1371, 2007 WL 2695787, at *3 (D. Minn. Sept. 13, 2007).

[4] Plaintiffs rely on *Adams* even though it dealt with a Section 10(b) claim, not a Section 14(a) claim.

99 Civ. 11074 (JSM), 2003 WL 21058251, at *4 (S.D.N.Y. May 9, 2003).[5] Applying these pleading standards, it is evident that plaintiffs have failed to meet them. For example, as discussed in the Directors' Motion to Dismiss ("MTD"), the Amended Complaint ("AC") is lacking *particularized* factual allegations supporting *any* of the alleged misstatements or omissions. (*See* MTD 13-26.) Absent this necessary detail, plaintiffs' claims must fail.

### B. Plaintiffs Have Failed to Plead a Strong Inference of State of Mind Under § 78u-4(b)(2) of the PSLRA.

Section 78u-4(b)(2) of the PSLRA requires plaintiffs to state facts with particularity that give rise to a strong inference of the required state of mind. Plaintiffs are plain wrong when they argue that § 78u-4(b)(2) does not apply to Section 14(a) claims.[6] (Opp. 6.) All relevant sections of the PSLRA commence with the phrase "*[i]n any private action arising under this [Act],*" 15 U.S.C. §§ 78u-4(b)(1), (2) (emphasis added), and the PSLRA contains no exception for claims based in negligence. *In re JPMorgan*, 2007 WL 4531794, at *7. Although circuits are split on this issue, the majority of courts considering this issue, *including plaintiffs' own authority*, have

---

[5] Despite the fact that *Bond* has been cited no less than 201 times in court opinions from across the country and legal texts, plaintiffs inexplicably state that the Directors "place undue reliance" on this case. (Opp. 4 n.8.)

[6] Plaintiffs try to manufacture a distinction between Section 14(a) claims based in fraud versus claims based in negligence, in hopes of evading the PSLRA requirement. (Opp. 6.) In support of their argument, plaintiffs rely on inapplicable pre-PSLRA authority which has been overturned by subsequent cases, and also erroneously interpret case law. (Opp. 6); *see Kennedy v. Venrock Assocs.*, 348 F.3d 584, 593 (7th Cir. 2003) (court never considered PSLRA); *Shidler v. All Am. Life & Fin. Corp.*, 775 F.2d 917, 927 (8th Cir. 1985) (pre-PSLRA case); *Gould v. Am Hawaiian S.S. Co.*, 535 F.2d 761, 777-78 (3d Cir. 1976) (same). However, the fraud/negligence distinction is irrelevant here because most courts apply the PSLRA to negligence claims. *See infra*, note 7. Furthermore, plaintiffs' claims are based in fraud. (*See* MTD 8.) Nevertheless, there is no Tenth Circuit authority that *requires* a Section 14(a) claim to be grounded in fraud in order for the PSLRA to apply.

held that § 78u-4(b)(2) requires a defendant's state of mind—whether in a negligence or fraud claim—to be pled with particularity in Section 14(a) claims.[7]

Plaintiffs go on to extrapolate from an inapplicable Clean Water Act case to argue that negligence is not a state of mind, and that therefore pleading particularized facts giving rise to a strong inference of negligence is not required. (Opp. 6.) Courts interpreting Section 14(a), however, have made clear that negligence is indeed a state of mind. *Knollenberg v. Harmonic, Inc.*, No. 03-16238, 2005 WL 2980628, at *7 (9th Cir. Nov. 8, 2005); *see also, e.g., In re JPMorgan*, 2007 WL 4531794, at *7 ("Since negligence is a state of mind, the language of the Section (b)(2) by its terms encompasses negligence-based securities actions."). Accordingly, both provisions of the PSLRA requiring heightened pleading standards—§§ 78u-4(b)(1) *and* (b)(2)—apply to plaintiffs' Section 14(a) claims. As shown in the MTD, plaintiffs have failed to allege any strong inference of negligence—or fraud—with the requisite particularity.[8] *See In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1267 (N.D. Cal. 2000) ("[T]he Complaint simply alleges that the Section 14(a) defendants 'acted negligently and without due care in distributing, or causing to be distributed, the Joint Proxy Statement containing the false and misleading statements omissions.' While such general allegations are plainly sufficient under the Federal Rules of Civil Procedure, they fail under the [PSLRA].") (internal citations

---

[7] *Knollenberg*, 2005 WL 2980628, at *6-*7; *Cal. Pub. Empls.' Retirement Sys.*, 394 F.3d at 144-45; *Little Gem*, 2007 WL 2695787, at *3; *In re Zoran Corp. Deriv. Litig.*, 511 F. Supp. 2d 986, 1015 (N.D. Cal 2007); *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1267 (N.D. Cal. 2000); *In re Verisign Inc. Deriv. Litig.*, 531 F. Supp. 2d 1173, 1207 (N.D. Cal. 2007).

