**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

| | |
|---|---|
| LAWRENCE LANE, On Behalf of Himself, and All Others Similarly Situated,<br><br>Plaintiff,<br><br>- against -<br><br>BARBARA PAGE, SOSIMO S. PADILLA, JOE S. CHAVEZ, JOSIE CASTILLO, CHARLES V. PENA, GEORGIA BACA, TROY K. BENAVIDEZ, RAY MARES, JR., RANDOLPH M. SANCHEZ, WESTLAND DEVELOPMENT COMPANY, INC., SUNCAL COMPANIES GROUP, THE D. E. SHAW GROUP, D. E. SHAW & CO. L.P., D. E. SHAW REAL ESTATE PORTFOLIOS 1, L.L.C. ("DESCO REAL ESTATE"), D. E. SHAW & CO., LLC, D. E. SHAW & Co., INC., D. E. SHAW INVESTMENT GROUP, LLC, D. E. SHAW & CO. II, INC., GEORGE RIZK and ANNE DINNING,<br><br>Defendants. | No. Civ-06-1071-JB-ACT<br><br>(Oral Argument Requested) |

**THE D. E. SHAW DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

HOLLAND & HART LLP
Jefferson Place
110 North Guadalupe, Suite 1
Santa Fe, NM 87501
(505) 954-7286

- and -

STEPTOE & JOHNSON LLP
750 Seventh Avenue
New York, New York 10019
(212) 506-3900

February 26, 2009

*Attorneys for the D. E. Shaw Defendants*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ........................................................................................................ I

TABLE OF AUTHORITIES.................................................................................................... ii

PRELIMINARY STATEMENT ..............................................................................................1

BACKGROUND FACTS........................................................................................................3

A. THE SECOND AMENDED COMPLAINT. ...........................................................3

B. THE SECOND AMENDED COMPLAINT CHARACTERIZES DESCO'S ROLE IN THE WESTLAND MERGER........................................................................4

1. Allegations of § 14(a) Violations...............................................................5

2. Allegations of Secrecy. ..............................................................................6

3. Allegations of Share Ownership. ..............................................................7

4. Conclusory Allegations..............................................................................8

5. Allegations that Are Simply Illogical. .......................................................9

ARGUMENT .......................................................................................................................10

I. PLAINTIFF'S CLAIMS AGAINST DESCO ARE TIME-BARRED .............................................10

II. THE SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST THE DESCO DEFENDANTS UNDER SECTION 20(**a**)...........................................................16

A. THE SECOND AMENDED COMPLAINT FAILS TO ALLEGE A "PRIMARY" VIOLATION UNDER SECTION 14(A)..........................................16

B. THE SECOND AMENDED COMPLAINT FAILS TO PROPERLY ALLEGE "CONTROL" UNDER SECTION 20(A)...........................................................17

CONCLUSION.....................................................................................................................20

## TABLE OF AUTHORITIES

### CASES

*Adams v. Kinder-Morgan, Inc.*,
340 F.3d 1083 (10th Cir. 2003) ....................19

*Am. Bankers Ass'n, et al. v. Nat'l Credit Union Admin*,
347 F. Supp. 2d 1061 (D. Utah 2004)....................13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................10

*De La Fuente v. DCI Telecomms., Inc.*,
206 F.R.D. 369 (S.D.N.Y. 2003) ....................19

*Dodds v. Cigna Sec., Inc.*,
12 F.3d 346 (2d Cir. 1993)....................19

*GVA Mkt. Neutral Master Ltd. v. Capital Partners Off-Shore Fund, Ltd, et al.*,
580 F. Supp. 2d 321 (S.D.N.Y. 2008)....................11

*In re Global Crossing, Ltd. Sec. Litig.*,
313 F. Supp. 2d 189 ....................14

*In re Merck Co., Inc. Sec. Litig.*,
Civ. No. 05-1151 (SRC), Civ. No. 05-2367 (SRC), 2006 U.S. Dist. LEXIS 2345
(D.N.J., January 20, 2006) ....................13

*In re PetsMart, Inc. Sec. Litig.*,
61 F. Supp. 2d 982 (D. Ariz. 1999) ....................13

*Lampf, Pleva Lipkind, Prupis & Petigrow v. Gilbertson*,
501 U.S. 350 (1991)....................11

*LC Capital Partners L.P. v. Frontier Ins. Group*,
318 F.3d 148 .................... 14-15

*Maher v. Durango Metals, Inc.*,
144 F.3d 1302 (10th Cir. 1998) .................... 16-19

*Metge v. Baehler*,
762 F.2d 621 (8th Cir. 1985) .................... 17-18

*Moore v. Guthrie*,
438 F.3d 1036 (10th Cir. 2006) ....................10

*Shah v. Meeker*,
435 F.3d 244 (2d Cir. 2006)......12

*Southern Disposal v. Texas Waste Mgmt.*,
161 F.3d 1259 (10th Cir. 1998)......10

*Sterlin v. Biomune Sys.*,
154 F.3d 1191 (10th Cir. 1998)......11-12

*Teacher's Retirement Sys. of Louisana v. Quest Comm'n Int'l Inc.*,
No. 04 Civ. 0782(REB), 2005 U.S. Dist. LEXIS 44756 (D. Col. Sept. 23, 2005)......10

*Teamsters Local 445 Freight Division Fund v. Bombardier Inc.*,
No. 05 Civ. 1898 (SAS), 2005 U.S. Dist LEXIS 19506 (S.D.N.Y. Sept. 6, 2005)......12

