# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

LAWRENCE LANE, On Behalf of Himself,
and All Others Similarly Situated,

       Plaintiff,

vs.                                  No. CIV 06-1071 JB/ACT

BARBARA PAGE, SOSIMO PADILLA, JOE S.
CHAVEZ, JOSIE CASTILLO, CHARLES V. PENA,
GEORGIA BACA, TROY K. BENAVIDEZ, RAY
MARES, JR., RANDOLPH M. SANCHEZ, WESTLAND
DEVELOPMENT COMPANY, INC, SUNCAL
COMPANIES GROUP, THE D.E. SHAW GROUP, D.E.
SHAW & CO. L.P., D.E. SHAW REAL ESTATE
PORTFOLIOS 1, L.L.C., ("DESCO REAL ESTATE"),
D.E. SHAW & CO., LLC, D.E. SHAW & CO., INC., D.E.
SHAW INVESTMENT GROUP, LLC, D.E. SHAW & CO. II,
INC., GEORGE RIZK and ANNE DINNING,

       Defendants.

## MEMORANDUM OPINION[1]

**THIS MATTER** comes before the Court on the Lead Plaintiff's Opposed Motion for Leave to Amend Complaint Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, filed July 15, 2009 (Doc. 176). The Court held a hearing on October 26, 2009. The primary issues are: (i) whether Plaintiff Lawrence Lane's [Proposed] Third Amended Complaint adequately alleges loss causation and damages; (ii) whether 15 U.S.C. § 78u-4(b)(4) of the Securities Exchange Act of 1934, added and amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"),

---

[1] The Court previously entered an Order granting Lead Plaintiff's Opposed Motion for Leave to Amend Complaint Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure. See Order, filed March 31, 2010 (Doc. 199). This opinion explains more fully the Court's reasoning for the prior Order.

abrogated the presumption of transaction causation that the Supreme Court of the United States' decision in Mills v. Electric Auto-Lite Co., 396 U.S. 375 (1970), created; and (iii) whether the Court should allow Lane to amend the Complaint.  The Court concludes that: (i)  Lane's Third Amended Complaint adequately pleads loss causation; (ii) the PSLRA did not abrogate the Mills v. Electric Auto-Lite Co. presumption of transaction causation; and (iii) the interest of justice demands that Lane be allowed to amend his complaint.  The Court thus grants Lane's motion for leave to amend.

## FACTUAL BACKGROUND

This case concerns a dispute over the merger of Defendant Westland Development Co., Inc. and Defendant SunCal Companies Group.  The Court set forth much of the case's background and of the claims that Lane is bringing in its earlier opinions.  See Lane v. Page, 581 F. Supp. 2d 1094, 1099-1104 (D.N.M. 2008); Lane v. Page, 649 F. Supp. 2d 1256, 1263-68 (D.N.M. 2009).  The Court will not reiterate the history of the merger.  This particular motion seeks only to amend one paragraph of the Complaint that the Court found deficient in its most recent opinion.  Because the Defendants allege that Lane's proposed amendment is futile, and the standard for showing  futility is establishing that the amended complaint would be subject to a motion to dismiss, the Court will assume Lane's well-pleaded factual allegations are true, just as it would do if it were reviewing a motion to dismiss.

## PROCEDURAL BACKGROUND

Lane filed his initial Complaint on November 3, 2006, in which he asserted class-action claims under § 14(a) and § 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a through 78oo ("Exchange Act").  Complaint for Violation of §§ 14(a) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 14a-9, filed November 3, 2006 (Doc. 1).  On January 19, 2007, Lane moved to be appointed as lead plaintiff in this case, and moved the Court to appoint Lerach

Coughlin Stoia Geller Rudman & Robbins, LLP as lead counsel.  See Lawrence Lane's Motion for Appointment as Lead Plaintiff and Approval of His Selection of Lead Counsel, filed January 19, 2007 (Doc. 27).  The Court granted both requests on July 2, 2007.  See Memorandum Opinion and Order at 24, filed July 2, 2007 (Doc. 43).

On September 17, 2007, Lane filed his First Amended Complaint.  See Amended Complaint for Violation of §§ 14(a) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 14a-9, filed September 17, 2007 (Doc. 50).  On December 3, 2007, the Defendants filed a motion to dismiss the Amended Complaint.  See Motion to Dismiss and Joinder in Director Defendants' Motion to Dismiss, filed December 3, 2007 (Doc. 52); Motion to Dismiss, filed December 3, 2007 (Doc. 53).  The Court granted in part and denied in part those motions on September 15, 2008.  See Order, filed September 15, 2008 (Doc. 81); Memorandum Opinion, filed September 24, 2008 (Doc. 83).

On December 1, 2008, Lane filed a motion to amend his First Amended Complaint.  See Lead Plaintiff's Opposed Motion for Leave to Amend Complaint Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedures, filed December 1, 2008 (Doc. 105).  The Court granted that motion on February 5, 2010.  See Order Granting Lead Plaintiff's Opposed Motion for Leave to Amend Complaint Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, filed February 5, 2009 (Doc. 144).  Pursuant to the order granting the motion, Lane filed his Second Amended Complaint.  See Second Amended Complaint for Violations of §§ 14(a) and 20(a) of the Securities and Exchange Act of 1934 and SEC Rule 14a-9, filed February 9, 2009 (Doc. 145)("Second Amended Complaint").

Various Defendants filed motions to dismiss the Second Amended Complaint.  See Director Defendants' Motion to Dismiss Second Amended Complaint, filed February 5, 2009 (Doc. 142); Defendants Westland's and SunCal's Motion to Dismiss and Joinder in the Director Defendants'

Motion to Dismiss, filed February 5, 2009 (Doc. 143); The D.E. Shaw Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint, filed February 26, 2009 (Doc. 152). The Court granted in part and denied in part those motions. See Memorandum Opinion and Order at 82-83, filed July 17, 2009 (Doc. 177). At that time, the Court stated that the "flaw requiring dismissal is relatively technical and likely to be easily remedied," and so the Court would not enter judgment for ten days to give Lane an opportunity to file a motion to amend and cure that deficiency. See id. at 21. On July 15, 2009, Lane filed his second motion to amend.

**1.    The Amendment.**

Pursuant to rule 15(a)(2) of the Federal Rules of Civil Procedure, and pursuant to the Court's June 30, 2009 Memorandum Opinion and Order, Lane requests leave to amend his Second Amended Complaint to address the loss-causation issues that the Court's order identified. Pursuant to rule 6(a)(2), Lane filed his motion to amend within ten days of the Court's June 30, 2009 Memorandum Opinion and Order and is therefore timely.[2] In the motion, Lane represents that "[t]he *only* amendment to lead plaintiff's Complaint is the allegation in ¶ 64 regarding loss causation." Motion at 2. He argues that none of the reasons for denial of a rule 15(a)(2) motion to amend apply in this case, and thus that "justice . . . requires" that leave to amend "should be freely given." Motion at 1-2. The paragraph that Lane amended previously read: "64.    As a result of the defendants' preparation, review and dissemination of the Proxy Statement, Westland's shareholders have suffered substantial harm. By reason of such misconduct, the Individual Defendants are liable pursuant to § 14(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder."    Second

---

[2] Pursuant to D.N.M. Local Rule 7.1, Lane inquired of the Defendants' counsel whether they would oppose this motion. The Defendants have informed Lane that they oppose the relief sought in his motion to amend.

Amended Complaint ¶ 64, at 40.  The paragraph now states:

> 64.   As described herein, the Proxy Statement misrepresented and/or concealed material information.  As a direct result of the defendants' negligent preparation, review and dissemination of the false and/or misleading Proxy Statement, plaintiff and the class were precluded both from exercising their right to seek appraisal pursuant to § 53-15-4 of the New Mexico Business Corporation Act and were induced to vote their shares and accept inadequate consideration of $315 per share in connection with the SunCal Merger.  The false and/or misleading Proxy Statement used to obtain shareholder approval of the SunCal Merger deprived plaintiff and the class of their right to a fully informed shareholder vote in connection therewith and the full and fair value for their Westland shares.  At all times relevant to the dissemination of the materially false and/or misleading Proxy Statement, defendants were aware of and/or had access to the true facts concerning the process involved in selling Westland and Westland's true value, which was between approximately $377 million, or $474 per share (based upon Westland's internal valuation), and as much as $806 million, or $1,013 per share (based upon SunCal and D.E. Shaw's appraisals, including, but not limited to, the appraisal by Cushman and Wakefield in April 2006) -- far greater than the $315 per share Westland's shareholders received.  Thus, as a direct and proximate result of the dissemination of the false and/or misleading Proxy Statement defendants used to obtain shareholder approval of and thereby consummate the SunCal Merger, plaintiff and the class have suffered damage and actual economic losses (i.e., the difference between the price Westland shareholders received and Westland's true value at the time of the SunCal Merger) in an amount to be determined at trial.  By reason of the misconduct detailed herein, the defendants are liable pursuant to § 14(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder.

[Proposed] Third Amended Complaint for Violations of §§ 14(a) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 14a-9 ¶ 64, at 41-42, filed July 15, 2009 (Doc. 176-1)("Third Amended Complaint").

The Defendants filed their responses on September 3, 2009.  See Response of Defendant Westland and SunCal to Plaintiff's Opposed Motion for Leave to Amend Complaint [Doc. No. 176], filed August 3, 2009 (Doc. 180)("Response"); Opposition to Motion to Amend and Joinder in Response of Defendant Westland and SunCal to Plaintiff's Opposed Motion for Leave to Amend

Complaint, filed August 3, 2009 (Doc. 181)("Directors' Response")[3]; Response of the D.E. Shaw Defendants to Plaintiff's Opposed Motion for Leave to Amend Complaint, filed August 3, 2009 (Doc. 182).[4]  In response, the Defendants have made several arguments, most of which boil down to one proposition: the Court should deny the amendment because it is futile.  They insist that the allegation in the proposed ¶ 64 relating to loss causation is insufficient because it is too speculative and thus would be subject to dismissal under rule 12(b)(6).  See Response at 5-18.  Alternatively, they assert that the PSLRA abrogated the presumption of transaction causation that the Supreme Court created in Mills v. Electric Auto-Lite Co., and so Lane's third amendment is futile because it would be subject to dismissal for failure to properly allege transaction causation.  See Response at 18-21.  Finally, they argue that, even if the Court finds that the PSLRA did not abrogate the Mills v. Electric Auto-Lite Co. presumption, that presumption would not cure Lane's failure to allege loss causation as to the claims based on the Defendants' non-disclosure of the fact that SunCal funded the proxy solicitation, because the Court has held that such non-disclosure is not material.  See Response at 21-22.  If the omission is not material, the presumption of Mills v. Electric Auto-Lite Co. cannot fill the gap of a failure to allege loss causation, and therefore Lane's allegations are insufficient as to his claims based on that omission.