[8] Regarding the Directors' state of mind, plaintiffs have alleged only that "[t]he written communications made by the defendants described herein constitute violations of Rule 14a-9 and § 14(a) because such communications are materially misleading and were provided in at least a negligent manner." (AC ¶ 63.)

omitted); *Knollenberg*, 2005 WL 2980628, at *7 (same). Plaintiffs' Section 14(a) claims must be dismissed.

## II.   SECTION 14(A) CLAIMS DO NOT ALLOW GROUP PLEADING.

Without citing to any Section 14(a) cases addressing group pleading, plaintiffs incorrectly contend that group pleading is disallowed only in Section 10(b) claims, not Section 14(a) claims.[9] (Opp. 22.) The PSLRA explicitly requires untrue statements or omissions to be set forth with particularity as to "the defendant" and scienter to be pled as to "each act or omission" sufficient to give "rise to a strong inference that *the defendant* acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2) (emphasis added); *see also Atmel Corp. Deriv. Litig.,* No. C 06-4592, 2007 WL 2070299, at *8 & n.10 (N.D. Cal. July 16, 2007) (assuming without deciding that the PSLRA applies to Section 14(a) claims and indicating that the prior rejection of the "group published pleading doctrine" will be relevant to Section 14(a) claims). Contrary to plaintiffs' argument, whether group pleading occurs under Section 14(a) or Section 10(b) is irrelevant because both sections fall under the PSLRA.[10] Thus, it is axiomatic that group pleading is barred under Section 14(a). *See In re Premiere Techs., Inc. Sec. Litig.*, No. 1:98-CV-1804-JOF, 2000 WL 33231639, at *11 (N.D. Ga. Dec. 8, 2000) (prohibiting group pleading in a

---

[9] Although plaintiffs rely on Section 10(b) cases to support their arguments, they are critical of the Directors' use of Section 10(b) cases. (Opp. 5 n.9.) For example, plaintiffs argue that the Directors have conflated Section 14(a) standards with Section 10(b) fraud claims in applying the limitations of group pleading. (Opp. at 22.) Yet plaintiffs' Tenth Circuit authority in support of group pleading only concerns Section 10(b) claims—not Section 14(a) claims. *See In re Qwest Comms. Int'l, Inc. Sec. Litig.*, 387 F. Supp. 2d 1130 (D. Colo. 2005); *In re Mesa Airlines, Inc. Sec. Litig.*, No. 94-690, 1996 WL 33419894, at *6 (D. N.M. May 31, 1996). Moreover, plaintiffs' reliance on *Qwest* is mistaken, as that case does *not* mention group pleading or whether proxies are subject to "a presumption of collective action." *In re Qwest*, 387 F. Supp. 2d at 1144-45.

[10] Accordingly, the Directors' Section 10(b) cases cited in the Motion to Dismiss are applicable. *See* MTD 7-8.

Section 14(a) claim). Plaintiffs' Section 14(a) claims must be dismissed for impermissible group pleading.[11]

### III. PLAINTIFFS' MISMANAGEMENT CLAIMS CANNOT SUPPORT A SECTION 14(A) CLAIM.

The *Santa Fe* line of cases requires federal courts to dismiss federal securities claims that are merely disguised state-law fiduciary duty claims. *See Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 465 (1977). Plaintiffs argue that *Santa Fe Industries* does not apply because the Directors failed to disclose material conflicts of interest, and thereby violated Section 14(a). (Opp. 14 n.20.) Plaintiffs are correct that nondisclosure of material conflicts of interest can bring a mismanagement claim under the purview of federal securities laws. But here, all alleged conflicts of interests were fully disclosed in the Proxy, and plaintiffs are unable to demonstrate otherwise. (*See* MTD at 19-26.) Thus, there is no basis to avoid dismissal under the *Santa Fe* doctrine. (MTD 8-11.) Plaintiffs have either pure mismanagement claims, which cannot be brought under Section 14(a), or, when they allege that the Directors did not disclose the motives behind their decisions, plaintiffs are impermissibly engaging in "public psychoanalysis about the real motives of corporate officers and directors for reaching a decision." *Kas v. Fin. Gen. Bankshares, Inc.*, 796 F.2d 508, 513 (D.C. Cir. 1986). Neither is a proper Section 14(a) claim.