**STATUTES, RULES & REGULATIONS**

Rule 12(b)(6) of the Federal Rules of Civil Procedure......1

§ 14(a) of the Securities Exchange Act of 1934...... *passim*

§ 20(a) of the Securities Exchange Act of 1934...... *passim*

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendants The D. E. Shaw Group,[1] D. E. Shaw & Co. L.P., D. E. Shaw Real Estate Portfolios 1, L.L.C. ("D. E. Shaw Real Estate"), D. E. Shaw & Co., LLC, D. E. Shaw & Co., Inc., and D. E. Shaw Investment Group, LLC, D. E. Shaw & Co. II, Inc. (collectively, "DESCO"), and George Rizk and Anne Dinning (together, the "DESCO Individual Defendants" and, together with DESCO, the "DESCO Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Second Amended Complaint (the "Second Amended Complaint" or "SAC") of plaintiff Lawrence Lane ("Plaintiff") and join the motion to dismiss filed by the Westland Director Defendants on February 5, 2009 and the motion to dismiss filed by defendants Westland Development Company, Inc. ("Westland") and the SunCal Companies Group ("SunCal") on February 5, 2009.

## PRELIMINARY STATEMENT

Plaintiff added the DESCO Defendants to this case for the first time in the Second Amended Complaint. The sole claim against the DESCO Defendants is that they are liable as "control persons" under § 20(a) of the Securities Exchange Act of 1934 ("Section 20(a)" or § 20(a)") and, as such, are liable for the violations of § 14(a) of the Securities Exchange Act ("Section 14(a)" or "§ 14(a)") asserted against Westland, the Westland Director Defendants and SunCal in connection with the September 20, 2006 proxy statement concerning the Westland merger (the "Proxy Statement"). Plaintiff's § 20(a) claim fails and should be dismissed for the following reasons:

---

[1] Although Plaintiff names "The D. E. Shaw Group" as a defendant in this case, no such legal entity exists. Instead, "The D. E. Shaw Group" is an informal term sometimes used to refer to one or more affiliated entities.

***First***, Plaintiff's § 20(a) claim is time-barred because it was filed more than a year after the applicable statute of limitations expired. Plaintiff alleges that DESCO and other defendants concealed DESCO's role in the Westland merger. Accordingly, the statute of limitations for Plaintiff's § 20(a) claim is one year from the date that Plaintiff was put on "inquiry notice" that DESCO was involved in the Westland merger. Plaintiff was first put on inquiry notice of this fact more than two years ago, in December 2006, when the *Wall Street Journal* published an article disclosing DESCO's involvement in the sale of Westland to SunCal. In addition, six days after the *Wall Street Journal* article appeared, SunCal and DESCO made the same disclosure in their own joint press release. Moreover, the Second Amended Complaint itself quotes at length from a *Forbes* article published on September 3, 2007 that again disclosed that SunCal's bid for Westland was backed by "financing from hedge fund operator D. E. Shaw & Co." (SAC ¶ 6 at p. 7.) Based on the inquiry notice triggered by these three publicly-available articles alone, Plaintiff should have, in the exercise of reasonable diligence, discovered the facts underlying his § 20(a) claim (contained in these articles). Thus, the statute of limitations on Plaintiff's § 20(a) claim expired in December 2007 – a year after the *Wall Street Journal* article and SunCal/ DESCO press release were published and a year before Plaintiff filed its Second Amended Complaint. At the very latest, Plaintiff's claim expired in September 2008 – a year after the publication of the *Forbes* article Plaintiff cites in the Second Amended Complaint but still nearly three months before the Second Amended Complaint was filed.

***Second***, Plaintiff also fails to properly allege that DESCO had "control" over the Westland defendants under § 20(a). The allegations in the Second Amended Complaint repeat at length DESCO's majority ownership in a SunCal joint venture company that, in turn, owned a holding company that owned yet another company that was merged with Westland. Share

ownership, however, especially one so remote, does not constitute "control" under § 20(a). The rest of the allegations against DESCO assert only that it sought to keep its involvement in the merger non-public – a patently false statement and gross mischaracterization. In any event, confidentiality also does not constitute "control" under § 20(a). Indeed, the Second Amended Complaint fails to allege a single fact from which this Court might infer that DESCO had exercised control over the Westland and SunCal defendants and that it had the power to cause the Westland defendants to commit any of the predicate § 14(a) violations alleged in the Second Amended Complaint. As such, the § 20(a) claim against the DESCO Defendants should be dismissed.

## BACKGROUND FACTS

The original Complaint in this case was filed on November 3, 2006 (Dkt. #1), just days before the scheduled shareholder vote on the Westland merger, and did not name any of the DESCO Defendants. The Complaint sought a TRO enjoining the shareholder vote, which this Court denied. The SunCal/Westland merger subsequently was consummated on December 7, 2006, after obtaining the overwhelming approval of the Westland shareholders. Ten months later, Plaintiff filed an Amended Complaint on September 17, 2007. (Dkt. # 50.) All the defendants in the case at that time moved to dismiss the Amended Complaint, and this Court issued an Order and Memorandum Opinion on September 24, 2008, granting in part and denying in part the defendants' motions to dismiss and permitting Plaintiff leave to file a Second Amended Complaint, which Plaintiff did on December 1, 2008.