## 2.    Arguments at the Hearing.

At the hearing, Darren Robbins, Lane's attorney, argued that the Defendants were attempting

---

[3] When the Court refers to the Director Defendants, it means Defendants Barbara Page, Sosimo Padilla, Joe Chavez, Josie Castillo, Charles Pena, Georgia Baca, Troy Benavidez, Ray Mares, Jr., and Randolph Sanchez.

[4] By their motions, the D.E. Shaw Defendants and the Director Defendants join in the motion that Westland and SunCal filed.  In their motion, Westland and SunCal also join in the only substantive argument that the Director Defendants make.  For convenience, the Court will refer to all arguments as arguments by the Defendants generally.

to introduce evidence and transform this motion to amend into a motion to dismiss, and were attempting to obfuscate the causation issue with case law that is not on point.  <u>See</u> Transcript of Hearing at 10:4-11:18 (taken Oct. 26, 2009)("Tr.")(Court, Robbins).[5]  Mr. Robbins also distinguished all of the Defendants' authority on the ground that almost all of the opinions are summary judgment opinions, which applied a different standard than the Court is to apply to this motion, and that the courts in those cases found, or the plaintiffs conceded, that there was no out-of-pocket loss.  <u>See</u> Tr. at 11:19-12:8 (Robbins).  Mr. Robbins then explained the principle behind Lane's damage allegation in the Third Amended Complaint: "What Mr. Lane and the other shareholders had was Westland Stock.  The out-of-pocket damages are the difference between what [the class members] received, the $ 315, and what [the Westland shares were] worth." Tr. at 17:10-13 (Robbins).

In response, Douglas Schneebeck, attorney for Westland and SunCal, argued that Lane's damages theory is too speculative to be allowed to go forward.  <u>See</u> Tr. at 18:14-19:3 (Court, Schneebeck).  Mr. Schneebeck conceded that his brief used case law discussing these issues in the context of summary judgment, but asserted that any motion-to-dismiss cases, to be useful, would have to be decided post-<u>Twombly</u>.  <u>See</u> Tr. at 19:10-14 (Schneebeck)(referring to <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007)).  He then returned to the primary argument in his brief: that Lane presents two damages theories and neither one is properly pled.  <u>See id.</u> at 21:17-25:15 (Schneebeck).  The first theory, Mr. Schneebeck argues, is that, had the shareholders known the truth, all of them could have dissented and taken advantage of the appraisal remedy available under New Mexico law.  The problem with that theory, according to Mr. Schneebeck, is that, if all of the

_____

[5] The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

shareholders dissented, the merger would fail and none of them would be entitled to any money for their shares. The second theory relies upon two appraisals: one that valued the Westland shares at $474.00 and one that valued them at $1013.00 per share.[6] Mr. Schneebeck argued that, under the heightened pleading standards that the Supreme Court set down in Bell Atlantic Corp. v. Twombly and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), the allegation that there exist appraisals which valued the pre-merger Westland stock at between $474.00 and $1013.00 per share is implausible, and thus the Court should disregard that allegation. See Tr. at 25:2-9, 27:13-28:10 (Court, Schneebeck). He further insists that, after Bell Atlantic Corp. v. Twombly and Ashcroft v. Iqbal, Lane must plead, not only that the Defendants knew the property was worth more than they recommended the shareholders accept in the merger, and not only that there exists an appraisal of which the Defendants had notice that informed them that the property was worth more, but also the factual basis underlying the appraisal and the appraiser's qualifications and assumptions. See Tr. at 29:6-

---

[6] One of the appraisals from which Lane arrives at his actual-value allegation -- the internal appraisal which determined the actual value of Westland shares to be $474.00 per share -- is the same appraisal that the Court concluded that it could not find material in a prior opinion. See Sealed Memorandum Opinion and Order at 37-41, filed June 30, 2009 (Doc. 173). The Court found that Lane failed to adequately plead facts from which the Court could determine that the internal appraisal was material. As a result, the Court found that the Defendants' failure to disclose the appraisal in the Proxy Statement did not, in and of itself, support a § 14(a) claim. The Court does not find it inconsistent to allow Lane to rely upon that same appraisal as a basis for his factual allegation that Westland shares had an actual value between $474.00 and $1013.00 per share. The Court is not dealing with the substantive element of material misrepresentation or omission, nor holding that omitting this valuation from the Proxy Statement was a violation of § 14(a). Rather, the Court is finding only that the appraisal provides Lane with a factual basis for alleging that he believes the Westland stock's true value was $474.00 per share, so the allegation is not speculative or conclusory. Although the Court has found that the internal appraisal lacks adequate indicia of reliability, and thus that § 14(a) does not require its disclosure in the proxy statement, the factual allegations in a complaint need not be reliable to state a cause of action. See Bryson v. Gonzales, 534 F.3d 1282, 1286 (10th Cir. 2008)("This is not to say that the factual allegations must themselves be plausible; after all, they are assumed to be true. It is just to say that relief must follow from the facts alleged."). The Court need not determine at this time what is admissible evidence, just whether there are non-conclusory allegations.

-8-

36:12 (Court, Schneebeck).  Mr. Schneebeck also reiterated the arguments found in the response brief that, unless a misrepresentation or omission is material, the presumption of transaction causation found in <u>Mills v. Electric Auto-Lite Co.</u> does not apply, and that the PSLRA abrogated some or all of that presumption.  <u>See</u> Tr. at 36:16-40:21 (Court, Schneebeck).  When asked how Lane might plead transaction causation, should the Court find that the PSLRA abrogated the presumption in <u>Mills v. Electric Auto-Lite Co.</u>, Mr. Schneebeck was at a loss.  He asserted, however, that a simple statement that, "but for the material misrepresentations . . . the merger and the merger would not have occurred" would be insufficient under <u>Bell Atlantic Corp. v. Twombly</u>. <u>See</u> Tr. at 42:3-44:9 (Court, Schneebeck).

Evan Singer, attorney for SunCal, reiterated the argument in the Defendants' brief that Lane and the class members cannot recover unless they can plausibly plead that there was another buyer in the market who would have paid the shareholders more for the same merger.  <u>See</u> <u>id.</u> at 45:17-46:6 (Singer).  His argument was that value is nothing more than what a willing buyer will pay a willing seller for a piece of property, and thus there can be no cause of action without an allegation that another buyer would have paid the amount that Lane contends the shares were worth.  <u>See</u> <u>id.</u> at 46:22-47:12 (Singer)("[A shareholder] doesn't suffer unless there was someone who was actually going to pay that [greater] amount of money.").

Mr. Robbins responded to these two arguments by attempting to rebuke Mr. Schneebeck's arguments going to the "plausibility" or believability of the two appraisals upon which Lane relies so heavily.  <u>See</u> Tr. at 54:15-56:19 (Robbins).  Mr. Robbins asserted that Westland's stock was not sold on the open market, so the price one party was willing to pay another party in a private transaction is not indicative of the stock's value.  <u>See</u> Tr. at 59:20-60:21 (Robbins).  Finally, Mr. Robbins underscored the minimalist nature of the proposed amendment and requested that, if the

Court finds the amended complaint is insufficient for any reason, they be given another opportunity to amend.  See id. at 61:23-62:8 (Robbins).

Kimberly Davis, attorney for the Director Defendants, re-raised the concern expressed in the Director Defendants' response brief that, if the Court does not strike from the Third Amended Complaint the factual allegations that were found insufficient to support a cause of action in the earlier complaints, those issues might resurface during the course of litigation.  See id. at 73:25-75:18 (Court, Davis).  After some discussion with the Court, she backed away from that position. See id. at 75:19-77:11 (Court, Davis).  In the end, she rephrased her request as "teeing up" the issue that Lane might seek discovery on these facts which no longer relate to any particular cause of action, which, she alleges, would be improper.  See id. at 77:1-11 (Davis).  The Court agreed to keep her concerns in mind as the case and discovery proceed.  See id. at 77:12-20 (Court).

### 3.    Subsequent Developments.

On April 9, 2010, Lane submitted a "Notice of Recent Development" in regard to this motion.  See Notice of Recent Development, filed April 9, 2010 (Doc. 200).  In his notice, Lane states that Westland DevCo, LP -- the entity formed by the merger about which Lane complains -- filed a voluntary petition for Chapter 11 bankruptcy.  See Notice of Recent Development at 1. Lane notes:

> As part of its filing, Mr. Bruce V. Cook, Executive Vice President, Secretary and General Counsel of Westland Holdco, Inc., the [Westland DevCo, LP]'s managing partner, submitted a declaration under penalty of perjury setting forth, among other things, the Debtor's assets as of December 31, 2009.  Included in these assets is "land and development costs totaling approximately $352,511,243.74."

Notice of Recent Development at 1 (quoting Declaration of Bruce V. Cook in Support of Debtor's Chapter 11 Petition ¶ 9, at 4, filed April 9, 2010)(Doc. 200-1)).  Lane urges that this valuation -- over $350,000,000.00 -- is more than $100,000,000.00 greater than the Westland shareholders

-10-

received in the SunCal merger.  The Defendants filed a response on April 14, 2010, wherein they

assert that it is unclear what portion of the $352,511,243.74 figure represents the value of the land,

and what portion is "loan proceeds, development costs or something else."  Defendants' Response

to Plaintiff's Notice of Recent Development at 1, filed April 14, 2010 (Doc. 201).  They also assert

that this valuation is also dubious because another entity -- Barclays Capital Real Estate Inc. -- has

appraised Westland's property at less than that amount.  See id.

## LAW REGARDING MOTIONS TO STRIKE

Rule 12(f) of the Federal Rules of Civil Procedures provides:

**(f) Motion to Strike.** The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:

(1) on its own; or

(2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

Fed. R. Civ. P. 12(f).  Professors Charles Alan Wright and Arthur Miller have recognized, however,

that such motions are not favored and, generally, should be denied.

The district court possesses considerable discretion in disposing of a Rule 12(f) motion to strike redundant, impertinent, immaterial, or scandalous matter.  However, because federal judges have made it clear, in numerous opinions they have rendered in many substantive contexts, that Rule 12(f) motions to strike on any of these grounds are not favored, often being considered purely cosmetic or "time wasters," there appears to be general judicial agreement, as reflected in the extensive case law on the subject, that they should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action.

5C C. Wright & A. Miller, Fed. Prac. & Proc. Civ. § 1382 (3d. ed. 2004) (footnotes omitted).  See

Burget v. Capital W. Sec., Inc., No. CIV-09-1015-M, 2009 WL 4807619, at *1 (W.D. Okla. Dec.