### IV. THE PROXY DISCLOSURES WERE NOT FALSE, AND ANY ALLEGED OMISSIONS WERE IMMATERIAL.

#### A. Plaintiffs failed to allege that the Directors' belief that the SunCal merger was in the shareholders' best interest was objectively and subjectively false when made.

To state a claim based on allegations that an opinion was false, "plaintiffs must allege 'particularized facts showing that the opinion was both subjectively and objectively false'" when

---

[11] *See* MTD 12-13.

it was made. *Knollenberg*, 2005 WL 2980628, at *7 (citing *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1095-96, (1991)); *see In re McKesson HBOC*, 126 F. Supp. 2d at 1265. Plaintiffs are incorrect in contending that it is enough to allege that a director could not have reasonably believed the opinion. (*See* Opp. 19-20.)

In *Knollenberg*, the Ninth Circuit affirmed dismissal of Section 14(a) claims because "Plaintiffs' Second Amended Complaint is bereft of facts alleged which demonstrate the directors did not believe that the merger was in the 'best interests' at the time they made the recommendation, let alone a 'strong inference' of negligence." 2005 WL 2980628, at *7. Likewise, plaintiffs here have pointed to no contemporaneous facts whatsoever indicating that the Directors objectively and subjectively did not believe that the merger was in the best interests of shareholders.[12] Plaintiffs' claims must be dismissed.

### B. Plaintiff's allegations regarding Westland's value and the 2005 Fairness Opinion lack particularity, and any alleged omission is immaterial.

Plaintiffs argue that the 2005 Fairness Opinion was somehow false and misleading because the same valuation expert issued a 2001 valuation that was allegedly manipulated. (Opp. 8.) Plaintiffs also claim an internal "valuation" allegedly performed by senior management undermines the reliability of the 2005 Fairness Opinion. (Opp. 8-11.) Neither argument saves Section 14(a) claims based on these valuations.

First, taking the allegations regarding the 2001 valuation as true, plaintiffs offer no explanation as to why this would make the 2005 Fairness Opinion—the opinion disclosed in the

---

[12]*See* MTD 13-19.

Proxy—false or misleading. Plaintiffs merely speculate that the 2005 Fairness Opinion must be unreliable because the 2001 valuation is allegedly unreliable.[13] This is insufficient.

Second, plaintiffs argue that an internal "valuation" performed by Brent Lesley should have been disclosed to investors—and that this valuation somehow makes the 2005 Fairness Opinion misleading. (Opp. 8-11.) However, none of plaintiffs' cases discusses the type of information at issue here.[14] Unlike the information in plaintiffs' cases, Lesley's value estimate was an unreliable asset appraisal that should not have been disclosed.[15] It also lacked any indicia of reliability because there are no allegations that Lesley had any training or expertise in real estate valuation or appraisal. *See Flynn*, 744 F.2d at 986 ("In assessing the need to disclose an appraised asset valuation courts have considered several indicia of reliability: the qualifications

---

[13] Furthermore, the unrelated allegations regarding the 2001 valuation are immaterial and need not have been disclosed. Plaintiffs claim that the 2001 valuation was originally $249 per share, and was allegedly manipulated to $87.59. (*See* Opp. 8.) Aside from the fact that this allegation was made without any particularity, it is logically immaterial to reasonable shareholders because they received far more than $249 per share for their stock, and received it four years after this alleged valuation. (*See* MTD 17.)

[14] *See, e.g., Shaw v. Digital Equipment Corp*., 82 F.3d 1194, 1210 (1st Cir. 1996) (concerning disclosure of *current information* about losses the company was incurring in the ongoing quarter); *Flynn v. Bass Bros. Enter., Inc*., 744 F.2d 978, 985-87 (3d Cir. 1984) (concerning reports prepared by a potential buyer on the target's history and operations, including an appraisal of its assets, *to be shared with potential lenders*).

[15] As a matter of public policy, the SEC and the courts generally have not required the inclusion of "appraised asset valuations" and other "soft" information in proxy materials. *See*, *e.g*., *South Coast Services Corp. v. Santa Ana Valley Irrigation Co.*, 669 F.2d 1265, 1271 (9th Cir. 1982); *Gerstle v. Gamble-Skogmo, Inc*., 478 F.2d 1281, 1292-94 (2d Cir. 1973); *Kohn v. American Metal Climax, Inc*., 458 F.2d 255, 265 (3d Cir.1972); *Resource Exploration v. Yankee Oil and Gas, Inc.,* 566 F. Supp. 54, 62-64 (N.D. Ohio 1983). The reasons underpinning the SEC's longstanding policy against disclosure of asset appraisals stem from its concern about the reliability of appraisals, its fear that investors might give greater credence to the appraisals or projections than would be warranted, and the impracticability of the SEC's examining such appraisals on a case by case basis to determine whether they are sufficiently reliable to merit disclosure. *See Gerstle*, 478 F.2d at 1294.

of those who prepared or compiled the appraisal; the degree of certainty of the data on which it was based; the purpose for which it was prepared; and evidence of reliance on the appraisal.").