### A. The Second Amended Complaint.

The most significant difference between the Amended Complaint and the Second Amended Complaint is Plaintiff's addition of the DESCO Defendants. The Second Amended Complaint does not allege any novel theories to support its claims against the DESCO

Defendants. Rather, it merely lumped DESCO into the pre-existing securities claims already asserted against the Westland Director Defendants, Westland and SunCal under § 14(a) (Count I) and § 20(a) (Count II). Although the Second Amended Complaint appears on its face to assert both Count I and Count II claims against the DESCO Defendants, during the February 6, 2009 oral argument before the Court on the motion to stay discovery, Plaintiff represented to the Court that Plaintiff is not in fact asserting a § 14(a) claim against the DESCO Defendants (Count I) and instead is asserting only a § 20(a) claim (Count II):

> Now, the main – the main claim that was added in this new – or the only claim that was added in this new Complaint is that one against D. E. Shaw and the D. E. Shaw defendants.
>
> And I want to make it perfectly clear right here to clear up any ambiguities, that is simply a Section 20(a) control-person claim. They are not being sued as primary violator under Section 14(a).

(2/6/2009 Tr. at 26. A true and correct copy of the relevant pages from the transcript of the February 6, 2009 proceedings before the Court is attached hereto as Exhibit A.)

Accordingly, although the DESCO Defendants join in the arguments in support of dismissal of the § 14(a) claims advanced in the Westland Directors' Motion to Dismiss and the Westland/SunCal Motion to Dismiss, the DESCO Defendants do not otherwise address the Section 14(a) claim contained in the Second Amended Complaint.[2]

**B. The Second Amended Complaint Characterizes <u>DESCO's Role In the Westland Merger</u>**

The Second Amended Complaint alleges that "[o]n July 19, 2006, SunCal and Westland entered into a Merger Agreement, which provided for SunCal's purchase of the 794,927 outstanding shares of Westland at a price of $315 per share." (SAC ¶37.) Plaintiff does

2 In the event Plaintiff later attempts to assert a § 14(a) claim against the DESCO Defendants, the DESCO Defendants reserve the right to move to dismiss that claim at that time.

not allege that DESCO was a party to that agreement.[3] Indeed, DESCO had no involvement in the Westland transaction until after the Merger Agreement was negotiated and signed. DESCO's role in the Westland merger was to provide the financing needed to close the Westland merger. As consideration for providing that financing, DESCO obtained a majority stake in the joint venture company that indirectly owns Westland. SunCal owns the remaining stake in that joint venture. (*See* SAC ¶21(b).)

Notwithstanding DESCO's limited and removed involvement in the Westland merger, the Second Amended Complaint contrives, through vague and conclusory allegations, a secret and nefarious and central role for DESCO, through which the DESCO Defendants controlled all the other parties involved in the merger. Upon closer examination, the various vague and conclusory allegations against the DESCO Defendants in the Second Amended Complaint fall into one of four categories that have little to do with the only claim asserted against DESCO – that the DESCO Defendants were "control persons" over all the other defendants in this case.

**1. <u>Allegations of § 14(a) Violations.</u>**

The first category falls under the heading of allegations of DESCO's direct involvement in the proxy process. These allegations have no relevance to the § 20(a) claim; rather, they relate to the § 14(a) claim, which Plaintiff has told the Court it is not pursuing against the DESCO Defendants.

---

[3] Inexplicably, Plaintiff alleges that DESCO "participat[ed] in the preparation of the Merger Agreement … between August and September 2006," despite the fact that Plaintiff admits that SunCal and Westland entered into the Merger Agreement on July 19, 2006. (SAC ¶21(b)(i) (*sic*), at p. 13.) Plaintiff does not allege any facts supporting this conclusory allegation nor does Plaintiff describe DESCO's alleged "participation."

> D. E. Shaw, as a purchaser of Westland, "participated in the preparation and dissemination of the SunCal Proxy". (SAC ¶21.)
>
> Each of the defendants participated in the preparation, review and dissemination of the false and misleading Proxy Statement complained of herein. (SAC ¶22.)
>
> Defendants SunCal and the D. E. Shaw Group were also aware that the valuations reported to Westland's shareholders in the Proxy Statement were grossly understated. . . . (SAC ¶48(b) at 10.)
>
> Defendants omission of the D. E. Shaw Group's involvement in the SunCal Merger rendered the Proxy Statement materially false and misleading. (SAC ¶56(b).)
>
> Defendants knew that the D. E. Shaw Group's involvement in the SunCal Merger needed to be disclosed in the Proxy Statement. . . . (SAC ¶56(c).)

Thus, these allegations in the Second Amended Complaint may be disregarded by the Court on this motion.

**2. <u>Allegations of Secrecy.</u>**

The second category includes allegations that DESCO tried to keep its involvement in the SunCal/Westland merger secret. Plaintiff does not allege that DESCO's involvement in the merger was required to be disclosed under any proxy regulation or other provision of the securities laws, and we are aware of none. Moreover, the desire to remain non-public does not give rise to an inference that one has "control" over the public proxy participants. Thus, the following allegations in the Second Amended Complaint may be disregarded by the Court on this motion:

> The D. E. Shaw Group's participation in the solicitation of proxies from Westland's shareholders was not disclosed to shareholders prior to the closing of the SunCal Merger. . . . (SAC ¶56.)
>
> According to internal correspondence, George Rizk (Rizk), head of the real estate division at D. E. Shaw Group and chief architect of the D. E. Shaw Group's undisclosed involvement in the SunCal Merger instructed the D. E. Shaw Group and SunCal not to

> disclose the D. E. Shaw Group's involvement in the SunCal merger . . . . (SAC ¶56(b).)
>
> According to correspondence between defendant Rizk and defendant Page concerning the D. E. Shaw Group's funding obligations with respect to the SunCal Merger, Westland agreed that neither this letter or any of the information set forth in this letter (including without limitation ***the involvement of DESCO Real Estate in the transaction***) shall be disclosed, directly or indirectly, to any other person . . . . (SAC ¶56(b).)
>
> Moreover, as mandated by the D. E. Shaw Group, SunCal "maintain[ed] the confidentiality of DESCO's involvement in this possible transaction and the structure and pricing thereof . . . ." (SAC ¶68.)