8, 2009)("While motions to strike are generally disfavored, the decision to grant a motion to strike

is within the discretion of the court.")(citing <u>Scherer v. U.S. Dep't of Educ.</u>, 78 Fed. Appx. 687, 689 (10th Cir. 2003)).  "Striking a pleading or part of a pleading is a 'drastic remedy and because a motion to strike may often be made as a dilatory tactic, motions to strike under Rule 12(f) generally are disfavored.'" <u>Sai Broken Arrow C, LLC v. Guardian Emergency Vehicles, Inc.</u>, No. 09-CV-0455-CVE-FHM, 2010 WL 132414, at *5 (N.D. Okla. Jan. 8, 2010)(quoting <u>Burget v. Capital W. Sec., Inc.</u>, 2009 WL 4807619, *1 (W.D. Okla. Dec. 8, 2009)).  "Allegations will not be stricken as immaterial under this rule unless they have no possible bearing on the controversy." <u>Sai Broken Arrow C, LLC v. Guardian Emergency Vehicles, Inc.</u>, 2010 WL 132414, at *5 (quoting <u>Bd. of County Comm'rs of the County of La Plata, Colo. v. Brown Group Retail, Inc.</u>, Civ. No. 08-CV-00855-LTB, 2009 WL 2514094, at *2 (D. Colo. Aug. 14, 2009)); <u>Roderick Revocable Living Trust v. XTO Energy, Inc.</u>, No. 08-1330-JTM, 2009 WL 603641, at *2 (D. Kan. Mar. 9, 2009)("A motion to strike will usually be denied unless the allegations have no possible relation to the controversy and may prejudice one of the parties.")(quoting <u>Miller v. Pfizer, Inc.</u>, No. Civ. A. 99-2326-KHV, 1999 WL 1063046, at *3 (D. Kan. Nov. 10, 1999)).

Professors Wright and Miller have also commented on what constitutes "immaterial" matter in the context of a motion to strike.  "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded, or a statement of unnecessary particulars in connection with and descriptive of that which is material."  C. Wright & A. Miller, <u>supra</u>, § 1382 (footnotes omitted).  Moreover, "[o]nly material included in a 'pleading' may be the subject of a motion to strike, and courts have been unwilling to construe the term broadly.  Motions, briefs, . . . memoranda, objections, or affidavits may not be attacked by the motion to strike." <u>Dubrovin v. The Ball Corp. Consol. Welfare Ben. Plan For Employees</u>, No. 08-CV-00563-WYD-KMT, 2009 WL 5210498, at *1 (D. Colo. Dec. 23, 2009)(quoting 2 J. Moore et al., <u>Moore's Federal</u>

Practice § 12.37[2], at 12-128 (3d ed. 2004)).  See Ysais v. N.M. Judicial Std. Comm'n, 616 F.

Supp. 2d 1176, 1184 (D.N.M. 2009)(Browning, J.)("Generally . . . motions, briefs, and memoranda

may not be attacked by a motion to strike.")(citing Searcy v. Soc. Sec. Admin., 956 F.2d 278

(Table), 1992 WL 43490, *1, *4 (10th Cir. Mar 2, 1998)).  "The Federal Rules of Civil Procedure

define 'pleadings' as a complaint or third-party complaint; an answer to a complaint, a third-party

complaint, a counterclaim, or a crossclaim; and, 'if the court orders one, a reply to an answer.'"

Ysais v. N.M. Judicial Std. Comm'n, 616 F. Supp. 2d at 1184 (quoting Fed. R. Civ. P. 7(a)).

## LAW REGARDING AMENDMENT OF PLEADINGS

Rule 15(a) provides:

> **(1)** ***Amending as a Matter of Course***.  A party may amend its pleading once as a matter of course within:
>
> > **(A)** 21 days after serving it, or
> >
> > **(B)** if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
>
> **(2)** ***Other Amendments***.  In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a) (bold and italics in original).

> Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.  It is well settled in this circuit that untimeliness alone is a sufficient reason to deny leave to amend, especially when the party filing the motion has no adequate explanation for the delay.  Furthermore, where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial.

Frank v. U.S. West, Inc., 3 F.3d 1357, 1365-66 (10th Cir. 1993)(internal citations, quotation marks,

and bracket omitted).  See Duncan v. Manager, Dep't of Safety, City & County of Denver, 397 F.3d

1300, 1315 (10th Cir. 2005)(quoting <u>Frank v. U.S. West, Inc.</u> and stating that resolving the issue whether to allow a plaintiff to file a supplement to his complaint is "well within the discretion of the district court").  "The . . . Tenth Circuit has emphasized that '[t]he purpose of [rule 15(a)] is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'"  <u>B.T. ex rel. G.T. v. Santa Fe Pub. Schs.</u>, No. CIV 05-1165 JB/RLP, 2007 WL 1306814, at *2 (D.N.M. Mar. 12, 2007)(Browning, J.)(quoting <u>Minter v. Prime Equip. Co.</u>, 451 F.3d 1196, 1204 (10th Cir. 2006)).  "Specifically, the . . . Tenth Circuit has determined that district courts should grant leave to amend when doing so would yield a meritorious claim."  <u>Burleson v. ENMR-Plateau Tel. Co-op.</u>, No. CIV 05-0073 JB/KBM, 2005 WL 3664299, at *1 (D.N.M. Sept. 23, 2005)(Browning, J.)(citing <u>Curley v. Perry</u>, 246 F.3d 1278, 1284 (10th Cir. 2001)).

Although rule 15(a) provides that leave to amend shall be freely given, "the district court may deny leave to amend where amendment would be futile."  <u>Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.</u>, 175 F.3d 848, 859 (10th Cir. 1999).  <u>See</u> <u>Street v. Curry Bd. of County Comm'rs</u>, No. CIV 06-0776 JB/KBM, 2008 WL 2397671, at *5 (D.N.M. Jan. 30, 2008)(Browning, J.)(noting that "[a] court may properly deny leave to amend if the amendment would prove futile," and that "[a] proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason")(quoting <u>Watson ex rel. Watson v. Beckel</u>, 242 F.3d 1237, 1239-40 (10th Cir. 2001)).  "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal."  <u>Bradley v. Val-Mejias</u>, 379 F.3d 892, 901 (10th Cir. 2004)(quoting <u>Jefferson County Sch. Dist. v. Moody's Investor's Servs.</u>, 175 F.3d 848, 859 (10th Cir.1999)).

Undue delay occurs where the plaintiff's amendments "make the complaint 'a moving target.'"  <u>Minter v. Prime Equip. Co.</u>, 451 F.3d 1196, 1206 (10th Cir. 2006)(quoting <u>Viernow v. Euripides Dev. Corp.</u>, 157 F.3d 785, 800 (10th Cir. 1998)).  "A party who delays in seeking an

-14-

amendment is acting contrary to the spirit of the rule and runs the risk of the court denying permission because of the passage of time." Minter v. Prime Equip. Co., 451 F.3d at 1205 (citation omitted). The longer the delay, "the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend." Minter v. Prime Equip. Co., 451 F.3d at 1205 (citing Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004)). Undue delay may also occur where a plaintiff was aware of all the information on which the proposed amendment is based before the filing of an earlier complaint. See Pallottino v. City of Rio Rancho, 31 F.3d 1023, 1027 (10th Cir. 1994)(noting that filed motion to amend "was not based on new evidence unavailable at the time of the original filing").

## STANDARD FOR MOTIONS TO DISMISS

Under rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994). The sufficiency of a complaint is a question of law, and when addressing a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. See Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006); Hous. Auth. of Kaw Tribe v. City of Ponca City, 952 F.2d 1183, 1187 (10th Cir. 1991).

A complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed factual allegations, but a plaintiff's obligation to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. at 555 (internal citation omitted). "[T]he Supreme Court recently . . . prescribed a new inquiry for us to use in reviewing a dismissal: whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570). See Bixler v. Foster, 596 F.3d 751, 756 (10th Cir. 2010). "This is not to say that the factual allegations must themselves be plausible; after all, they are assumed to be true. It is just to say that relief must follow from the facts alleged." Bryson v. Gonzales, 534 F.3d at 1286. "The [Supreme] Court explained that a plaintiff must 'nudge his claims across the line from conceivable to plausible' in order to survive a motion to dismiss." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570)(alterations omitted). "Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177 (emphasis in original).

The Supreme Court has recently expounded upon the meaning of Bell Atl. Corp. v. Twombly.

> Two working principles underlie [the] decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial

-16-

experience and common sense.

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009)(citation omitted).  Additionally, the Supreme

Court has commented:

> In keeping with these principles a court considering a motion to dismiss can choose
> to begin by identifying pleadings that, because they are no more than conclusions,
> are not entitled to the assumption of truth. While legal conclusions can provide the
> framework of a complaint, they must be supported by factual allegations.

Id. at 1950.  See Bixler v. Foster, 596 F.3d at 756 ("[T]he tenet that a court must accept as true all

of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do not

suffice.")(quoting Ashcroft v. Iqbal, 129 S. Ct. at 1949); Barrett v. Orman, No. No. 10-7000, 2010

WL 1499586, at *2 (10th Cir. Apr. 15, 2010)("A complaint does not 'suffice if it tenders naked

assertions devoid of further factual enhancement.'")(quoting Ashcroft v. Iqbal, 129 S. Ct. at 1949).

## RELEVANT LAW REGARDING PLEADING CAUSATION

Section 14(a) of the Exchange Act provides:

> It shall be unlawful for any person . . . , in contravention of such rules and
> regulations as the Commission may prescribe . . . , to solicit or to permit the use of
> his name to solicit any proxy or consent or authorization in respect of any security
> (other than an exempted security) registered pursuant to section 78l of this title.

15 U.S.C. § 78n(a) (2008).  Rule 14a-9, which the SEC enacted pursuant to its authority to regulate

proxy solicitations under § 14(a), provides the substantive content for many claims under § 14(a).

That rule provides:

> No solicitation subject to this regulation shall be made by means of any proxy
> statement, form of proxy, notice of meeting or other communication, written or oral,
> containing any statement which, at the time and in the light of the circumstances
> under which it is made, is false or misleading with respect to any material fact, or
> which omits to state any material fact necessary in order to make the statements
> therein not false or misleading or necessary to correct any statement in any earlier
> communication with respect to the solicitation of a proxy for the same meeting or

subject matter which has become false or misleading.

17 C.F.R. § 240.14a-9 (2008)("rule 14a-9").

There are four basic elements of a claim under § 14(a) and rule 14a-9.  The plaintiff must establish that: (i) the proxy statement contains a material misrepresentation or omission; (ii) the defendants were at least negligent; (iii) the misrepresentations or omissions caused the loss of which the plaintiff complains; and (iv) the proxy statement was an essential link in the completion of the transaction at issue.  See Mills v. Elec. Auto-Lite Co., 396 U.S. at 385; Lane v. Page, 649 F. Supp. 2d at 1275-78 & n.4 (discussing the distinction between loss causation and transaction causation, and finding that loss causation must be adequately pled); Boone v. Carlsbad Bancorp., Inc., No. CIV 86-0851 JP, 1988 WL 341347, at *10 (D.N.M. Nov. 29, 1988)(citing Wilson v. Great Am. Indus., Inc., 661 F. Supp. 1555, 1562 (N.D.N.Y. 1987)).  At issue in this case are the third and fourth elements.