This is similar to another proxy case, *South Coast Services Corp. v. Santa Ana Valley Irrigation Co.*, 669 F.2d 1265 (9th Cir. 1982). There, during a bidding war the target company's directors hired an expert appraiser to value some of the company's properties, while the board valued the remainder of the properties. *Id.* at 1269-71. The company's proxy disclosed the expert valuations, but not the board's valuation. The Ninth Circuit affirmed the district court's conclusion that the company did not have to disclose the board's appraisal, because the directors were not expert appraisers and no satisfactory basis upon which the estimates were made had been established. *Id*. at 1272.

Like the director's valuation in *South Coast*, Lesley's estimate is precisely the type of "soft information" that should not be disclosed, because of Lesley's lack of expertise and the absence of facts surrounding the basis for the estimate, and its omission is immaterial and cannot support a Section 14(a) claim.[16]

### C.   The Proxy disclosed all material information related to the Directors' interests in the SunCal merger.

Plaintiffs claim that "Westland shareholders were not informed of the substantial benefits that would flow to board members as part of the Merger." (Opp. 12.) But these "benefits" were disclosed in the Proxy, as discussed in the MTD. (MTD 19-22.) Plaintiffs do not address the

---

[16] Plaintiffs claim in a footnote that whether or not the value estimate was "soft information" (and therefore inappropriate for disclosure) is a fact question. Not so. Courts can and do opine on whether information is "soft" in a motion to dismiss context. *See*, *e.g*., *Seinfeld v. Becherer*, 461 F.3d 365, 370-73 (3d Cir. 2006) (upholding dismissal of a § 14(a) lawsuit in part because plaintiff alleged that the defendant improperly omitted a statement of the cost of the stock options, and this information is "soft"); *see also Grossman v. Novell, Inc*., 120 F.3d 1112, 1118 (10th Cir. 1997) ("[C]ourts do not hesitate to dismiss securities claims pursuant to Rule 12(b)(6) where the alleged misstatements or omissions are plainly immaterial.").

Directors' arguments on this issue at all—or the fact that this Court has opined that any conflicts of interest appear to have been disclosed in the Proxy. (MTD 22.)

Plaintiffs further claim that these supposedly undisclosed director benefits were the motivation for their vote in favor of the merger, and that this motivation should have been disclosed. (Opp. 13-14.) First, because the benefits actually were disclosed, plaintiffs' argument that the "motivation" for the deal was undisclosed fails. Moreover, even if the "true motives" of the directors were not disclosed, as explained in the MTD, the Supreme Court has refused to recognize liability based on undisclosed motives. (MTD 19-20); *Virginia Bankshares*, 501 U.S. at 1096 (holding that Section 14(a) claims cannot rest on a "psychological inquiry" into the "undisclosed motive" of a director's decision). Nevertheless, plaintiffs again fail to respond to this argument. (Opp. 13-14.) Taking plaintiffs' allegations as true—that certain employment agreements and board positions were secured in exchange for the Directors' approval and recommendation of the merger—they cannot support a Section 14(a) claim. *Virginia Bankshares*, 501 U.S. at 1096.

### D. The Directors did not have a duty to disclose speculative oil and gas transactions that might have occurred in the future.

Plaintiffs allege that the Proxy was false and misleading because it stated that (1) the management team does not know whether there is oil, gas or other natural resources on Westland property, and (2) the Directors were not aware of any commercially successful drilling on the property. (AC ¶ 52.) However, in their Opposition, they change direction, and instead argue that the Proxy failed to disclose that "at least two entities attempted to enter into leases with Westland prior to the Merger." (Opp. 17.) Plaintiffs cannot re-plead their AC in the Opposition, and as explained fully in the MTD, plaintiffs have offered no allegations that the statements in the Proxy were false or misleading. (MTD 25-26.)

Plaintiffs essentially concede as much in the Opposition. (Opp. 18 (acknowledging that the "statement was literally true").) Therefore, they offer a new argument—that the Directors should have supplemented their disclosures with information about potential leases with Tecton Energy and Savant Resources. (Opp. 17-18.) By arguing that the Directors should have disclosed that two entities were "attempt[ing] to negotiate leases," plaintiffs are contending that the Proxy was obligated to disclose *possible future* business transactions. (AC ¶ 54.) It is unreasonable, however, to require a proxy to disclose the mere possibility of a future transaction without a finalized lease or contract in place. *See Bertoglio v. Texas Intern. Co.*, 488 F.Supp. 630, 640 (D. Del. 1980) ("[W]here a contemplated course of action was merely one of several alternatives receiving consideration, rather than a concrete plan undergoing active implementation, failure to disclose was not a violation of § 14(a) of the Act….").