**3. <u>Allegations of Share Ownership.</u>**

The next category groups the allegations that highlight the share percentage ownership that DESCO held in one of the parent entities that was merged with Westland. As discussed, *infra*, share ownership does not by itself infer "control" under § 20(a). However, the Second Amended Complaint is replete with this type of allegation:

> The Proxy Statement omitted to state that the D. E. Shaw Group owned 92.5% of the equity interest in the entity that acquired Westland. . . . (SAC ¶56(a).)
>
> D. E. Shaw Real Estate Portfolios 1, L.L.C. (DESCO Real Estate) owned 92.5% of SCC Westland Venture LLC. The other 7.5% of the SCC Westland Venture LLC was owned by SCC NM Member LLC, which was an affiliate of SunCal. SCC Westland LLC was the parent of Westland Holdco, Inc. Westland Holdco, Inc. was the parent of SCC Acquisition Corp. ("SCC"), the entity that was merged with Westland. (SAC ¶21(a).)
>
> Through its equity ownership and/or board representation, D. E. Shaw Group and its affiliates had the power and authority to cause and did in fact directly or indirectly cause Westland to engage in the wrongful conduct complained of [in the SAC]. (SAC ¶21(b).)
>
> The true facts then known by, or available to, defendants but which were omitted from the Proxy Statement were that an entity affiliated with the real estate division of the D. E. Shaw Group – specifically, DESCO Real Estate – was the ***92.5% owner*** of SCC,

> the entity that was used to consummate the SunCal Merger with Westland. . . . (SAC ¶56.)
>
> The D. E. Shaw Group is a controlling person of Westland, the Individual Defendants and SunCal within the meaning of § 20(a) of the 1934 Act. By reason of its 92.5% equity ownership in the entity which merged with Westland, the D. E. Shaw Group possessed control over SunCal, Westland and the Individual Defendants. Pursuant to its joint venture agreement with D. E. Shaw Corp., SunCal was required to obtain and did obtain approval and consent from the D. E. Shaw Group for all "major decisions" . . . . (SAC ¶68.)
>
> Defendants had a duty to correct their representations in the Proxy Statement concerning SCC's 92.5% ownership by DESCO Real Estate, but failed to do so, rendering the Proxy Statement false and misleading. . . . (SAC ¶56.)

#### 4. <u>Conclusory Allegations.</u>

The final category collects all the vague and conclusory allegations of "control," including the following allegations:

> Defendant Rizk is the head of the real estate division at defendant D. E. Shaw Group and was a chief architect of the D. E. Shaw Group's undisclosed involvement in the Merger. Defendant Rizk had the ability to control and did control D. E. Shaw Group's participation and dissemination of the Proxy. (SAC ¶21(c).)
>
> Defendant Anne Dinning (Dinning) is a member of D. E. Shaw Group's executive committee which oversees its private equity and real estate investment operations. As such, defendant Dinning had the power to direct or cause the direction of the D. E. Shaw Group's actions in connection with the SunCal Merger . . .(SAC ¶21(d).)
>
> Defendants Rizk and Dinning acted as control persons of the D. E. Shaw Group, SunCal, Westland and the Individual Defendants within the meaning of § 20(a) of the 1934 Act. By reason of their position as members of the executive committee and/or chief architects of the D. E. Shaw Group's undisclosed involvement in the SunCal Merger, these defendants had the power and authority to cause, and did in fact cause, D. E. Shaw Group, SunCal, Westland and the Individual Defendants to engage in the wrongful conduct complained of herein. By reason of such conduct,

> defendants Rizk and Dinning are liable pursuant to § 20(a) of the 1934 Act. (SAC ¶69.)

As this Court has already held, these allegations carry no weight in determining the sufficiency of a pleading. Accordingly, the Court may disregard these allegations on this motion.

### 5. <u>Allegations that Are Simply Illogical.</u>

Various other and sundry allegations in the Second Amended Complaint simply make no sense at all as a part of § 20(a) claim. For example, the Second Amended Complaint alleges that the "D. E. Shaw Group and SunCal offered additional funding to Atrisco LLC to ensure the support of the four directors [of Westland] who had received lifelong directorships of Atrisco LLC" (SAC ¶4(e)), and the "Proxy Statement omits the fact that, in exchange for their endorsement of the SunCal Merger, at least four Westland directors were promised lifelong trusteeships of the Foundation and/or as directors of Atrisco LLC. . . ." (SAC ¶42(a).) The Second Amended Complaint characterizes these actions as "inducements" by DESCO and SunCal to get the Westland Board to support their merger proposal. *Id.* These allegations, however, are logically inconsistent with a § 20(a) claim. If DESCO is alleged to have had "control" over the Westland Board, why would it need to have offered its directors "inducements" to support its bid? If anything, these allegations would seem to negate a claim of control under § 20(a).