There are two forms of causation that the plaintiff must allege and prove in a § 14(a) securities case: transaction causation and loss causation.  See Grace v. Rosenstock, 228 F.3d 40, 46-47 (2d Cir. 2000)("We have also noted that both loss causation and transaction causation must be proven in the context of a private action under § 14(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder."); Koppel v. 4987 Corp., 167 F.3d 125, 137 (2d Cir. 1999)("[W]e have described two components of causation in the context of securities litigation: transaction causation and loss causation."); Wilson v. Great Am. Indus., Inc., 979 F.2d 924, 931 (2d Cir. 1992); Lane v. Page, 649 F. Supp. 2d at 1275-78 & n.4; Spiegel v. Siegel, No. 06-61848-CIV, 2008 WL 151951, at *6 (S.D. Fla. Jan. 15, 2008)("A plaintiff must also show both a causal nexus between the misrepresentations and his injury (loss causation) and a causal nexus between the misrepresentations and his decision to engage in the subject transaction (transaction causation).").  Loss causation refers

to the causal connection between the wrongful conduct and the economic loss for which the plaintiff seeks relief, and resembles a form of proximate cause.  See Grace v. Rosenstock, 228 F.3d at 46 (defining "loss causation" as the fact "that the misrepresentations or omissions caused the economic harm"); Koppel v. 4987 Corp., 167 F.3d at 137; Wilson v. Great Am. Indus., Inc., 979 F.2d at 931 ("We recognize that loss causation or economic harm to plaintiffs must be shown, as well as proof that the misrepresentations induced plaintiffs to engage in the subject transaction, that is, transaction causation.").  Transaction causation, on the other hand, refers to the causal connection between the wrongful conduct and the securities transaction about which the plaintiff complains, and might be characterized as a form of reliance.  See Grace v. Rosenstock, 228 F.3d at 46 (defining "transaction causation" as the fact "that the violations in question caused the [plaintiff] to engage in the transaction in question"); Koppel v. 4987 Corp., 167 F.3d at 137; Wilson v. Great Am. Indus., Inc., 979 F.2d at 931; Boone v. Carlsbad Bancorp., Inc., 1988 WL 341347, at *10.

The presumption in Mills v. Electric Auto-Lite Co. refers to a legal presumption that can help satisfy a plaintiff's burden to prove transaction causation.

> Where there has been a finding of materiality, a shareholder has made a sufficient showing of causal relationship between the violation and the injury for which he seeks redress if, as here, he proves that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction.

396 U.S. at 385.  See Minzer v. Keegan, 218 F.3d 144, 149 n.2 (2d Cir. 2000)("[T]he Court [in Mills v. Electric Auto-Lite Co.,] was only relieving plaintiffs of the difficult burden of proving that, properly informed, shareholders would have defeated the transaction in question."); Howing Co. v. Nationwide Corp., 972 F.2d 700, 709 (6th Cir. 1992).

## ANALYSIS

Pursuant to the Court's suggestion in its July 2009 Memorandum Opinion and Order, Lane

moves the Court to grant him leave to amend paragraph 64 of the Second Amended Complaint to correct the noted shortcomings in Lane's allegations of loss causation.  <u>See</u> Motion at 1-2.  The Defendants oppose the amendment.  Westland and SunCal provide the most detailed opposition, raising two grounds for denial of Lane's proposed amendment.  First, Westland and SunCal argue that the amendment is insufficient because it does not allege any factual basis for contending that the merger caused the shareholders any economic harm.  <u>See</u> Response at 1-2.  Second, they argue that the PSLRA abrogated the presumption of <u>Mills v. Electric Auto-Lite Co.</u>, and Lane has not pled and cannot prove transaction causation without the aid of that presumption.  <u>See</u> Response at 2.  The other Defendants join in the arguments that Westland and SunCal present.  <u>See</u> Directors' Response at 1 n.1; Response of the D.E. Shaw Defendants to Plaintiff's Opposed Motion for Leave to Amend Complaint at 1-2, filed August 3, 2009 (Doc. 182).  The Director Defendants oppose the proposed amendment because, they argue, many of the facts asserted in the proposed Third Amended Complaint are components of claims that the Court dismissed on grounds unrelated to Lane's allegations of loss causation.  <u>See</u> Directors' Response at 3-4.  The Court concludes: (i) that Lane's Third Amended Complaint, which does not remove the allegations underlying claims that the Court has dismissed on other grounds, will not allow him to reassert the claims that the Court has dismissed; and (ii) the Court will permit Lane's amendment to paragraph 64.

## I.    <u>THE COURT WILL NOT STRIKE FACTS FROM THE PLEADINGS.</u>

The Director Defendants' opposition to Lane's motion argues that the Court should deny Lane's request for leave to amend because the Third Amended Complaint includes factual allegations relating to theories of recovery that the Court has rejected.

> Specifically, Plaintiff's TAC should not contain the following claims (collectively, the "Improper Claims"): (1) the alleged failure to disclose conflicts of interest related to employment agreements and trustee/director positions (the "Conflict of Interest"

claims); (2) the alleged failure to disclose deficiencies in the market-check process for the merger between Westland Development Co., Inc. ("Westland") and SunCal Companies ("SunCal") (the "Market Check" claim); (3) the alleged failure to disclose an internal company valuation performed by Westland's vice president (the "Value Menu" claim); (4) the alleged failure to disclose that the directors had information that Westland property might contain 100 to 500 million barrels of oil (the "Oil Reserves" claim); and (5) the alleged failure to disclose efforts to take advantage of a Tax Increment Development District (the "TIDD" claim).

Directors' Response at 2. The Director Defendants argue that this Court rejected certain grounds that Lane alleged supported his § 14(a) and rule 14a-9 claims, and that the Third Amended Complaint should therefore not include the factual allegations upon which those theories or grounds were put forth. See Directors' Response at 3-4.[7] Lane argues that what the Director Defendants propose is not properly raised in opposition to a motion for leave to amend, but is more appropriately the subject of a motion to strike under rule 12(f). See Reply Memorandum of Law in Further Support of Motion to Amend and in Response to the Director Defendants' Opposition at 1, filed August 27, 2009 (Doc. 185)("Reply 1").[8] He then argues that the fact that the Court dismissed certain theories of recovery at this point in the case does not justify striking factual allegations from the pleadings. See Reply 1 at 2-5. Finally, he argues that the factual allegations that the Director Defendants propose to strike are relevant to his remaining claim and leaving those allegations will not prejudice the Director Defendants. See Reply 1 at 5-10.

The Court agrees with Lane that the Director Defendants' concerns are more suited to a motion to strike and do not adequately set up grounds for denial of a motion to amend. The Court

---

[7] The Director Defendants cite portions of the Court's prior Memorandum Opinion and Order in which it found that the various alleged misrepresentations were not material or not misleading, or both. See Directors' Response at 3-4.

[8] Lane also correctly points out that the Court did not dismiss any particular factual allegations with prejudice. It merely found some factual allegations insufficient to support the claims that Lane asserted. See Reply 1 at 2-3; Memorandum Opinion and Order (Doc. 177).

also agrees that, if the Court grants the motion to amend and the amended complaint includes factual allegations that primarily support theories of recovery that the Court has dismissed, those theories will not spring back to life.[9]  The Court will instead analyze whether the Court should grant what it construes to be the Director Defendants' motion to strike.

Rule 12(f) permits a party to move the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."   Fed. R. Civ. P. 12(f). The only basis that the Director Defendants assert for striking the contested factual allegations is that the allegations are "immaterial."  While the Court has found that certain of the alleged facts are not material, the Court's assessment had to do with whether the alleged facts were material to shareholders and not whether the facts were material to the suit generally.  As several district courts in the Tenth Circuit have commented, factual allegations should generally not be struck unless they have no possible relation to the controversy.  See Sai Broken Arrow C, LLC v. Guardian Emergency Vehicles, Inc., 2010 WL 132414, at *5; Bd. of County Comm'rs of the County of La Plata, Colo. v. Brown Group Retail, Inc., 2009 WL 2514094, at *2; Roderick Revocable Living Trust v. XTO Energy, Inc., 2009 WL 603641, at *2.  As Professors Wright and Miller stated:

---

[9] Lane also contends that, even if the theories of recovery were revived, the law-of-the-case doctrine and *stare decisis* dictate that the Court would come to the same conclusion as to those theories if the Director Defendants' re-filed their motion to dismiss.  The Court disagrees.  Law of the case is a doctrine that binds the trial court after an appeal.  See Clark v. State Farm Mut. Auto. Ins. Co., 590 F.3d 1134, 1140 (10th Cir. 2009)("Under the law of the case doctrine, a legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time.").  *Stare decisis* is how a court treats its and other courts' precedent in other cases.  Meredith v. Beech Aircraft Corp., 18 F.3d 890, 895 (10th Cir. 1994) ("*Stare decisis* is the policy of courts to adhere to precedent and not to disturb a settled point of law.")(emphasis in original).  While the doctrines do not bind the Court to decide issues in the case the same way it did before, until Lane moves to reconsider the Court's prior rulings, he is bound by the prior orders, which limit what claims in his Complaint are currently alive.

> [F]ederal judges have made it clear, in numerous opinions . . . that Rule 12(f) motions to strike . . . should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action.

C. Wright & A. Miller, supra § 1382.

Here, the factual allegations are related to the suit, even if they do not independently establish a theory of recovery. They deal with purported dishonesty in the course of developing and issuing a proxy statement, and in convincing shareholders to vote in favor of a merger, which is what the case is about. Furthermore, the Director Defendants do not put forth any prejudice that those allegations will cause them, other than Lane being permitted discovery on them. If Lane is able to clear the hurdles of the PSLRA and the Federal Rules of Civil Procedure by pleading a valid claim, he should be allowed to use discovery to probe further into all of the ways in which he alleges that the Defendants' conduct was fraudulent. Discovery is not, under the rules at least, strictly limited to the claims, but to evidence that might reasonably lead to admissible evidence of the asserted claims. The facts pled thus have some connection to the case and do not unduly prejudice the Director Defendants. The Court therefore will not strike the challenged facts, nor will it deny the motion for leave to amend on condition that Lane delete them from the Third Amended Complaint.