E.   **The Directors did not have a duty to disclose the TIDD.**

Plaintiffs argue that the Proxy should have been supplemented to disclose the fact that SunCal had arranged to take advantage of an October 2006 Tax Increment Development District ("TIDD"). (Opp. 14-16.) Plaintiffs assert, with no support, that the TIDD would "dramatically reduc[e] the costs" of and "substantially decreases the financial burden of" developing Westland's land—and that this should have been disclosed. (Opp. 15.)

As thoroughly discussed in the MTD, plaintiffs' conclusory TIDD allegations do not allege that *Westland* had the opportunity to take advantage of the TIDD or that the directors were even aware of it. (MTD 24-25.) Plaintiffs respond that, nevertheless, "the availability of the TIDD to SunCal was a synergistic value to Westland shareholders that they had a right to consider." (Opp. 16.)

This argument makes no sense. Taking plaintiffs' allegations as true—that the TIDD was "significant" to SunCal in developing Westland—plaintiffs have not shown how this could

possibly be material to Westland shareholders. It had absolutely no effect on the value of their stock, and plaintiffs do not allege that it did. Any "synergistic value" that could be achieved with the TIDD was to SunCal, not to Westland. The TIDD could not possibly have been material to shareholders, and its omission from the Proxy was appropriate.

     **F.**    **The Proxy plainly disclosed that both SunCal and Westland participated in the Proxy solicitations.**

In an obvious "throwaway" argument, plaintiffs argue that the Proxy misled shareholders to believe that proxy solicitors were employed solely by Westland. (Opp. 19.) It is inconceivable how the language used in the Proxy could be misleading. Plaintiffs have absolutely no response for Directors' argument that the Proxy plainly discloses that "[SunCal] may also be deemed a participant in the solicitations of such proxies." (MTD 26.) In fact, this Court even acknowledged at the preliminary injunction hearing that the issue of proxy solicitors did not meet the materiality standard. (MTD Ex. 1 at 166:19-20.) Nothing has changed since that ruling.

**V.**    **CONTROL PERSON LIABILITY MUST BE DISMISSED.**

As discussed above and in the MTD, plaintiffs have failed to establish a primary violation of the securities laws by the Directors and thus can have no control-person liability under Section 20(a). *City of Phila. v. Fleming Cos., Inc.*, 264 F.3d 1245, 270-71 (10th Cir. 2001). Plaintiffs must properly plead their Section 14(a) claim before their Section 20(a) claim can withstand a motion to dismiss. They have not and their Section 20(a) must be dismissed.

**VI.**    **CONCLUSION**

For these reasons and those stated in the Directors' Motion to Dismiss, the Directors respectfully request that this Court dismiss plaintiffs' AC with prejudice.

DATED:       March ___, 2008.

                                              Respectfully submitted,

                                              Juan L. Flores
Sheehan, Sheehan & Stelzner, P.A.
Post Office Box 271
Albuquerque, New Mexico  87103
(505) 247-0411

*Electronically Filed*

BY:    /s/ Paul R. Bessette

AKIN GUMP STRAUSS HAUER & FELD LLP
Paul R. Bessette
Jesse Z. Weiss
Kimberly G. Davis
Yusuf A. Bajwa
300 W. 6th Street, Suite 2100
Austin, Texas 78701

ATTORNEYS FOR DIRECTOR DEFENDANTS

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 18th day of March, 2008, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Randall J. Baron
Email:  rbaron@csgrr.com

Joe Kendall
Email:  jkendall@provostumphrey.com

Nicholas Koluncich
Email:  nkoluncich@newmexicoclassactions.com

Frank Martin
Email:  rsandoval@branchlawfirm.com

Brian K. Nichols
Email:  bkn@modrall.com

Darren J. Robbins
Email:  darrenr@csgrr.com

Richard A. Sandoval
Email:  rsandoval@branchlawfirm.com, gwilliams@branchlaw.com

Douglas G. Schneebeck
Email:  dschneebeck@modrall.com, susanb@modrall.com

Notice has been delivered by regular mail, postage paid, to:

Amber L. Eck
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
655 W Broadway, Suite 1900
San Diego, CA  92101

                                                  /s/  Paul R. Bessette
                                                  PAUL R. BESSETTE