Finally, Plaintiff purports to bring this action against seven different DESCO corporate entities. (*See* SAC ¶21(b).) However, Plaintiff alleges that only one entity – D. E. Shaw Real Estate Portfolios 1, L.L.C. – had a specific role in the transaction at issue in this case. (*See* SAC ¶21(a) and (b).) There are no allegations in the Second Amended Complaint concerning any other entity. Instead, Plaintiff simply lumps all of the DESCO entities together

as the "D. E. Shaw Group" in the first paragraph of the Second Amended Complaint and refers to them collectively throughout the Second Amended Complaint as such. (*See* SAC ¶1.)

## ARGUMENT

On a motion to dismiss, the court must construe the factual allegations in the complaint as true and in the light most favorable to the plaintiff. *Moore v. Guthrie*, 438 F.3d 1036 (10th Cir. 2006). However, the Court need not accept unsupported, conclusory allegations or legal conclusions drawn by plaintiff. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Southern Disposal v. Texas Waste Mgmt.*, 161 F.3d 1259, 1262 (10th Cir. 1998) (court "need not accept. . .conclusory allegations as true"). As this Court has stated in this case, "a plaintiff's obligation to set forth the grounds of his or her entitlement to relief 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" Memorandum Opinion and Order at 11 (Dkt. #83), *quoting Bell Atl. Corp.*, 550 U.S. at 554. "[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Memorandum Opinion and Order at 11 (Dkt. #83), *quoting Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007); *see generally* Memorandum Opinion and Order at 11-13 (Dkt. #83).

### I.

### PLAINTIFF'S CLAIMS AGAINST DESCO ARE TIME-BARRED

On December 1, 2008, Plaintiff filed its Second Amended Complaint, which alleges a single § 20(a) claim against the newly-added DESCO Defendants. "Claims for control-person liability under § 20(a) of the 1934 Act are largely derivative of other securities violations – in this case, alleged violations of § 14(a)." Memorandum Opinion and Order at 57 (Dkt. #83).

The statute of limitations for § 20(a) claims is the same as the statute of limitations applicable to the controlled persons for the underlying violation. *See Teacher's Retirement Sys. of Louisiana v. Quest Comm'n Int'l Inc.*, No. 04 Civ. 0782(REB), 2005 U.S. Dist. LEXIS 44756 (D. Col. Sept. 23, 2005). There is a one year statute of limitations period for claims brought under § 14(a) of the Securities Exchange Act. *See Lampf, Pleva Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 358-62 (1991) (adopting the limitations periods under § 9(e) of the 1934 Act as controlling, thus establishing a one-year statute of limitations for claims brought under § 14(a)).

The statute of limitations begins to run when the plaintiff has either actual or "inquiry notice" of the claims against a prospective defendant. Inquiry notice is triggered when the plaintiff, exercising reasonable diligence, should have discovered the facts that would support a claim. *Sterlin v. Biomune Sys*., 154 F.3d 1191, 1201 (10th Cir. 1998) (holding that inquiry notice "triggers an investor's duty to exercise reasonable diligence and that the one-year statute of limitations period begins to run once the investor, in the exercise of reasonable diligence, should have discovered the facts underlying the alleged fraud"). Furthermore, Plaintiff "need not . . . have fully discovered the nature and extent of the fraud before [he was] on notice that something may have been amiss. Inquiry notice is triggered by evidence of the possibility of fraud, not full exposition of the scam itself." *Id*. at 1203 (internal quotation marks and citations omitted).

Inquiry notice can arise based on facts disclosed in financial, legal or other data available to the plaintiff. *See GVA Mkt. Neutral Master Ltd. v. Capital Partners Off-Shore Fund, Ltd, et al.*, 580 F. Supp. 2d 321, 327 (S.D.N.Y. 2008) ("In assessing whether 'storm warnings' were sufficient to put an investor on inquiry notice, courts examine any publicly available financial, legal, or other information including news articles or the filing of other lawsuits. . .").

In fact, a single publication can provide sufficient inquiry notice to trigger the running of the limitations period. *See*, *e.g.*, *Shah v. Meeker*, 435 F.3d 244, 249 (2d Cir. 2006) ("Information contained in the articles in the financial press may trigger the duty to investigate."); *Teamsters Local 445 Freight Division Fund v. Bombardier Inc.*, No. 05 Civ. 1898 (SAS), 2005 U.S. Dist LEXIS 19506, at *38 (S.D.N.Y. Sept. 6, 2005). In *Sterlin*, the Tenth Circuit held that a single published article in *Barron's* was sufficient to put the plaintiff on inquiry notice, and the article did not even need to address the core allegations. "Rather, the article need only alert a reasonable investor to the possibility of fraud." *Sterlin*, 154 F.3d at 1204.

Here, Plaintiff had inquiry notice concerning DESCO's participation in the Westland purchase almost two years before it filed its Second Amended Complaint. On December 13, 2006, *The Wall Street Journal* published an article specifically mentioning DESCO's involvement in the purchase of Westland:

> SunCal Cos., a developer based in Irvine, Calif., and the real-estate unit of the D. E. Shaw group, a New York investment-management firm, are buying Westland Development Co. and the 57,000 acres it owns in and around Albuquerque.
>
> They are paying $250 million for Westland, which means its roughly 6,000 shareholders will receive $315 a share, SunCal said. Officials at Westland couldn't be reached to comment. SunCal and D. E. Shaw group say Albuquerque is poised for significant expansion in coming years, and the 57,000 acres lie directly in the path of growth.
>
> "We underwrote this acquisition with a long-term view. We truly believe in the long-term viability of the (Albuquerque) market," says George Rizk, head of real-estate investments at D. E. Shaw group. Much of the future development on the property will be residential.