## II.   LANE'S AMENDED PARAGRAPH 64 IS NOT SO SPECULATIVE AS TO BE SUBJECT TO A MOTION TO DISMISS ON THAT BASIS.

Initially, the Court is inclined to find ¶ 64 to be a sufficient allegation of both causation and damages. As the Court stated in its prior opinion: "[a]n adequate pleading of economic loss would indicate what the loss contemplated is and the basic causal connection for the loss." Broken down, the paragraph states: (i) the Defendants put false and/or misleading information -- the details of

-23-

which are explained earlier in the Complaint -- in the proxy statements, <u>see</u> Proposed Third Amended Complaint ¶ 64, at 41 ("[T]he Proxy Statement misrepresented and/or concealed material information."); (ii) based on that false, misleading, or incomplete information, the shareholders believed that $315.00 was a fair value to receive for their Westland shares and thus assented to the merger, <u>see</u> <u>id.</u> ¶ 64, at 41 ("As a direct result of the defendants' negligent preparation, review and dissemination of the false and/or misleading Proxy Statement, plaintiff and the class . . . were induced to vote their shares and accept inadequate consideration of $315 per share . . . ."); (iii) the Defendants were aware that $315.00 was not a fair value, because they had notice of appraisals estimating the value of Westland stock at between $474.00 and $1013.00 per share, <u>see</u> <u>id.</u> ¶ 64, at 42 ("[D]efendants were aware of and/or had access to . . . Westland's true value, which was between approximately . . . $474 per share . . . and as much as . . . $1,013 per share . . . ."); and (iv) because of the false and/or misleading statements and/or omissions, the shareholders were deprived of their right to make an informed voting decision, <u>see</u> <u>id.</u> ¶ 64, at 41-42 ("[The Defendants' conduct] deprived plaintiff and the class of their right to a fully informed shareholder vote . . . ."), and did not exercise their right to dissent and appraisal, <u>see</u> <u>id.</u> ¶ 64, at 41 ("[P]laintiff and the class were precluded . . . from exercising their right to seek appraisal . . . ."), but rather were induced to accept the inadequate value of $315.00 per share, <u>see</u> <u>id.</u> ¶ 64, at 41 ("[P]laintiff and the class were . . . induced to vote their shares and accept inadequate consideration of $315 per share . . . ."). Lane does not set forth his proposed damages model -- he states that the class "suffered damages and actual economic losses . . . in an amount to be determined at trial." <u>Id.</u> ¶ 64, at 41. He sets forth, however, a causal chain from the misrepresentations to the transaction, to the alleged damages. It is not immediately apparent what more a defendant could desire at the pleading stage.

A.   **THE DEFENDANTS' HYPOTHETICAL-ONE-HUNDRED-PERCENT-DISSENT-AND-APPRAISAL ARGUMENT MISCONSTRUES THE THIRD AMENDED COMPLAINT.**

The Defendants argue that Lane has "failed to allege a non-speculative basis for a contention that the shareholders sustained economic harm as a result of the merger." Response at 5. The Defendants characterize Lane's allegation as "the possibility the shareholders could have availed themselves of dissenters' appraisal rights under a hypothetical appraisal proceeding pursuant to § 53-15-4 of the New Mexico Business Corporation Act."[10] Response at 6. Based on this interpretation, the Defendants argue that this measure of damages is implausible, because there is no way the entire class could have dissented from the merger and the merger still gone forward. If there was no merger, none of the class members would have had the right to dissent and appraisal, and thus would not have received the $474.00 to $1013.00 per share that Lane asserts the stock was worth. See id. Lane refers to this argument as an "attempt to convince the Court that [the Defendant's] version of the facts and their theories of the case sufficiently disprove [Lane's] allegations." Reply Memorandum in Further Support of Lead Plaintiff's Motion for Leave to Amend at 1, filed August 27, 2009 (Doc. 186)("Reply 2"). Lane insists that the proper measure of damages is "the diminution in the value of [the plaintiff's] investment" or "what would have been a fair exchange upon full disclosure" of the facts, Reply 2 at 3 (quoting In re Real Estate Assocs. Ltd. P'ship Litig., 223 F. Supp. 2d 1142, 1152 (C.D. Cal 2002)), either of which Lane adequately alleged.

The Court believes that the Defendants' argument misconstrues what the Third Amended

---

[10] Section 53-15-4 sets forth the procedure through which a minority shareholder who opposes any of the major corporate acts listed in NMSA 1978, § 53-15-3 may dissent from the action and, rather than continuing to be a shareholder, sell his shares of stock to the corporation and receive the fair value thereof. See NMSA 1978, § 53-15-4.

Complaint alleges.  The Third Amended Complaint alleges that, because of the Defendants' misrepresentations and omissions in the Proxy Statement, the class members voted in favor of accepting $315.00 per share for their stock, when the stock was actually worth between $474.00 and $1013.00 per share.  Lane alleges that the class members were "precluded . . . from exercising their right to seek appraisal pursuant to § 53-15-4 of the New Mexico Business Corporation Act," but in the same sentence states they "were induced to vote their shares and accept inadequate consideration."  Third Amended Complaint ¶ 64, at 41.  A reasonable interpretation of ¶ 64 is that the injury is shareholders being induced to give up shares of stock worth $474.00 to $1013.00 per share for the inadequate amount of $315.00 per share.  This reasonably states an injury which, if proved, would amount to damages from $159.00 to $698.00 per share -- the difference between the true value of the shares and the price the class was induced into accepting.[11]

Both of the Defendants' arguments -- that the damages model relies upon a hypothetical situation in which all of the class members dissented and the merger nevertheless occurred, and that the class cannot recover without proving that there existed a better merger offer -- rely upon a flawed premise.  The Defendants appear to believe that the class members cannot recover as damages more than the maximum amount of money they could receive in a successfully completed

_____

[11] Moreover, a plaintiff is authorized to plead several theories within the same Complaint and does not run the risk of having the Complaint dismissed because one such theory would not allow recovery.  See Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively . . . .  If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient. ).  Thus, even if Lane intended to allege, as one alternative, that the class should be awarded the amount of damages they would have received if they had all dissented from the merger, the Court need not reject the proposed amendment so long as one of Lane's apparent damages theories might be successful.  See Reply 2 at 3 (stating that the Third Amended Complaint "sets forth several 'theories' by which Plaintiff and the class suffered 'economic harm.'").  Moreover, on this motion to amend, the Court need not investigate each alternative theory and determine whether that theory could withstand a motion to dismiss or motion for summary judgment.  The Court is analyzing only whether to allow Lane's proposed amendment.

-26-

merger.  In the first argument, they assert that Lane is contending that, if he had known the truth, he would have dissented from the merger and sought an appraisal of his shares under § 53-15-4, and thus his damages should be calculated as the amount he would have received in such an appraisal. They then logically extend this argument and propose that, if the whole class had known the truth, and the whole class had dissented as Lane proposes he would have done, the merger would have failed and none of the class members would have received any money.  In this situation, the Defendants assert, the class members would have nothing but their shares of Westland stock.  In the second argument, they assert that Lane's claims rely upon a hypothetical better deal and that, in the absence of proof that another bidder would have paid more per share to acquire Westland, Lane cannot prove that they were harmed by the merger that did occur, no matter the price per share.  This argument seems to rely on the notion that, if the shareholders had stopped the SunCal-Westland merger, the shareholders would have no money, but only their shares of Westland stock.  Both of these arguments do not adequately take into account that a reasonable shareholder, aware that his or her stock is worth $474.00 to $1013.00 per share, might <u>prefer</u> to have the shares of stock rather than the inadequate sum of $315.00 per share.  The lack of an allegation that the class members could have immediately converted their shares into cash at the rate of $474.00 to $1013.00 per share is not fatal to the allegation that the class members were harmed by being "duped" into taking $315.00 per share for stock which was worth substantially more than that amount.

With the above interpretation of the alleged injury in mind, the Defendants' argument that, "if the <u>Mills</u> presumption of transaction causation applies, . . . then there is a presumption there would not have been a merger had these alleged violations not occurred," Response at 6-7, does not help the Defendants.  Taking Lane's allegations as true, averting the merger would have resulted in the class members holding shares of stock which were worth, at the time of the transaction, between

$474.00 and $1013.00 each, rather than $315.00 per share of cash.  And, although the Defendants

assert that "[i]t is . . . speculative . . . whether any shareholders hypothetically would have dissented

and sought appraisal rights but for the alleged proxy violations," Response at 7, the presumption in

Mills v. Electric Auto-Lite Co. cures the need to speculate whether each individual shareholder

would have voted against the merger if not for the misrepresentations and omissions in the Proxy

Statement.  Again, while the Third Amended Complaint takes issue with the shareholders being

"precluded . . . from exercising their right to seek appraisal," it does not ask for damages based only

on that inability.  A plain reading of ¶ 64 alleges that the class members were harmed when they

took $315.00 per share because, as a result of the Defendants' wrongdoing, they were unaware that

the shares were worth somewhere between $474.00 and $1013.00 per share.  The avoidance of the

SunCal-Westland merger would have, therefore, averted the injury of which Lane complains.

The Court is similarly unpersuaded by the Defendants' insistence that Lane's allegation --

that the Defendants' "deprived plaintiff and the class of . . . the full and fair value for their Westland

shares" -- corners Lane into seeking as damages the amount the class would have received if they

all sought appraisal.  The Court acknowledges that, if the entire class followed the appraisal

procedure, the merger would, in all likelihood, not have been consummated.  The use of the "full

and fair value" language might be similar to that found in the dissent-and-appraisal statute, but the

Court finds that the thrust of ¶ 64 is that Lane asserts harm in the form of accepting $315.00 per

share for stock that was worth between $474.00 and $1013.00 per share.  As Lane puts his allegation

in his brief:

> Plaintiff specifically alleges damages, delineating that he and the class are entitled
> to the "full and fair value for their Westland shares," *i.e.*, the difference between the
> price paid for Westland, and "Westland's true value," which is alleged to be "as
> much as $806 million, or $1013 per share."  This measure of damages is "certain,
> fixed, and calculable" and is far from being purely "speculative."