Ryan Chittum & Michael Corkery, *Plots & Ploys*, Wall St. J., Dec. 13, 2006, at B4. (*See* Ex. B.) *The Wall Street Journal* article even identified George Rizk as the head of real-estate

investments at DESCO and quotes Rizk as stating that DESCO "underwrote [the Westland] acquisition…." *Id.*

The following week, on December 19, 2006, SunCal and DESCO issued a joint press release, available on numerous websites,[4] stating that "heirs of the Atrisco Land Grant west of Albuquerque decided to sell their shares in Westland Development Co. . . . to community developer SunCal Companies and a member of the D. E. Shaw group in a deal valued at more than $250 million." Press Release, 300 Year-Old Spanish Land Grant Twice the Size of Boston Changes Hands in New Mexico; New Town Planned (Dec. 19, 2006). (Ex. C.)[5]

Indeed, it is difficult to imagine a situation in which the Plaintiff here could have been better equipped to discover the "facts underlying the alleged fraudulent activity" after being put on inquiry notice. Both *The Wall Street Journal* article and the press release were issued shortly after the vote approving the Westland merger, and more importantly, only weeks after

---

4 The December 19, 2006 press release can be found at www.suncal.com, www.highbeam.com, www.thefreelibrary.com, www.deshaw.com, www.bnet.com, www.allbusiness.com, and www.encyclopedia.com, among others (as of the date of filing).

5 The Court may take judicial notice of *The Wall Street Journal* article and the press release without converting this motion into one for summary judgment. *See, e.g., In re PetsMart, Inc. Sec. Litig.*, 61 F. Supp.2d 982, 987 (D. Ariz. 1999) ("A court may take judicial notice of matters of public record outside the pleadings without converting a motion to dismiss into a motion for summary judgment…. Press releases and SEC filings have been considered where defendant uses them to establish whether and when certain information was provided to the market."); *In re Merck Co., Inc. Sec. Litig.*, Civ. No. 05-1151 (SRC), Civ. No. 05-2367 (SRC), 2006 U.S. Dist. LEXIS 2345, *18 (D.N.J., January 20, 2006) ("The inquiry notice analysis is an objective one. Whether [plaintiffs] read the articles or were aware of them is immaterial. They serve only to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true."); *Am. Bankers Ass'n, et al. v. Nat'l Credit Union Admin*, 347 F. Supp. 2d 1061, 1068 (D. Utah 2004) ("A court may take judicial notice of facts reported in newspaper articles if the facts are capable of a sufficiently accurate and ready determination.").

Plaintiff commenced this lawsuit. (*See* Complaint, filed November 3, 2006 (Dkt. # 1); Memorandum Opinion and Order at 2, 10 (Dkt. #83).)

Plaintiff would apparently have this Court believe that he and his lawyers were unable to discover, for almost two years, the facts contained in either (i) a press release issued by a defendant against whom Plaintiff had just filed suit; or (ii) an article in one of the world's leading business publications, both of which concerned the exact transaction, party and facts upon which Plaintiff's lawsuit was based.[6]

Any one of these public statements was sufficient to put Plaintiff on inquiry notice and to trigger the running of the statute of limitations period. "If the investor makes no inquiry once the duty arises, knowledge will be imputed as of the date the duty arose." *LC Capital Partners L.P. v. Frontier Ins. Group*, 318 F.3d 148, 154; *see In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 202 ("Inquiry notice is tantamount to actual discovery of a fraud when a plaintiff, having received knowledge sufficient to trigger a diligent investigation, fails to

---

6 As it turns out, Plaintiff had ***actual notice*** of the DESCO press release at least as early as August 1, 2007, when Plaintiff's counsel questioned several Westland directors about DESCO and its press release during depositions conducted in the predecessor state court cases in *Jernigan v. Gonzales*, CV 2006–05297 (N.M. 2d Judicial Dist.). (*See* Transcript excerpts from the Westland director depositions in the *Jernigan* case conducted on August 1–3, 2007 attached hereto as Ex. D.) In those depositions, Plaintiff's counsel, Mr. Nicholas Koluncich III, who is a counsel for the Plaintiff in this case, questioned Westland director Georgia Baca as follows:

> Q: Are you aware that DESCO disseminated a press release purporting that they had bought Westland Development Company?
>
> A: No, I wasn't aware of that.

(Ex. D.) Not only does this exchange, and those of the other director deponents, demonstrate that Plaintiff had actual knowledge of DESCO's involvement in the Westland merger at least 16 months before it filed the Second Amended Complaint, it appears that Plaintiff's counsel had greater knowledge of DESCO's involvement than the Westland directors themselves, thereby also undermining Plaintiff's claim that DESCO was a "control person" of Westland.

inquire into the facts."). Where "the facts needed for determination of when a reasonable investor of ordinary intelligence would have been aware of the existence of fraud can be gleaned from the complaint and papers . . . integral to the complaint, resolution of the issue on a motion to dismiss is appropriate," and courts in this Circuit have done so in "a vast number of cases." *LC Capital Partners,* 318 F.3d at 156, *quoting Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 352 n.3 (2d Cir. 1993); *see De La Fuente v. DCI Telecomms., Inc.*, 206 F.R.D. 369, 381 (S.D.N.Y. 2003) ("The law in this Circuit is clear, however, that a court can, as a matter of law, determine whether an investor of ordinary intelligence would be on inquiry notice in the circumstances described in the complaint.").