Reply 2 at 5 (citations omitted).[12]

### B.   THE DEFENDANTS' EVIDENTIARY ARGUMENTS ARE IMPROPER FOR THIS MOTION TO AMEND, REVIEWED AS A MOTION TO DISMISS.

The Defendants argue that the Court should deny Lane's motion to amend because such amendment would be futile, under the theory that it would be subject to a motion to dismiss as amended.  See Response at 5-18.  The Court is thus reviewing the Defendants' arguments as,

------

[12] In their Response, the Defendants make a subtle argument that perhaps the combination of the Supreme Court's decision in Dura Pharmaceuticals, Inc. v. Broudo, Bell Atlantic Corp. v. Twombly, and Ashcroft v. Iqbal combine to raise the pleading standard in securities class actions to require the plaintiff to plead enough facts to survive a motion for summary judgment.  See Response at 17-18.  In places, the Response appears to imply that a plaintiff should be required to plead, when dealing with facts that expert testimony must support, the factual basis of the expert's opinion and the assumptions on which the expert will rely.  See Response at 7-8.  That stringent pleading requirement certainly seemed to be the thrust of Mr. Schneebeck's arguments during the hearing -- that, without pleading the factual or evidentiary basis of every assertion, even those that were, themselves, factual, the allegations in the Third Amended Complaint were not plausible and would fail under the standards of Bell Atlantic Corp. v. Twombly and Ashcroft v. Iqbal.  See Tr. at 25:2-9, 27:13-28:10, 29:6-36:12 (Court, Schneebeck).  Especially given the lack of any authority to support the Defendants' position, the Court declines to turn a motion to dismiss into a motion for summary judgment, and also rejects the notion that it must hold the equivalent of a pleadings-stage Daubert hearing.  See id. at 25:2-9 (Schneebeck)(arguing that the Court should not accept Lane's allegation that Westland stock might be worth between $474.00 and $1013.00 per share because Lane failed to allege facts from which one may conclude that the appraisal he used to come to that conclusion was plausible); Daubert v. Merrell Dow Pharm., 509 U.S. 579 (1993).  The Supreme Court and the Tenth Circuit have both stated that the factual assertions in a complaint need not be plausible, and may, in fact, be doubtful.  Bell Atl. Corp. v. Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).")(internal citation omitted); Bryson v. Gonzales, 534 F.3d at 1286 ("This is not to say that the factual allegations must themselves be plausible; after all, they are assumed to be true.  It is just to say that relief must follow from the facts alleged.").  The question is whether the plaintiff states a plausible claim for relief, assuming the factual allegations to be true.  The Defendants have cited the Court to no authority suggesting that the bar has been raised yet again to an evidence-pleading standard -- a standard requiring a plaintiff to, at the pleading stage, allege each piece of evidence he or she plans to introduce and then allowing the trial court to pass judgment on whether, in the judge's view, it is plausible that the evidence would persuade a fact-finder.  That procedure is more akin to the standard for a motion for summary judgment, a motion that is filed after discovery, not before discovery.

essentially, a motion to dismiss the Third Amended Complaint.  See Bradley v. Val-Mejias, 379

F.3d at 901; Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc., 175 F.3d at 859;

Street v. Curry Bd. Of County Comm'rs, 2008 U.S. Dist. LEXIS 42131, at *5.  As such, the Court

is to take all non-conclusory facts alleged in the Third Amended Complaint as true.  See Moore v.

Guthrie, 438 F.3d at 1039; Mobley v. McCormick, 40 F.3d at 340; Hous. Auth. of Kaw Tribe v. City

of Ponca City, 952 F.2d at 1187.

The Defendants make the following arguments in their brief that the Court should reject the

allegation that the Defendants were aware of appraisals of Westland property which would justify

a stock value of between $474.00 and $1013.00 per share:

> Plaintiff: a) did not attach a copy of this alleged April 2006 appraisal to his proposed
> Amended Complaint; b) did not produce a copy of this alleged April 2006 appraisal
> in his Initial Disclosures; c) refused to provide Defendants with a copy of it when
> Defendants requested a copy of it after receiving Plaintiff's Motion For Leave To
> Amend Complaint; d) has not identified whether it is a draft or final appraisal; e) has
> not identified what assumptions (speculative or otherwise) the alleged appraisal is
> based on; f) has not provided the Court with any facts establishing that the alleged
> appraisal is based on reliable, non-speculative methodology.

Response at 7-8 (emphasis in original).  The Defendants also assert that some other appraisals

mentioned in the Third Amended Complaint "are all dated subsequent to the merger; two of them

are drafts; and they all have estimated market values within a close range of the amount actually

paid to the Westland shareholders in the merger."  Id. at 8.[13]  They assert that the existence of these

---

[13] Lane contests that he refers to these other appraisals.  See Reply 2 at 7 ("[T]he attached
documents themselves cannot be considered for any purpose at this stage since the PAC did not --
and could not possibly have -- 'referred' to Defendants' documents.").  The Court need not resolve
this issue because, even if the Defendants' documents are genuine and the Court could consider
them, they would do nothing more than create a factual issue whether the appraisals to which the
Third Amended Complaint refers are accurate.  That is a weighing of evidence that the finder of fact
at trial must do, and is not a task for the Court on a motion to dismiss -- or, as is the case here, on
a motion to amend being challenged for futility.

other appraisals calls into question the existence of the appraisals that Lane references, which estimate a per-share value of between $474.00 and $1013.00.  See id.  Lane asserts that he is not required to plead the source of his facts and that it is too early in the case to start weighing evidence. See Reply 2 at 6-8.  On this point, the Court agrees with Lane.[14]

While the reliability of the appraisals upon which Lane relies for his allegations will become highly relevant to -- indeed, perhaps determinative of -- the success or failure of this action, the Defendants' arguments are better aimed at a motion for summary judgment.  At the motion-to-dismiss stage, the Court is concerned only with whether the non-conclusory facts alleged, assuming their truth; state a plausible claim for relief.  See Ashcroft v. Iqbal, 129 S. Ct. at 1949-50; Bell Atl. Corp. v. Twombly, 550 U.S. 555; Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177.  The Court is not concerned with the documents underlying Lane's factual allegations, nor with the assumptions or theories upon which those documents are based, so long as Lane has alleged non-conclusory, non-speculative facts which, taken as true, state a plausible claim for relief.  See Bryson v. Gonzales, 534 F.3d at 1286 ("This is not to say that the factual allegations must themselves be plausible; after all, they are assumed to be true.  It is just to say that relief must follow from the facts alleged.").  In the context of this motion to amend, the Court is concerned with an even more narrow question: whether the non-conclusory, non-speculative facts alleged in ¶ 64 of the Third Amended Complaint plausibly allege proximate cause and damages.  The Court has concluded that the allegations are sufficient and that, therefore, the proposed amendment would not be futile.  The Court is not persuaded by the Defendants' evidentiary arguments.  See Sutton v. Utah State Sch. for

---

[14] As Lane points out, the Court has already told the Defendants that "[a] plaintiff is not required to plead the source of [his or her] facts." Reply 2 at 6 (quoting Lane v. Page, 581 F. Supp. 2d at 1117 (Browning, J.)).

the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999)("The court's function on a Rule 12(b)(6)

motion is not to weigh potential evidence that the parties might present at trial . . . .")(quoting Miller

v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991)).[15]

## C. LANE NEED NOT SHOW THAT THERE WAS A BETTER DEAL AVAILABLE.

The Defendants next assert that, "[g]iven that, as explained above, statutory appraisal rights

were available only to individual dissenting shareholders, Plaintiff's claim in this case must be based

on a possible hypothetical better deal."  Response at 8.  They insist that "Plaintiff is alleging the

existence of a hypothetical transaction which would have been more favorable and/or an appraisal

based on such a hypothetical available better offer."  Id. at 9.  They call this "pure speculation."  Id.

Given that the Court has rejected the Defendants' attempt to corner Lane into seeking damages only

for what he could have acquired from a successful merger, rather than what the shareholders would

have if they had averted the merger, the Court likewise rejects this argument.[16]  Lane has

---

[15] With regard to Lane's alleged refusal to give the Defendants a copy of the document, once discovery is re-opened, they can request the document through the proper procedural device.  See Lane v. Page, No. CIV 06-1071 JB/ACT, 2009 WL 1312896, at *2 (D.N.M. Feb. 9, 2009)(Browning, J.)(granting the Defendants' motion to enforce PSLRA stay during the pendency of the Defendants' motions to dismiss).  If Lane continues to refuse to turn over the document through proper discovery, the Defendants can move to compel production pursuant to rule 37 of the Federal Rules of Civil Procedure.  If Lane then states he has no such document, the Defendants can move for summary judgment, at which point Lane will have to provide the document -- or some other document -- as evidence of damages, or have his claims dismissed.  The Court will not, at this time, dismiss Lane's claim solely because he refuses to turn over documents when the law does not compel him to do so.

[16] The Defendants' authority supporting this argument all rests on the premise that the plaintiff is unable to prove actual loss and that a better deal must be available to proceed on a lost-opportunity theory -- an alternative to proving actual damages.  See Tse v. Ventana Med. Sys., Inc., 297 F.3d 210, 218 (3d Cir. 2002)("We have . . . recognized, at least in the context of claims brought pursuant to § 14(a) of the Securities Act of 1934 and Rule 14a-9 promulgated thereunder, . . . that plaintiffs may proceed on a theory of 'lost opportunity' without demonstrating any actual loss.); Gould v. American-Hawaiian S.S. Co., 535 F.2d 761, 781 (3d Cir. 1976)("At the outset of our

successfully alleged that, based on a false proxy statement, he and the class members were induced to take an insufficient sum of money for their Westland shares.  Lane does not have to prove that he had some other mechanism to immediately change those shares into cash in order to properly allege damages.

### D.  THE DEFENDANTS' AUTHORITY IS MATERIALLY DISTINGUISHABLE.

The Defendants rely on several cases to support their argument that Lane's allegations are too speculative to support the class' claims.  The first case is Beck v. Dobrowski, 559 F.3d 680 (7th Cir. 2009), in which, after a fairly intense bidding war, EO, a real-estate investment trust, merged with Blackstone Group L.P., a private-equity firm.  See 559 F.3d at 683-84.  Similar to this case, in Beck v. Dobrowski, "the plaintiff . . . argue[d] that had it not been for misleading proxy solicitations, EO's shareholders would have rejected the merger and by doing so have 'reaped the economic benefits of continuing to own [EO] shares.'"  Id. at 684.  In this case, however, Lane alleges that the Defendants were aware of information from which they should have concluded that the Westland stock had a true value of between $474.00 and $1013.00 per share, and nevertheless urged the shareholders to vote in favor of the merger without giving them that information.  In Beck v. Dobrowski, on the other hand, the extent of the plaintiffs' allegations that the merger price was insufficient was "the fact that [the other bidder] Vornado's offer of $56 in cash and stock was

_____

consideration we note that the plaintiffs . . . do not contend that they suffered an out of pocket loss as a result of the merger."); Rudinger v. Ins. Data Processing, Inc., 778 F. Supp. 1334, 1339 (E.D. Pa. 1991)(discussing a plaintiff seeking as damages the profits he would have made if he had taken a different job, rather than the job as president of the defendant corporation, and finding "the profits Rudinger claims on CAP stock are not 'wholly speculative.'"); In re Daimlerchrysler AG Sec. Litig., 294 F. Supp. 2d 616, 627 (D. Del. 2003)("When actual losses cannot be demonstrated, the Third Circuit has recognized an alternate theory of establishing damages.  This theory of damages is known as 'lost opportunity' damages."); Dofflemyer v. W.F. Hall Printing Co., 558 F Supp 372, 380-81 (D. Del. 1983)(abstractly discussing damages in securities actions in the context of determining whether a prior holding of the chancery court was issue preclusive).

superior to Blackstone's final all-cash offer of $55.50, which shows that EO shares had been sold to Blackstone for less than their market value."  559 F.3d at 684.  The United States Court of Appeals for the Seventh Circuit brushed aside this argument:

> [T]he premise is incorrect.  Vornado's offer was not superior to Blackstone's.  The difference between $55.50 and $56 is less than 1 percent, and while Blackstone was prepared to pay the full price for EO on closing, Vornado could not have completed the purchase of EO until and unless its shareholders approved the acquisition, which would take months.  At any plausible discount rate, a delay of several months in EO's receipt of 45 percent of the purchase price (the percentage that was to be paid for in stock, thus requiring the approval of Vornado's shareholders, rather than in cash) would reduce the present value of Vornado's offer by more than 1 percent.