Here, the Court can determine as a matter of law that (i) Plaintiff was put on inquiry notice of the alleged misrepresentations and omissions concerning DESCO's involvement in the Westland merger upon publication of the December 13, 2006 *Wall Street Journal* article and the December 19, 2006 press release; and (ii) in the exercise of reasonable diligence, Plaintiff should have discovered the facts underlying the alleged misstatements and omissions upon publication of those materials in December 2006 or shortly thereafter.

Thus, whether the Court finds that "inquiry notice" was triggered in December 2006, or as late as September 3, 2007, with the publication of the *Forbes* article, in either case, Plaintiff's § 20(a) claim would still be time-barred. Plaintiff did not file its Second Amended Complaint until December 1, 2008 – 719 days after *The Wall Street Journal* article was published and 89 days after the latest possible expiration of the statute of limitations. Only 45 days of these time periods were tolled pursuant to a Tolling Agreement between the Plaintiff and the DESCO Defendants. (*See* Ex. E attached hereto, and a letter from DESCO's counsel, dated November 4, 2008, attached hereto as Ex. F.) With inquiry notice triggered on December 13,

2006, Plaintiffs § 20(a) claim against DESCO was ***filed 354 days late***. Even under the most favorable view of the facts, Plaintiff's § 20(a) claim became stale after October 18, 2008 (45 days after September 3, 2008, which is a year from the date of the *Forbes* article cited in the Plaintiff's own pleading).

**II.**

**THE SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST THE DESCO DEFENDANTS UNDER SECTION 20(a)**

"To state a prima facie case of control person liability the plaintiff must establish (1) a primary violation of the securities laws and (2) 'control' over the primary violator by the alleged controlling person." *See* Memorandum Opinion and Order at 57 (Dkt. # 83), *citing City of Philadelphia v. Fleming Cos., Inc.*, 264 F.3d 1245, 1270-71 (10th Cir. 2001) (*quoting Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1305 (10th Cir. 1998)).

**A. The Second Amended Complaint Fails to Allege a "Primary" Violation Under Section 14(a).**

Plaintiff's § 20(a) claim should be dismissed because the Second Amended Complaint fails to allege a primary violation under § 14(a). When there is no primary violation of the securities laws under § 14(a), there can be no control person liability under § 20(a). *See* Memorandum Opinion and Order at 57 (Dkt. # 83); *City of Philadelphia v. Fleming*, 264 F.3d at 1270-71 (quoting *Maher v. Durango Metals, Inc.*, 144 F.3d at 1305). Here, Plaintiff alleges that SunCal and the Westland defendants violated § 14(a), and that DESCO is liable for their primary violations of the securities laws because DESCO allegedly "controls" all of them. The DESCO Defendants maintain that the Second Amended Complaint fails to properly allege a primary violation of § 14(a) by either SunCal or the Westland defendants and incorporates the arguments made in the SunCal and Westland motions to dismiss currently pending before this Court.

To be sure, Plaintiff has told this Court that the Second Amended Complaint does not allege a § 14(a) claim against the DESCO Defendants, and that Plaintiff does not intend to assert one in this case. It is upon these representations that the DESCO Defendants have not moved to dismiss Court I (§ 14(a) violations) of the Second Amended Complaint, even though that claim is styled as "Against All Defendants."

### B. The Second Amended Complaint Fails to Properly Allege "Control" Under Section 20(a).

The second prong of the pleading standard is called the "potential control" test. The courts in this Circuit, including this Court, cite *Maher* as the leading precedent for the "potential control" test. *Maher*, however, relies on the Eighth Circuit's widely-adopted standard of the test in *Metge v. Baehler*, 762 F.2d 621, 630–631 (8th Cir. 1985). *See Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1306 n.8 (10th Cir. 1998). The "potential control" test enunciated in *Metge*, establishes another two-part test for this second prong of the § 20(a) pleading standard:

> ***First***, the plaintiff must prove that the defendant "actually participated in (*i.e.*, *exercised* control over) the operations of the corporation [or person] in general."
>
> ***Second***, the plaintiff "must prove that the defendant possessed the power to control the specific transaction upon which the primary violation is predicated."

*Metge*, 762 F.2d at 630–631.

The Court in *Maher* actually never reached the "potential control" test analysis. Instead, the Court found that the plaintiff in *Maher* had alleged only "the ability to acquire the power to control" and that this was "two steps removed from the actual exercise of control." *Maher*, 144 F.3d at 1306 n.8. The Court, therefore, dismissed the claims against the defendants. However, in describing the test set out in *Metge*, the *Maher* Count created some confusion in the application of the "potential control" test. This confusion stems from the language often cited

from the opinion that "plaintiff need only show the power to control the transaction underlying the alleged securities and not the exercise of that power." *Maher*, 144 F.3d at 1306 n.8; *see also* Memorandum Opinion and Order at 58 (Dkt # 83). A review of the text in the *Metge* opinion itself readily demonstrates that this language was intended to modify only the second part of the test; ***it was not intended to negate the first part of the test***. Thus, the actual construction of the test in *Metge* is as follows:

> '"the district court formulated a two-point test under which plaintiffs must establish first, that the defendant lender 'actually participated in (*i.e. exercised* control over) the operations of the corporation in general; then he must prove that the defendant possessed the power to control the specific transaction or activity upon which the primary violation is predicated, but he need not prove ***that this later power*** was exercised.' We approve this test because it complies with precedents which counsel broad remedial construction of the statute and because it complies with precedents that distinguish between actual exercise of control in the violator's principal affairs and potential control over the violation."