559 F.3d at 684.  The Seventh Circuit therefore upheld the district court's 12(b)(6) dismissal.

Contrary to the Defendants' assertion, this case does not "illustrate[] what happens, under the Supreme Court's new 12(b)(6) requirements, when a plaintiff with a § 14(a) claim asserting insufficient price for a merger, does not allege that there was a better available offer."  Response at 10.  Rather, Beck v. Dobrowski illustrates what happens when a plaintiff's factual allegations that the corporation accepted an insufficient value per share in a merger are insufficient.  The Seventh Circuit was concerned, not with the plaintiff's damages theory, but with the sufficiency of the allegations underlying that theory.  The plaintiffs in Beck v. Dobrowski chose to use the existence of the allegedly better offer as their basis for asserting that the price received for the stock was insufficient.  The Court sees no flaw in the Seventh Circuit's finding that the existence of another merger deal, with different parameters, which would have given the shareholders an additional one percent per share in cash, but would have come with other countervailing detriments, is insufficient to allege an actual injury.  What the Seventh Circuit found was that the alleged better deal was not truly better.  In this case, however, Lane alleges that the Westland stock was worth between fifty and two-hundred-twenty-two percent more than the shareholders received from the merger and bases

that allegation on alleged appraisals of which the Defendants were allegedly aware. The Court cannot reasonably find, as a matter of law, that retaining the stock which was allegedly worth between $474.00 and $1013.00 per share was not a better deal than accepting $315.00 per share in the merger.

The Defendants next point to Rudinger v. Insurance Data Processing, Inc. and Gould v. American-Hawaiian S.S. Co. to support their opposition to Lane's motion. These cases, however, describe the standard for proving lost-opportunity damages in a § 14(a) action. As the Defendants acknowledge, courts use lost-opportunity damages as the measure in a § 14(a) action when actual damages are unavailable or cannot be established with the necessary certainty. See In re Daimlerchrysler AG Securities Litigation, 294 F. Supp. 2d at 627 ("When actual losses cannot be demonstrated, the Third Circuit has recognized an alternate theory of establishing damages. This theory of damages is known as 'lost opportunity' damages."). The Court has concluded that the Third Amended Complaint adequately alleges actual damages in the form of being induced to give up shares of stock worth between $474.00 and $1013.00 per share for $315.00 per share based on alleged misstatements and omissions in the Defendants' proxy materials. The Court thus finds Rudinger v. Insurance Data Processing, Inc. and Gould v. American-Hawaiian S.S. Co. inapposite. The same is true of Tse v. Ventana Medical Systems, wherein the plaintiffs admitted that they suffered no actual loss from the merger. See 297 F.3d at 218 ("The plaintiffs in this case did not experience any actual loss[.]").

Goldkrantz v. Griffin, No. 97 CIV. 9075(DLC), 1999 WL 191540 (S.D.N.Y. Apr. 6, 1999), upon which the Defendants rely as an example of an "unduly speculative" damages theory, dealt with wholly different facts from this case. There, the plaintiff was alleging damages in the form of a decrease in the value of the stock after the merger. In analyzing the plaintiff's argument on

-35-

summary judgment, the court held that the "plaintiff has produced no evidence that the decrease in value of the [] stock was attributable to the alleged misrepresentation [and the] defendants have established that any decrease in price can not be attributed to the misrepresentation."  1999 WL 191540, at *8.  In this case, Lane asserts that the Defendants deceived the class members into agreeing to a merger at a price per share that was too low, thereby causing the class members injury. Whether Lane can produce sufficient evidence to establish the facts underlying this theory is not currently before the Court on this motion to amend.  Goldkrantz v. Griffin is thus also inapposite.

The Defendants' description of Cornell Capital Partners, L.P. v. Eagle Broadband, Inc., No. Civ. 03-1860(WGB), 2006 WL 1098175 (D.N.J. Mar. 28, 2006), informs the Court that the case is inapplicable.  The Defendants cite a paragraph of the opinion that they believe supports their position:

> Cornell contends . . . that it should be entitled to recover the "additional consideration for its investment" that it would have been in a position to demand had it known the true condition of Eagle's financial status . . . .  Cornell's request for a "commensurate increase in the consideration it received," however, is so vague and indefinite that any award would be mere speculation.

Response at 15 (quoting 2006 WL 1098175, at *8).  See Rubenstein v. IU Int'l Corp., 506 F. Supp. 311 (E.D. Pa. 1980)(refusing to allow a plaintiff to allege damages based on the estimated value of hypothetical, non-existent stock); Labaton v. Universal Leaf Tobacco Co., No. 77 Civ. 119 (CMM), 1979 WL 1235, at *1 (S.D.N.Y. Aug. 1, 1979)("Any claim based on the possibility that Congoleum would have been forced higher in a bidding war, or that in the intervening years other bidders might have tendered offers at prices higher than the prevailing market prices are far too speculative a basis for awarding damages.").  Unlike Cornell Capital, which sought "a commensurate increase in the consideration it received," the damages Lane seeks are calculable and in no way "speculation." Lane alleges that, had the misrepresentations and omissions in the Proxy Statement not misled the

-36-

class members, they would have voted against the merger, and, instead of $315.00 per share of Westland stock, they would still have Westland stock which was, at the time of the merger, worth between $474.00 and $1013.00 per share.  Because the Court cannot easily return the Westland stock to the class members -- and because Lane does not seek that relief -- the law does the next best thing and tries to put the class members back in the position they would have been had no violation occurred.  In this case, the next best thing is to give the class members, assuming they can establish a violation of § 14(a), the difference between inadequate price per share they accepted in the merger and the price per share that they would have retained if they had not sold those shares.  The Court rejects the Defendants' arguments and finds that Lane's new ¶ 64 adequately alleges loss causation

## III.   THE PSLRA DID NOT ABROGATE THE PRESUMPTION OF TRANSACTION CAUSATION THAT MILLS V. ELECTRIC AUTO-LITE CO. CREATED.

One presumption on which Lane appears to rely is that set forth in Mills v. Electric Auto-Lite Co., wherein the Supreme Court stated:

> Where there has been a finding of materiality, a shareholder has made a sufficient showing of causal relationship between the violation and the injury for which he seeks redress if, as here, he proves that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction.  This objective test will avoid the impracticalities of determining how many votes were affected, and, by resolving doubts in favor of those the statute is designed to protect, will effectuate the congressional policy of ensuring that the shareholders are able to make an informed choice when they are consulted on corporate transactions.

396 U.S. at 385.  As an alternative argument, the Defendants assert that the Court should reject Lane's proposed amendment because Congress abrogated the Mills v. Electric Auto-Lite Co. presumption of transaction causation when it passed the PSLRA.  Without that presumption, Lane's Third Amended Complaint is insufficient because it does not attempt to plead transaction causation. Lane disagrees with the Defendants' legal argument, asserting that the presumption remains because

Congress has not abrogated it and the Supreme Court has not overruled it.  The Court agrees with

Lane's analysis.

The Defendants' argument is a stretch given the Court's previous discussions of the

distinction between loss causation and transaction causation and the Defendants' reliance solely on

the "implicit" holding of a Seventh Circuit opinion.  Response at 20.  The Defendants cite to Section

78u-4(b)(4) of the PSLRA, which, the Court acknowledges, applies to section 14(a) actions.  See

Beck v. Dobrowski, 559 F.3d at 681-82 (Posner, J.)("[The district court] ruled that the Private

Securities Litigation Reform Act, 15 U.S.C. § 78u-4, is applicable to suits under section 14(a),

which is correct[.]"); Knollenberg v. Harmonic, Inc., 152 Fed. Appx. 674, 682 (9th Cir. 2005)

("[T]he PSLRA pleading requirements apply to claims brought under Section 14(a) and Rule

14a-9."); Lane v. Page, 581 F. Supp. 2d at 1107-08 (Browning, J.)(noting that, although the Tenth

Circuit has not ruled whether the PSLRA applies in § 14(a) actions, the "circuits [that] have weighed

in on the issue . . . all seem to have uniformly concluded that § 14(a) actions are subject to the

PSLRA provisions."); Response at 20.  That provision states: "In any private action arising under

this chapter, the plaintiff shall have the burden of proving that the act or omission of the defendant

alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages."  15

U.S.C. § 78u-4(b)(4) (emphasis added).  First, the provision requires that the plaintiff prove that the

violation caused the loss -- what courts generally refer to, and what the statute itself refers to, as loss

causation.  See 15 U.S.C. § 78u-4(b)(4) (subsection entitled "Loss causation").  The presumption

outlined in Mills v. Electric Auto-Lite Co. involved the issue of transaction causation -- whether the

violation caused the plaintiff to engage in the challenged transaction.  The Court mentioned the

distinction, and some of the confusion regarding it, in its prior opinion.  See Memorandum Opinion

and Order at 24 n.4 (Doc. 177)("In this case, transaction causation would refer to whether the proxy

-38-

solicitation caused the shareholders to approve the merger, while loss causation would refer to any economic harm to the shareholders from the merger."). By its plain language, the PSLRA does not directly address the issue of transaction causation, which was the thrust of the Supreme Court's decision in Mills v. Electric Auto-Lite Co.[17]  See Lane v. Page, 649 F. Supp. 2d at 1277-78 (discussing Mills v. Electric Auto-Lite Co. and stating "the Court believes that the Supreme Court was holding that materiality was sufficient to establish transaction causation," but not sufficient to establish loss causation or damages)(emphasis added).