*Metge*, 762 F.2d at 630–631, *citing Metge*, 577 F. Supp. 810, 817–18 (S.D. Iowa 1984).

The Second Amended Complaint fails to satisfy either prong of the "potential control" test established in *Maher* and *Metge*. First, the Second Amended Complaint fails to allege facts sufficient to demonstrate that DESCO "actually exercised control" over the "general affairs" of either SunCal or the Westland defendants. Indeed, Plaintiff fails to allege a single instance in which DESCO ordered any of the co-defendants to do or refrain from doing anything regarding the conduct of the general business or where it countermanded any decision by a co-defendant. Although the first prong of this test does not require that Plaintiff allege conduct relating to the Westland proxy statement, which is the basis of the primary § 14(a) violation, it does require that the alleged conduct demonstrate the actual exercise of control over some aspect of SunCal's or Westland's business. The Second Amended Complaint, however, alleges no such conduct as against the DESCO Defendants.

Second, the Second Amended Complaint also fails to satisfy the second prong of the "potential control" test: that DESCO had the "power to control the transaction underlying the alleged securities violation." *Maher*, 144 F.3d at 1306 n.8. Although this prong does not require that Plaintiff allege an instance of actual control by DESCO over SunCal or Westland, it does require the Plaintiff to allege facts sufficient for the Court to find that DESCO had the power to exercise control in the specific transaction or activity upon which the primary violation is predicated, in this case the proxy statements, even if DESCO never actually exercised that particular power. The only particularized allegations in the Second Amended Complaint that address this issue relate to DESCO's 92.5% interest in the parent company that purchased Westland. However, allegations of an ownership interest in a subject company – no matter how large – are insufficient by themselves to establish "control" of that company under § 20(a). *Maher*, 144 F.3d at 1306. Similarly, an individual's status as a director of a company does not automatically make that person liable as a controlling person. *See Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1108 (10th Cir. 2003).

There is insufficient evidence in the Second Amended Complaint from which this Court could determine that DESCO had the power to control the content and timing of the Westland proxy statements. That is the essence of a § 20(a) claim in this case. Moreover, the allegations regarding DESCO's authority over SunCal in the joint venture agreement do not rise to the level of "control" required by § 20(a). Not only is there no evidence that DESCO had any power or authority to dictate the substance of any of the proxy disclosures made by the Westland defendants, it appears that the Westland defendants did not even know who DESCO was. (*See* Ex. D.) The pleading deficiency of the Second Amended Complaint are fatal to Plaintiffs' § 20(a) claim against DESCO.

## CONCLUSION

For all the foregoing reasons, the DESCO Defendants respectfully request that this Court grant their motion to dismiss the Second Amended Complaint in its entirety.

Dated: New York, New York
February 26, 2009

HOLLAND & HART LLP

By: Electronically Filed
Trent A. Howell
Jefferson Place
110 North Guadalupe, Suite 1
Santa Fe, NM 87501
(505) 954-7286

-and-

John D. Lovi
Lara E. Romansic
Michelle M. Oliver
STEPTOE & JOHNSON LLP
750 Seventh Avenue
New York, New York 10019
(212) 506-3900

*Attorneys for Defendants*
*The D. E. Shaw Group, D. E. Shaw & Co. L.P., D. E. Shaw Real Estate Portfolios 1, L.L.C. D. E. Shaw & Co., LLC, D. E. Shaw & Co., Inc. D. E. Shaw Investment Group, LLC, D. E. Shaw & Co. II, Inc., George Rizk and Anne Dinning*

## CERTIFICATE OF SERVICE

I certify that on February 26, 2009, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Randall J. Baron | rbaron@csgrr.com |
| Paul R. Bessette | bessettep@gtlaw.com |
| Kimberly G. Davis | daviskg@gtlaw.com |
| Juan L. Flores | jg@ssslawfirm.com,jlf@ssslawfirm.com |
| Joe Kendall | jkendall@kendalllawgroup.com; kendalllawgroup@gmail.com |
| Nicholas Koluncich | nkoluncich@newmexicoclassactions.com |
| Frank Martin | rsandoval@branchlawfirm.com |
| Brian K. Nichols | bkn@modrall.com,doloress@modrall.com |
| Darren J. Robbins | e_file_sd@csgrr.com; denim@csgrr.com |
| Richard A. Sandoval | rick@richardsandovallawoffice.com |
| Amber L. Eck | ambere@csgrr.com; bonnieg@csgrr.com; risac@csgrr.com |
| Evan P. Singer | epsinger@jonesday.com |
| David W. Mitchell | davidm@csgrr.com |
| Brian O. O'Mara | bo'mara@csgrr.com |
| Jesse Z. Weiss | weissjz@gtlaw.com |
| Douglas G. Schneebeck | dschneebeck@modrall.com |

Electronically Filed
Trent A. Howell