Second, the only authority on which the Defendants rely for this proposition is the Seventh Circuit's decision in Beck v. Dobrowski.  And, in reality, the only authority comes from the Northern District of Illinois's causation discussion, on which the Seventh Circuit did not directly opine.  See Response at 20 ("Although the Court of Appeals did not address this point, the district court ruled that the requirements of (b)(4) essentially abrogated the Mills relaxed causation standard . . . .").  While the Seventh Circuit affirmed the district court in Beck v. Dobrowski, and the district court held that the PSLRA applied to § 14(a) claims, the district court was not discussing transaction causation.  See Beck ex rel. Equity Office Props. Trust v. Dobrowski, No. 06 C 6411, 2007 WL 3407132, at *5-6 (N.D. Ill. Nov. 14, 2007)("[T]he parties dispute whether the PSLRA or the

---

[17] The Defendants' brief demonstrates this misunderstanding when they state: "Here Plaintiff does not allege the loss causation requirements of Section (b)(4) of the PSLRA, i.e. that but for the alleged proxy violations, the merger would not have occurred."  Response at 21.  The Defendant complains that Lane's omission of an allegation of transaction causation somehow violates the statutory mandate that he allege loss causation.  As the Court has discussed at length, Lane has successfully alleged loss causation, and loss causation is not the same as transaction causation.  The Mills v. Electric Auto-Lite Co. presumption fills in for a lacking allegation of transaction causation -- that, without the proxy violations, the merger would not have occurred.  See Minzer v. Keegan, 218 F.3d at 149 n.2 ("[T]he Court [in Mills v. Electric Auto-Lite Co.,] was only relieving plaintiffs of the difficult burden of proving that, properly informed, shareholders would have defeated the transaction in question.").

common law rule governs the causal link between the defendant's conduct and the plaintiff's loss."). The district court was dealing only with whether the pleadings of loss causation were sufficient, and found that "loss pleadings are deficient under either standard because the Complaint appears to contain no loss allegations at all." Id., at *5.  The district court did not state that the Mills v. Electric Auto-Lite Co. presumption is no more, and neither did it have to, because it based its decision on loss causation and not on transaction causation.  The district court might have been one of the several courts that have, at times, conflated loss causation and transaction causation; or perhaps it was only the plaintiff who made that mistake, and the district court did not see fit to correct the error, because the plaintiff's loss-causation allegations were deficient by any standard.  In any case, the Court does not find that Beck v. Dobrowski stands for the proposition that the PSLRA abrogated the presumption of transaction causation set forth in Mills v. Electric Auto-Lite Co.

Moreover, several cases continue to outline the elements of a § 14(a) and rule 14a-9 claim with reference to Mills v. Electric Auto-Lite Co., even while acknowledging that the PSLRA's pleading requirements apply.  In Knollenberg v. Harmonic, Inc., the United States Court of Appeals for the Ninth Circuit reiterated the elements of a 14(a) claim as: "(1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation, rather than the particular defect in the solicitation materials, was an 'essential link in the accomplishment of the transaction.'"  152 Fed. Appx. at 682 (alterations omitted).  The Ninth Circuit cited, as authority, "Atlantic Coast Airlines Holdings v. Mesa Air Group, Inc., 295 F. Supp. 2d 75, 81-82 (D.D.C. 2003)(quoting General Elec. Co. v. Cathcart, 980 F.2d 927, 932 (3d Cir. 1992))(quoting Mills v. Elec. Auto-Lite Co., 396 U.S. 375, 385 . . . (1970))."  152 Fed. Appx. at 682. The Ninth Circuit then stated, "[m]oreover, the PSLRA pleading requirements apply to claims brought under Section 14(a) and Rule 14a-9."  152 Fed. Appx. at 682.  Notably, the elements still

-40-

include material misrepresentations or omissions, loss causation, and that the proxy statement was an essential link in the accomplishment of the transaction. The first and last elements -- materiality and essential link -- are the factors that Mills v. Electric Auto-Lite Co. stated could stand in for transaction causation. The Ninth Circuit cited to Mills v. Electric Auto-Lite Co. as authority and did not demand that the plaintiff prove transaction causation directly. See also Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc., 594 F.3d 783, 796-97 (11th Cir. 2010)("To sustain a private claim under section 14(a), a plaintiff must show 'that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction.' The transaction at issue must be the source of the plaintiff's injury.")(quoting Mills v. Elec. Auto-Lite Co., 396 U.S. at 385); Koppel v. 4987 Corp., 167 F.3d 125, 137 (2d Cir. 1999)(distinguishing loss causation and transaction causation, and distinguishing transaction causation at issue in Mills v. Electric Auto-Lite Co. from "loss causation -- or economic loss[.]"). In New York City Employee's Retirement System v. Jobs, 593 F.3d 1018 (9th Cir. 2010), the Ninth Circuit again acknowledged that the PSLRA's loss-causation requirement applies to § 14(a) cases, but stated that only three elements exist for a 14(a) claim: (i) material misrepresentations or omissions, (ii) loss causation, and (iii) that the proxy solicitation was "an essential link" in accomplishing the transaction. 593 F.3d at 1022. See Hayes v. Crown Cent. Petro. Corp., 78 Fed. Appx. 857, 861 (4th Cir. 2003)(assuming the PSLRA applies to a § 14(a) claim, but listing the elements as "(1) the proxy statement contained a material misrepresentation or omission (2) that caused the plaintiff injury and that (3) the proxy solicitation was an essential link in the accomplishment of the transaction" and citing Mills v. Electric Auto-Lite Co.); In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1328-29 (3d Cir. 2002)(same); Paskowitz v. Pac. Capital Bancorp, No. CV 09-6449 ODW (JCx), 2009 WL 4911850, at *4 (C.D. Cal. Nov. 6, 2009)(same); City of St. Clair

Shores Gen. Employees Retirement Sys. v. Inland W. Retail Real Estate Trust, Inc., 635 F. Supp. 2d 783, 789-90 (N.D. Ill. 2009)(same).

Finally, the purpose behind the Mills v. Electric Auto-Lite Co. presumption is still valid. The Supreme Court stated that it was creating the presumption to "avoid the impracticalities of determining how many votes were affected" by the misrepresentations or omissions in a proxy statement. 396 U.S. at 385. While the Supreme Court and Congress have both expressed a desire to avoid allowing frivolous or unfounded claims to go to discovery, it has not become more feasible for a plaintiff to determine, retrospectively, how many votes would be affected if the proxy statement had not included material misrepresentations or omissions. Moreover, even if Lane could poll every potential class member, the class members' votes would be heavily tainted by hindsight and the possibility of receiving a money judgment. See Tr. at 41:19-44:9 (Court, Schneebeck); id. at 57:7-58:10 (Court, Robbins)(discussing the issue of demanding a poll of shareholders at the pleading stage). A plaintiff's inability to accurately gauge how many shareholders would have changed their vote if a proxy statement had not contained material misrepresentations and omissions does not, without more, make a securities claim frivolous. In sum, the Court finds no sound reason to conclude that the PSLRA abrogated the presumption of transaction causation that Mills v. Electric Auto-Lite Co. created. The Court thus rejects this basis for denying Lane's motion to amend.

IV.    **BECAUSE LANE HAS FAILED TO INDEPENDENTLY ALLEGE TRANSACTION CAUSATION, ONLY THOSE MISREPRESENTATIONS OR OMISSIONS TO WHICH THE PRESUMPTION OF MILLS V. ELECTRIC AUTO-LITE CO. APPLIES CAN SUPPORT A § 14(a) CLAIM.**

In closing, the Defendants ask the Court to hold that the presumption of transaction causation that Mills v. Electric Auto-Lite Co. creates applies only to misrepresentations and omissions that the Court deems to be material. See Response at 21-22. Because there existed misrepresentations

and omissions in the Proxy Statement that the Court has held are material, whether the immaterial misrepresentations and omissions can likewise support a § 14(a) claim is irrelevant to this motion to amend. Nevertheless, the Court agrees that, for the <u>Mills v. Electric Auto-Lite Co.</u> presumption to apply, the misrepresentation or omission in question must be material. <u>See</u> 396 U.S. at 385 ("<u>Where there has been a finding of materiality</u>, a shareholder has made a sufficient showing of causal relationship between the violation and the injury for which he seeks redress if, as here, he proves that the proxy solicitation itself, . . . was an essential link in the accomplishment of the transaction.")(emphasis added). The Court also agrees, and Lane does not appear to contest, that there is not a factual allegation of transaction causation with respect to the class. The Court will not allow Lane to proceed to the jury on a 14(a) theory based on those factual allegations that the Court has held were not material. <u>See</u> <u>Lane v. Page</u>, 581 F. Supp. 2d at 1131.

The Court has rejected all bases the Defendants have proffered for rejecting the motion to amend. The Third Amended Complaint adequately pleads loss causation and would not be subject to a motion to dismiss on any of the bases that the Defendants present. Having been shown no reason why, in the interest of justice, Lane should not be given this opportunity to amend, the Court will allow the amendment. The Court thus grants the Lead Plaintiff's Opposed Motion for Leave to Amend Complaint Pursuant to Rule 15(a)(2)of the Federal Rules of Civil Procedure.

**IT IS ORDERED** that the Lead Plaintiff's Opposed Motion for Leave to Amend Complaint Pursuant to Rule 15(a)(2)of the Federal Rules of Civil Procedure is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Nicholas Koluncich, III
Law Offices of Nicholas Koluncich
Albuquerque, New Mexico

-- and --

Joe Kendall
Provost Umphrey Law Firm, LLP
Dallas, Texas

-- and --

Darren J. Robbins
Brian O. O'Mara
G. Paul Howe
Randall J. Baron
David W. Mitchell
Danielle S. Myers
Coughlin Stoia Geller Rudman & Robbins, LLP
San Diego, California

     *Attorneys for the Plaintiffs*

Richard A. Sandoval
Law Offices of Richard A. Sandoval
Albuquerque, New Mexico

     *Attorney for Plaintiff-Intervenor Frank Martin*

Douglas G. Schneebeck
Brian K. Nichols
Modrall Sperling Roehl Harris & Sisk, P.A.
Albuquerque, New Mexico

     *Attorneys for Defendants Westland Development Company, Inc.*
       *and SunCal Companies Group*

Greg L. Weselka
Evan P. Singer
Jones Day
Dallas, Texas

     *Attorneys for Defendant SunCal Companies Group*

Juan L. Flores
Sheehan Sheehan & Stelzner, PA
Albuquerque, New Mexico

-- and --

Paul Bessette
Jesse Z. Weiss
Kimberly G. Davis
Christopher W. Ahart
Yusuf A. Bajwa
Greenberg Traurig, LLP
Austin, Texas

> *Attorneys for Defendants Barbara Page, Sosimo S. Padilla, Joe E. Chavez,*
> *Josie Castillo, Charles V. Pena, Georgia Baca, Troy K. Benavidez,*
> *Ray Mares, Jr., and Randolph M. Sanchez*

Trent A. Howell
Jacqueline E. Davis
Holland & Hart, LLP
Santa Fe, New Mexico

-- and --

John D. Lovi
Lara E. Romansic
Michelle M. Oliver
Steptoe & Johnson, LLP
New York, New York

> *Attorneys for Defendants D.E. Shaw Group, D.E. Shaw & Co. L.P.,*
> *D.E. Shaw Real Estate Portfolios 1, L.L.C., D.E. Shaw & Co. LLC,*
> *D.E. Shaw & Co., Inc., D.E. Shaw Investment Group, LLC,*
> *D.E. Shaw & Co. II, Inc., George Rizk, and Anne Dinning*