UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| LAWRENCE LANE, On Behalf of Himself and All Others Similarly Situated, | ) ) ) | No. Civ-06-1071-JB-ACT |
| | ) | <u>CLASS ACTION</u> |
| Plaintiff, | ) ) | |
| vs. | ) ) | LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT |
| BARBARA PAGE, et al., | ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................................1

II.  BACKGROUND AND SUMMARY OF THE LITIGATION ...........................................4

III.  THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT.........10

    A.  Standards for Final Approval of Class Action Settlements ...................................10

    B.  The Settlement Was Fairly and Honestly Negotiated...........................................11

    C.  Serious Questions of Law and Fact Existed that Created Significant Risk
        of Obtaining a More Favorable Result After Continued Litigation......................12

    D.  The Value of an Immediate Recovery Outweighs the Mere Possibility of
        Future Relief After Protracted and Expensive Litigation .....................................14

    E.  The Recommendation of Experienced Counsel Weighs Heavily in Favor
        of Approval of the Settlement...............................................................................16

IV.  THE ATTORNEYS' FEE AND EXPENSE PAYMENT SHOULD BE
     APPROVED ...........................................................................................................16

    A.  Consideration of the Relevant "*Johnson* Factors" Further Supports the
        Negotiated Attorneys' Fees and Expenses............................................................17

        1.  Time and Labor Involved...........................................................................18

        2.  The Novelty and Difficulty of the Questions Raised by the Actions ........20

        3.  The Skill Required to Perform the Legal Services Properly and the
            Experience and Reputations of Plaintiffs' Counsel ..................................21

        4.  The Preclusion of Other Employment by Attorneys Due to
            Acceptance of the Case..............................................................................22

        5.  Whether the Fee Is Fixed or Contingent....................................................22

        6.  The Amount Involved and the Results Obtained........................................23

        7.  The Experience, Reputation, and Ability of Plaintiffs' Counsel ...............23

        8.  The Undesirability of the Case ..................................................................24

        9.  The Customary Fee and Awards in Similar Cases.....................................24

**Page**

    B.    The Requested Expense Award Under the PSLRA for Lawrence Lane
        Should Be Approved ............................................................................... 25

V.    CONCLUSION ............................................................................................................ 26

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Armstrong v. Bd. of Sch. Dirs.*,
   616 F.2d 305 (7th Cir. 1980) .................................................................................10

*Cimarron Pipeline Constr., Inc. v. Nat'l Council on Comp. Ins.*,
   No. CIV 89-822-T, 1993 WL 355466 (W.D. Okla. June 8, 1993) .........................24

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005) .............................................................................................13

*Feerer v. Amoco Prod. Co.*,
   No. Civ. 95-0012 JC/WWD, 1998 U.S. Dist. LEXIS 22248
   (D.N.M. May 28, 1998) ................................................................................ *passim*

*Gottlieb v. Barry*,
   43 F.3d 474 (10th Cir. 1994) .................................................................................18

*Grady v. De Ville Motor Hotel, Inc.*,
   415 F.2d 449 (10th Cir. 1969) ...............................................................................10

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...............................................................................10

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) .........................................................................................16, 23

*Hicks v. Morgan Stanley & Co.*,
   No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890
   (S.D.N.Y. Oct. 24, 2005) .......................................................................................25

*In re Apollo Group, Inc. Sec. Litig.*,
   No. 08-16971, 2010 U.S. App. LEXIS 14478 (9th Cir. June 23, 2010)............13, 14

*In re Apollo Group, Inc. Sec. Litig.*,
   No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995
   (D. Ariz. Aug. 4, 2008) .....................................................................................13, 14

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
   No. 07-61542-CIV-UNGARO, 2011 U.S. Dist. LEXIS 48057
   (S.D. Fla. Apr. 25, 2011) .......................................................................................14

- iii -

**Page**

*In re Cont'l Ill. Sec. Litig.*,
 962 F.2d 566 (7th Cir. 1992) ...................................................................24

*In re Nationwide Fin. Servs. Litig.*,
 No. 2:08-CV-00249, 2009 U.S. Dist. LEXIS 126962
 (S.D. Ohio Aug. 18, 2009) ........................................................................20

*In re Oracle Corp. Sec. Litig.*,
 No. C 01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009).........................................13

*In re Resorts Int'l S'Holders Litig.*,
 Civ. A. No. 9470, 1990 WL 154154 (Del. Ch. Oct. 11, 1990)................................16

*In re Tyco Int'l, Ltd.*,
 535 F. Supp. 2d 249 (D.N.H. 2007) ..........................................................13

*In re Veeco Instruments Inc. Sec. Litig.*,
 No. 05 MDL 0165 (CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ................14

*In re Warner Commc'ns Sec. Litig.*,
 618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986)...................13

*Jones v. Nuclear Pharmacy, Inc.*,
 741 F.2d 322 (10th Cir. 1984) .........................................................10, 11

*Lane v. Page*,
 250 F.R.D. 634 (D.N.M. 2007)...........................................................23, 24

*Lane v. Page*,
 272 F.R.D. 558 (D.N.M. 2011)...........................................................21, 24

*Lane v. Page*,
 649 F. Supp. 2d 1256 (D.N.M. 2009) ..........................................................12

*Lane v. Page*,
 727 F. Supp. 2d 1214 (D.N.M. 2010) ..........................................................13

*Lucas v. Kmart Corp.*,
 234 F.R.D. (D. Colo. 2006) .................................................... *passim*

*McNeely v. Nat'l Mobile Health Care, LLC*,
 No. CIV-07-933-M, 2008 U.S. Dist. LEXIS 86741
 (W.D. Okla. Oct. 27, 2008)..........................................................12, 15, 16

- iv -

Page

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970)....................................................................................................19, 20

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ...................................................................................16

*Rael v. Page*,
    2009 NMCA 123, 147 N.M. 306, 222 P.3d 678 (N.M. Ct. App. 2009),
    *writ denied*, 147 N.M. 422; 224 P.3d 649 (N.M. 2009).........................................2, 6

*Reynolds v. Beneficial Nat'l Bank*,
    288 F.3d 277 (7th Cir. 2002) ...................................................................................15

*Robles v. Brake Masters Sys., Inc.*,
    No. Civ. 10 0135 JB/WPL, 2011 U.S. Dist. LEXIS 14432
    (D.N.M. Jan 31, 2011) .........................................................................................24, 25

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
    314 F.3d 1180 (10th Cir. 2002) ...............................................................................11

*UFCW Local 880 – Retail Food v. Newmont Mining Corp.*,
    352 Fed. Appx. 232 (10th Cir. 2009).......................................................................26

*Uselton v. Commercial Lovelace Motor Freight*,
    9 F.3d 849 (10th Cir. 1993) ...............................................................................18, 19

*Varljen v. H.J. Meyers & Co.*,
    No. 97 CIV. 6742 (DLC), 2000 U.S. Dist. LEXIS 16205
    (S.D.N.Y. Nov. 8, 2000) ..........................................................................................25

*Williams v. First Nat'l Bank*,
    216 U.S. 582 (1910)..................................................................................................10

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
    §78n(a).......................................................................................................................13
    §78t(a).......................................................................................................................6, 7
    §78u-4................................................................................................................1, 4, 7, 25
    §78u-4(a)(4)...............................................................................................................25

**Page**

Federal Rules of Civil Procedure

Rule 23 ...................................................................................................................1

Rule 23(e) ............................................................................................................10

Lead Plaintiff respectfully submits this Memorandum of Law in Support of his Motion for Final Approval of Class Action Settlement pursuant to Federal Rule of Civil Procedure 23 and the Private Securities Litigation Reform Act of 1995 ("PSLRA").

## I.   INTRODUCTION

After more than five years of hard-fought litigation and extensive settlement negotiations, the parties agreed on the terms of a Settlement as set forth in the Stipulation of Settlement ("Stipulation"), previously filed with the Court.  *See* Dkt. No. 363.  The Settlement resolves all claims against all defendants this action as well as breach of fiduciary duty claims pending in the Second Judicial District Court in the County of Bernalillo (collectively, the "Litigation").   In connection with the prosecution of the Litigation and the settlement of the Litigation, the Class will have received a $60 per share increase in the cash consideration from what was to be paid to Westland shareholders in connection with the SHNM merger, as well as an additional $3,793,509.25 in cash, consisting of: (i) a cash payment of $1,500,000 by the DESCO Defendants; and (ii) $2,278,702.41 deposited into the Court's registry in accordance with the Court's May 23, 2011 Stipulated Order (Dkt. No. 352), and an additional $14,806.84 deposited by Modrall Sperling, plus any accumulated interest thereon (collectively, the "Remaining Merger Consideration") to be paid by and/or on behalf of the Director Defendants,[1] Westland Development Company, Inc. ("Westland"), the SunCal Defendants,[2] and the DESCO Defendants[3] in exchange for a release of liability.[4]

---

[1]     The Director Defendants are Barbara Page, Sosimo S. Padilla, Joe S. Chavez, Josie Castillo, Charles V. Peña, Georgia Baca, Troy K. Benavidez, Ray Mares, Jr., and Randolph M. Sanchez.

[2]     The SunCal Defendants include SCC Acquisition Corp., SunCal Companies Group, SCC Acquisitions, Inc., SCC NM Member LLC, SCC Westland Venture LLC, Westland DevCo, LLC, Westland DevCo, LP, Westland Holdco, Inc., and Westland SPE GP LLC.  The SunCal Defendants

The Settlement is the result of lengthy and vigorously contested litigation together with extensive negotiations between and among highly experienced counsel.  At the time of Settlement, the Litigation was in an advanced stage with the parties beginning to prepare for the upcoming trial of the Federal Action.  The Settlement was not reached until Lead Counsel: (i) moved for a preliminary injunction and temporary restraining order on the eve of the shareholder vote; (ii) successfully opposed two rounds of defendants' motions to dismiss; (iii) convinced the New Mexico Court of Appeals, through extensive briefing and oral argument, to reverse the State Court's dismissal of the *Rael* Action and successfully opposed defendants' Petition for Writ of Certiorari to the New Mexico Supreme Court;[5] (iv) obtained class certification over defendants' aggressive opposition; (v) conducted extensive discovery, including reviewing and analyzing over 250,000 pages of documents produced by defendants and non-party witnesses; (vi) prepared for and conducted 38 fact witness depositions; (vii) responded to discovery propounded by defendants and produced thousands of pages of documents in response to defendants' document requests; (viii) prepared lengthy, detailed responses to contention interrogatories and requests for admission; (ix)

---

have asserted that "SunCal Companies Group" was never a legal entity and that one or more of these entities no longer exist.

[3]     The DESCO Defendants include The D. E. Shaw Group, D. E. Shaw & Co. L.P., D. E. Shaw Real Estate Portfolios 1, L.L.C., D. E. Shaw & Co., LLC, D. E. Shaw & Co., Inc., D. E. Shaw Investment Group, LLC, D. E. Shaw & Co. II, Inc., George Rizk, and Anne Dinning.  The DESCO Defendants have asserted that although plaintiff named "The D. E. Shaw Group" as a defendant, no such legal entity exists.  Instead, the DESCO Defendants have asserted that "The D. E. Shaw group" is an informal term sometimes used to refer to one or more affiliated entities.

[4]     All capitalized terms used herein have the same meaning as set forth in the Stipulation.  Dkt. No. 363.

[5]     *See Rael v. Page*, 2009 NMCA 123, 147 N.M. 306, 222 P.3d 678 (N.M. Ct. App. 2009), *writ denied*, 147 N.M. 422; 224 P.3d 649 (N.M. 2009).

successfully litigated numerous complex discovery motions; (x) produced expert reports for three testifying experts for Lead Plaintiff; and (xi) began preparing for trial, including creating a trial plan and selecting the exhibits and testimony to be used at trial.

The Settlement takes into account the specific risks of continued litigation. Defendants vigorously opposed Lead Plaintiff's claims from the outset, and absent settlement would have continued to assert aggressive defenses to Lead Plaintiff's claims, leaving the ultimate outcome and class recovery uncertain. Defendants demonstrated a commitment to defend this case through summary judgment, trial, and beyond if necessary, and are represented by highly capable counsel from well-respected law firms. Lead Plaintiff would have faced substantial risks in establishing loss causation and damages if the case were to continue to summary judgment and trial. Moreover, the fact that the 54,000 acres acquired in the Merger have been foreclosed upon and several of the entities involved in the purchase of Westland are no longer financially viable (or active) would have further hampered Lead Plaintiff's ability to successfully prosecute the claims on behalf of the Class.

Lead Counsel, who are well-respected and highly experienced in prosecuting securities class actions, have concluded, in consultation with Lead Plaintiff, that the Settlement is a favorable result under the present circumstances and is in the best interest of the Class. This conclusion is based on the circumstances present here, including the substantial risks, expense and uncertainties in continuing this Litigation through the completion of discovery, summary judgment motion(s), trial and probable appeal, the relative strengths and weaknesses of the claims and defenses asserted, a complete analysis of the evidence obtained and the legal and factual issues presented, past experience in litigating and taking similar complex actions to trial, the serious disputes between the parties concerning the merits and damages as well as the practical obstacles in obtaining a better result for the Class.

- 3 -

The Stipulation sets forth the separately negotiated attorneys' fee and expense amount to be paid to Plaintiffs' Counsel for their efforts over the last five years in representing the Class. As a result of negotiations between Lead Counsel and the Director Defendants' directors' and officers' (D&O) insurance carrier, the D&O insurance carrier will pay Lead Counsel attorneys' fees in the amount of $3.1 million together with expenses incurred in the prosecution of the Litigation in an amount not to exceed $650,000, subject to this Court's approval. These amounts represent a substantial discount to the actual time invested and expense incurred by Plaintiffs' Counsel. In addition, as permitted under the PSLRA, Lead Plaintiff seeks reimbursement for his time in the amount of $4,725.

For all the reasons discussed herein and in the accompanying Declaration of Darren J. Robbins in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement ("Robbins Decl."), Lead Plaintiff respectfully requests that the Court enter an order: (a) determining that the Settlement is fair, reasonable, and adequate to the Class; (b) granting final approval of the Settlement and entering Judgment as provided in paragraph 1.16 of the Stipulation; (c) approving the payment of attorneys' fees and expenses to Plaintiffs' Counsel as provided for in the Stipulation; and (d) authorizing a payment to Lead Plaintiff for his time expended in representing the Class.

## II.    BACKGROUND AND SUMMARY OF THE LITIGATION[6]

On February 1, 2006, Westland executed a merger agreement with ANM Holdings, Inc. ("ANM") to sell Westland for $200 per share. Thereafter, on February 8, 2006, Atrisco Heritage, LLC offered to acquire Westland for $225 per share. The next day, February 9, 2006, Sedora

---

[6]    A detailed recitation of the history of the Litigation for the past five years is contained in the Robbins Declaration.

- 4 -

Holdings, LLC ("SHNM") sent a formal proposal letter to Westland offering to purchase the Company for $250 per share, which was later increased to $255 per share. A few weeks later, on February 24, 2006, Westland terminated the amended and restated ANM merger agreement and executed a merger agreement with SHNM to acquire Westland for $255 per share.

On February 21, 2006, the first of four shareholder actions were filed in the Second Judicial District Court in the County of Bernalillo (the "State Court") alleging that the Director Defendants had violated their fiduciary duties by, among other things: (i) agreeing to sell Westland at an inadequate price; (ii) granting themselves tens of thousands of Class B shares in connection with the sale of Westland; and (iii) failing to retain for Westland shareholders future revenues from oil and gas leases. On April 5, 2006, the SHNM merger agreement was amended to confirm that: (i) the 35,000 change-in-control Class B shares would not be issued to the directors; and (ii) the per share consideration to be paid to all outstanding shares would be increased accordingly from $255 per share to $266.23 per share. Robbins Decl., ¶17.

On May 30, 2006, Westland received a formal offer from SCC Acquisition Corp. (an investment vehicle which used the trade name "SunCal") to acquire all of the outstanding shares of Westland's common stock for $280 per share.[7] On June 5, 2006, Westland and SHNM amended and restated the SHNM merger agreement to increase the merger consideration from $266.23 to $305 per share. Thereafter, SunCal increased its offer from $280 per share to $308 per share and ultimately to $315 per share. On July 18, 2006, Westland's Board of Directors formally approved the SunCal

---

[7]   The offer also included a provision, among others, whereby the surviving company in the merger would distribute all of Westland's oil and gas revenues, if any, from current leases, and 20% of Westland's oil and gas revenues, if any, from future leases which came into existence after the completion of the merger to either Westland's shareholders or a charitable trust.

merger agreement.  On September 20, 2006, Westland filed its Proxy with the SEC in connection with the Merger.

Between March and October 2006, the parties in the State Court engaged in motion practice and discovery, including the production of a hundred thousand pages of documents and the depositions of six Westland directors and certain third parties, including CBIZ Valuation Group, LLC, former Westland President Gil Cordova and Westland's securities counsel Thad Turk. Plaintiff Rael produced expert reports in October 2006.  On November 2, 2006, two business days before the shareholder meeting which would conclude voting on the Merger, the State Court issued a one-page order granting the Initial *Rael* Defendants' motion to dismiss, concluding that plaintiff Rael lacked standing, plaintiff's exclusive remedy was the right of appraisal, and plaintiff had failed to join an indispensable party.  Robbins Decl., ¶34.[8]

On November 3, 2006, plaintiff Lawrence Lane filed this federal class action asserting violations of §§14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").  Dkt. No. 1.  Plaintiff alleged that the Proxy being used to induce shareholder approval of the Merger was materially false and misleading.  That same day, plaintiff filed an emergency motion for a temporary restraining order ("TRO") to enjoin the shareholder vote and consummation of the Merger.  Dkt. No. 3.  After a lengthy five-hour argument and evidentiary hearing on the TRO, the Court denied the motion.  Dkt. No. 7; *see also* Robbins Decl., ¶42.

---

[8]      Plaintiff Rael subsequently appealed the State Court's dismissal order.  Robbins Decl., ¶¶35-37. On August 13, 2009, the New Mexico Court of Appeals reversed the lower court's ruling on the issues of standing, exclusivity and adequacy of appraisal pleadings, and failure to join parties. *Rael*, 2009 NMCA 123, 147 N.M. 306, 222 P.3d 678.

On November 6, 2006, both classes of outstanding shares of Westland stock voted in favor of the Merger, with more than the required two-thirds of each Class voting in favor of the Merger and those shares not voting counted as having been cast against ratification. The Merger closed on December 6, 2006.

On May 18, 2007, the Court appointed Mr. Lane as Lead Plaintiff and approved his selection of counsel, now known as Robbins Geller Rudman & Dowd LLP, as Lead Counsel. Dkt. No. 41. Thereafter, on September 17, 2007, Lead Plaintiff filed an amended complaint on behalf of all persons whose shares of Westland were purchased by SCC Acquisition Corp. in connection with the Merger Agreement against Westland, the Director Defendants, and certain SunCal Defendants, for disseminating an allegedly materially false and misleading proxy statement in violation of §§14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder ("Amended Complaint"). *See* Dkt. No. 50. On December 3, 2007, defendants filed motions to dismiss the Amended Complaint. *See* Dkt. Nos. 52, 53. Pursuant to the PSLRA, all proceedings were stayed during the pendency of defendants' motions to dismiss. On February 18, 2008 Lead Counsel filed an opposition to the motions to dismiss. *See* Dkt. No. 57. The Court heard oral argument on defendants' motions to dismiss on May 23, 2008.

In June 2008, the Settling Parties (except for the DESCO Defendants, who at the time were not parties to the Litigation) conducted a mediation session before a retired judge in California. The mediation was not successful.

On September 15, 2008, the Court granted in part and denied in part defendants' motions to dismiss. *See* Dkt. No. 81. On December 1, 2008, Lead Plaintiff filed an opposed motion, pursuant to the September 15, 2008 Order (Dkt. No. 81), to amend the Amended Complaint seeking, among other things, to add as defendants the DESCO Defendants. *See* Dkt. No. 105.

- 7 -

On January 5, 2009, Lead Plaintiff filed a motion for class certification. *See* Dkt. No. 117.[9]
Defendants opposed this motion on February 4, 2009. *See* Dkt. No. 141. On February 9, 2009, Lead
Plaintiff filed his Second Amended Complaint. *See* Dkt. No. 145. On February 5, 2009, certain
SunCal Defendants, Westland and the Director Defendants filed motions to dismiss the Second
Amended Complaint. *See* Dkt. Nos. 142, 143. On February 26, 2009, the DESCO Defendants filed
their motion to dismiss the Second Amended Complaint. *See* Dkt. No. 152. On April 3, 2009, the
Court heard oral argument on defendants' motions to dismiss. Dkt. No. 174. On June 30, 2009, the
Court issued an Opinion granting in part and denying in part these motions. *See* Dkt. No. 177.

On July 15, 2009, Lead Plaintiff filed an opposed motion to amend the Second Amended
Complaint. *See* Dkt. No. 176. On March 31, 2010, the Court issued an Order granting the motion to
amend. *See* Dkt. No. 199. On June 17, 2010, Lead Plaintiff filed the Third Amended Complaint.
*See*, *e.g.*, Dkt. No. 207. In July 2010, the Director Defendants, certain SunCal Defendants, and the
DESCO Defendants filed their respective answers to the Third Amended Complaint. *See* Dkt. Nos.
208, 209, 211, 212, 214.

On August 5, 2010, Lead Plaintiff re-filed his motion for class certification. *See* Dkt. No.
218. On August 6, 2010, the defendants filed Notice of Re-Filing Joint Opposition to Plaintiff's
Motion for Class Certification, in which they re-filed their Joint Opposition to Plaintiff's Motion for
Class Certification as originally filed. Dkt. No. 220. On September 7, 2010, Lead Plaintiff filed his
reply. *See* Dkt. No. 242. The Court held a hearing on October 12, 2010. Dkt. No. 259. On January
10, 2011, the Court granted the motion, certifying a class of all persons who held the outstanding

---

[9]    As a result of the pendency of defendants' opposition to Lead Plaintiff's motion to amend,
Lead Plaintiff's motion for class certification was withdrawn without prejudice to re-filing on March
30, 2010. *See* Dkt. No. 198.

680051_1

shares of Westland common stock as of the close of business on September 18, 2006, and certifying Lawrence Lane as class representative and the law firm now known as Robbins Geller Rudman & Dowd LLP as class counsel.  *See* Dkt. No. 284.  The same day, the Court granted Lead Plaintiff's motion to join certain SunCal Defendants, some of which had been named in the *Rael* state court action.  *See* Dkt. No. 283.

Between Summer 2010 and Spring 2011, Lead Plaintiff conducted extensive discovery, seeking documentary and testimonial evidence from defendants and certain third parties.  Lead Plaintiff deposed the Director Defendants as well as senior executives at Westland, individuals employed by or affiliated with certain SunCal Defendants and the DESCO Defendants.  In all, Lead Plaintiff conducted 38 fact witness depositions and received and reviewed over 250,000 pages of documentary evidence in the Litigation.  Lead Plaintiff also filed multiple motions to compel, motions for protective orders, and opposed similar motions filed by certain defendants.  Robbins Decl., ¶¶60, 61.

The Settling Parties began discussing in earnest the parameters of a resolution in early 2011.  On April 4, 2011, counsel for all Settling Parties met in Dallas, Texas in an effort to reach a global settlement of the Litigation.  Thereafter, negotiations to resolve the Litigation continued.  On May 20, 2011, the Settling Parties appeared before the Court and Westland requested that $2.2 million in unpaid shareholder proceeds from the Merger be placed in *custodia legis* and transferred to the Court registry to be overseen by the Court pending resolution of the Litigation.  On May 23, 2011, the Court permitted the transfer of these funds into the Court registry.  Dkt. No. 352.  On November 11, 2011, the Settling Parties confirmed their agreement to settle the Litigation as detailed in the Stipulation.  Robbins Decl., ¶¶68-72.

- 9 -

## III.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

### A.    Standards for Final Approval of Class Action Settlements

"It is well settled, as a matter of sound policy, that the law should favor the settlement of controversies." *Grady v. De Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969); *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910) ("Compromises of disputed claims are favored by the courts."). "In the class action context in particular, 'there is an overriding public interest in favor of settlement,'" because settlement of complex disputes "minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980) (citation omitted).

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of the settlement of the claims of a certified class.  "The authority to approve a settlement of a class . . . action is committed to the sound discretion of the trial court." *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (noting that district court's "decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants, and their strategies, positions and proof"). "In exercising its discretion, the trial court must approve a settlement if it is fair, reasonable and adequate." *Jones*, 741 F.2d at 324.  In the Tenth Circuit, the following factors are analyzed in determining whether this standard is met:

> (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.

- 10 -

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002); *Jones*, 741 F.2d at 324 (same).  As set forth herein and detailed in the Robbins Declaration, the Settlement is a favorable result for the Class and satisfies the *Rutter* factors.

### B.      The Settlement Was Fairly and Honestly Negotiated

Critical to any assessment of the merits of a settlement is whether the proposed settlement was fairly and honesty negotiated.  *Lucas v. Kmart Corp.*, 234 F.R.D. at 688, 693 (D. Colo. 2006). This factor has been emphasized by the Tenth Circuit and the facts and circumstances in this case support the Court's approval of the Settlement.  In fact, "[t]here are numerous indicia that the settlement negotiations in this case have been fair, honest and at arm's length."  *Id*.

"First, the parties to this litigation have 'vigorously advocated their respective positions throughout the pendency of the case.'"  *Lucas*, 234 F.R.D. at 693 (citation omitted).  As the Court is aware, this action has not only been pending since 2006, it has been hotly contested with over 360 docket entries over the course of the past five years.  The parties have extensively briefed numerous complex issues, including: (i) a request for a temporary restraining order and preliminary injunction; (ii) the appointment of a lead plaintiff and whether notice was properly published; (iii) two rounds of complex motions to dismiss, involving multiple grounds for dismissal by various defendants; (iv) an opposed motion to lift the PSLRA's discovery stay; (v) multiple opposed motions to amend; (vi) motions to strike affirmative defenses; (vii) a motion to join parties; and (viii) extensive discovery, including substantial motion practice requiring multiple motions to compel and motions for protective orders.  *See* Robbins Decl., ¶7.

Furthermore, the "settlement agreement itself took [many] months to negotiate, and came only after" a previous attempt at private mediation was unsuccessful in producing a settlement. *Lucas*, 234 F.R.D. at 693.  In addition, all parties were represented by "multiple counsel with

- 11 -

expertise on the [securities laws] and complex class action litigation." *Id.* These factors support the integrity of the parties' settlement negotiations.

Where, as here, "the settlement resulted from arm's length negotiations between experienced counsel after significant discovery had occurred, the Court may presume the settlement to be fair, adequate, and reasonable." *Lucas*, 234 F.R.D. at 693.

### C. Serious Questions of Law and Fact Existed that Created Significant Risk of Obtaining a More Favorable Result After Continued Litigation

"Although it is not the role of the Court at this stage of the litigation to evaluate the merits, it is clear that the parties could reasonably conclude that there are serious questions of law and fact that exist such that they could significantly impact this case if it were litigated." *Lucas*, 234 F.R.D. at 693-94. The Litigation here presented a panoply of complex factual and legal issues making a favorable outcome for the Class uncertain at best. As discussed herein and in the Robbins Declaration, prior to reaching the Settlement, Plaintiffs' Counsel had obtained sufficient information to weigh the benefits of the settlement against the risks of continued litigation.

Defendants strenuously and vigorously argued at every stage of the litigation that the Class's claims lacked merit and, even if the claims were meritorious, the Class did not suffer any economic harm. *See, e.g.*, Dkt. Nos. 52, 53, 62, 63, 142, 143, 152, 208, 209, 211, 212. Even though the Court largely denied Defendants' last round of motions to dismiss, "that ruling provides no guarantee that [plaintiff] will ultimately prevail on the merits." *McNeely v. Nat'l Mobile Health Care, LLC*, No. CIV-07-933-M, 2008 U.S. Dist. LEXIS 86741, at *36 (W.D. Okla. Oct. 27, 2008). For example, this Court denied a statute of limitations defense asserted by the DESCO Defendants at the motion to dismiss stage, but noted that Lead Plaintiff's "claims might ultimately be found untimely on summary judgment or during a trial down the road." *Lane v. Page*, 649 F. Supp. 2d 1256, 1304 (D.N.M. 2009).

- 12 -

Moreover, the parties vigorously contested whether the element of loss causation could be established here. *See, e.g.*, *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 343 (2005); *Lane v. Page*, 727 F. Supp. 2d 1214 (D.N.M. 2010). Indeed, the Supreme Court's decision in *Dura* and cases interpreting *Dura* have made proving loss causation more difficult. *In re Tyco Int'l, Ltd.,* 535 F. Supp. 2d 249, 260 (D.N.H. 2007) ("Proving loss causation would be complex and difficult."); *In re Oracle Corp. Sec. Litig.,* No. C 01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009) (court granted summary judgment in defendants' favor holding that shareholder plaintiffs failed to present sufficient evidence to establish loss causation). Here, the Merger was consummated at the very peak of a major real estate bubble in the United States, which subsequently burst. In addition, the action would be tried against the backdrop of the foreclosure on the former Westland property and financial demise of certain related entities. Indeed, subsequent appraisals of the Westland land showed a marked decrease in value since the closing of the Merger. If the jury or this Court agreed with defendants, Lead Plaintiff's §14(a) claims could have failed as a matter of either law or fact.[10]

The amount of damages incurred by Class Members would have also been hotly contested. At trial, the damage assessments of Lead Plaintiff's and defendants' experts were sure to vary substantially and in the end, this crucial element at trial would have been reduced to a "battle of experts." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) (approving settlement where "it is virtually impossible to predict with any

---

[10] Indeed, the district court in a recent securities class action case overturned a jury verdict in plaintiffs' favor on loss causation grounds. *See In re Apollo Group, Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008). While the plaintiffs ultimately prevailed on appeal to the Ninth Circuit, *see In re Apollo Group, Inc. Sec. Litig.*, No. 08-16971, 2010 U.S. App. LEXIS 14478 (9th Cir. June 23, 2010), this case illustrates the inherent uncertainties facing both plaintiffs and defendants at every stage of litigation.

- 13 -

certainty which testimony would be credited"); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 0165 (CM), 2007 WL 4115809, at *10 (S.D.N.Y. Nov. 7, 2007) ("The jury's verdict with respect to damages would depend on its reaction to the complex testimony of experts, a reaction which at best is uncertain."). "It is thus clear that there were numerous factual and legal questions yet to be addressed in this litigation that could have had a serious impact on the results for either side." *Lucas*, 234 F.R.D. at 694.

This factor also supports granting final approval of the Settlement.

### D. The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation

"If this case were to be litigated, in all probability it would be many years before it was resolved." *Lucas*, 234 F.R.D. at 694. The action has already been pending for five years. Many more months and significant costs would be required for the parties and Court to complete the pre-trial proceedings, including summary judgment, *Daubert* motions, and motions in limine. The Court's summary judgment decision(s) could have been appealed to the Tenth Circuit (and possibly beyond), which could have taken many years to complete. Assuming the parties proceeded through trial and a jury verdict, there is a possibility that the verdict could be reversed by this Court or on appeal. *See, e.g.*, *Apollo Group*, 2008 U.S. Dist. LEXIS 61995 (reversing jury verdict in plaintiffs' favor); *Apollo Group*, 2010 U.S. App. LEXIS 14478, at *2 (finding that the "district court erred in granting [defendants] judgment as a matter of law"); *see also In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 07-61542-CIV-UNGARO, 2011 U.S. Dist. LEXIS 48057 (S.D. Fla. Apr. 25, 2011) (reversing jury verdict in plaintiff's favor and granting defendants' post-trial motion for judgment as a matter of law).

Even if a jury verdict was rendered in favor of Lead Plaintiff and the Class, and was not subsequently overturned, post-trial collection efforts could take many more years of litigation. For

- 14 -

example, in *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, No. 02-C-5893 (N.D. Ill.), it took seven years of hard-fought litigation before lead counsel was able to have a trial date set in that case.  On May 7, 2009, the jury returned a verdict in lead plaintiff's favor on liability.  Because the damages claim was bifurcated from the liability phase, however, the parties are **still** litigating the case.  After more than a decade, and despite  a favorable jury verdict on liability, not a single class member has received a penny from the defendants.  Here, the lack of financial viability of key defendants would have rendered collection on a monetary judgment in Lead Plaintiff's favor even more difficult to ultimately obtain.

In sum, the ultimate resolution of this action on the merits at trial and appeal, and in turn, providing monetary compensation to injured Class Members, would likely be many years down the road, if at all.  *See, e.g.*, *Feerer v. Amoco Prod. Co.*, No. Civ. 95-0012 JC/WWD, 1998 U.S. Dist. LEXIS 22248, at *26 (D.N.M. May 28, 1998) (Conway, C.J.) (noting that if the case was not settled, trial would last for a month if not longer and "even if a favorable jury verdict had been obtained, inevitably an appeal would have followed and, conservatively, would have resulted in a delay of, at least, two years before any relief would have been available to the Class"); *see also Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002) ("To most people, a dollar today is worth a great deal more than a dollar ten years from now.").  In fact, it is distinctly possible that the $3.8 million currently available for Class Members by virtue of this Settlement would not exist in the future in light of the ever-changing economic realities the parties face.

"By contrast, the proposed settlement agreement provides the class with substantial, guaranteed relief" **now**.  *Lucas*, 234 F.R.D. at 694; *McNeely*, 2008 U.S. Dist. LEXIS 86741, at *37 (finding that class "is better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted").

- 15 -

An evaluation of the benefits of the Settlement must also be tempered by the recognition that any compromise involves concessions on the part of the Settling Parties.  Indeed, the very essence of a settlement agreement is compromise, "'a yielding of absolutes and an abandoning of highest hopes.'"  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).  Thus, this factor also weighs in favor of granting final approval.

### E.   The Recommendation of Experienced Counsel Weighs Heavily in Favor of Approval of the Settlement

"'Counsels' judgment as to the fairness of the agreement is entitled to considerable weight.'"  *Lucas*, 234 F.R.D. at 695 (citation omitted); *McNeely*, 2008 U.S. Dist. LEXIS 86741, at *37-*38 (same).  Here, Lead Counsel has significant experience and expertise in securities and other complex class action litigation and have negotiated numerous other class action settlements throughout the country.  *See* Exhibit A to the accompanying Declaration of Jeffrey D. Light Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Award of Attorneys' Fees and Expenses.  Lead Counsel used that expertise and experience to effectively prosecute this litigation, reaching a favorable result for Members of the Class.  Lead Counsel's judgment is that the Settlement is fair, reasonable, and adequate and warrants the Court's approval.  As such, this factor further supports granting final approval.

## IV.   THE ATTORNEYS' FEE AND EXPENSE PAYMENT SHOULD BE APPROVED

It is axiomatic that a "request for attorney's fees should not result in a second major litigation.  Ideally, of course, litigants will settle the amount of a fee."  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (Powell, J.).  Here, after negotiating the substantive terms of the Settlement, Lead Counsel and the Director Defendants D&O insurance carrier separately negotiated the fee and expense portion of the Settlement.  *See* Stipulation, ¶9.1.  The attorneys' fee and expense amount will not reduce the award to the Class.  *Id.*; *see also In re Resorts Int'l S'Holders Litig.*, Civ. A. No.

- 16 -

9470, 1990 WL 154154, at *6 (Del. Ch. Oct. 11, 1990) ("Significantly, the attorneys' fees will be borne directly by the [insurer] and not the class."). The $3.1 million fee and $650,000 expense amount here is fair and reasonable. First and foremost, the attorneys' fee negotiated between Lead Counsel and the Director Defendants' D&O insurance carrier represents a significant discount to the lodestar invested in this Litigation by Plaintiffs' Counsel. During the course of the prosecution of the Litigation, Plaintiffs' Counsel in the aggregate have devoted more than 18,000 hours of attorney and para-professional time resulting in a lodestar of $9.1 million. Therefore, the $3.1 million attorneys' fee represents a *negative* lodestar multiplier, or stated otherwise, a discount of more than 60% to the lodestar invested in this case.

Second, the attorneys' fee represents only 6% of the more than $51 million in cash consideration the Class Members directly benefitted from as a result of Plaintiffs' Counsel's efforts in the Litigation. This cash consideration includes the $2-$5 per share to be paid pursuant to the Settlement and the $60 per share in increased consideration received by Westland shareholders following the commencement of the State Actions in which plaintiffs alleged director self-dealing and failure to maximize shareholder value. These facts, combined with the fact that the attorneys' fee will not reduce the amounts received by the Class, weigh in favor of the Court approving the negotiated amount of attorneys' fees and expenses.

### A.   Consideration of the Relevant "*Johnson* Factors" Further Supports the Negotiated Attorneys' Fees and Expenses

An analysis of the relevant *Johnson* factors further confirms the reasonableness of the negotiated amount of attorneys' fees. The *Johnson* factors are: (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee –this is helpful but not determinative; (7) time limitations

imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Gottlieb v. Barry*, 43 F.3d 474, 482 n.4 (10th Cir. 1994). The Tenth Circuit has recognized that "'rarely are all of the *Johnson* factors applicable.'" *Uselton v. Commercial Lovelace Motor Freight*, 9 F.3d 849, 854 (10th Cir. 1993) (citation omitted).

Here, the applicable *Johnson* factors weigh heavily in favor of approving the award of attorneys' fees and reimbursement of expenses in this case.

### 1.    Time and Labor Involved

The time and labor invested to adequately and successfully prosecute this Litigation on behalf of the Class fully supports the negotiated amount of attorneys' fees. Plaintiffs' Counsel prosecuted the Litigation for more than five years on a contingency basis without payment and advanced all costs and expenses incurred on behalf of the Class without any assurance of a fee or even reimbursement for their expenses. The time devoted to this case and expenses incurred were substantial. Indeed, ***the negotiated fee amount is <u>less</u> than one-third of what Plaintiffs' Counsel invested in litigating the case over the past five years***. Moreover, Plaintiffs' Counsel have incurred expenses (and will likely incur additional expenses) in the prosecution of the Litigation against defendants an amount which exceed the requested $650,000 expense amount. These expenses were necessary for the successful prosecution of the Litigation for the benefit of the Class. As a result, the negotiated amount of expenses should be approved.

Plaintiffs' Counsels' efforts in the Litigation yielded substantial economic benefits to the Class. In addition to the monetary benefits  obtained as a result of the Settlement, which will result in an additional cash payment of between $2-$5 per share to the Class, the defendants acknowledge

- 18 -

that the existence of the *Rael* Action was a factor in the Westland Board's decision to waive the

Director Defendants' claim to 35,000 "change-in-control" shares, which had the effect of increasing

the consideration payable to Westland shareholders from $255 per share to $266.23 per share.  *See*

Stipulation, ¶5.2.  The Director Defendants also acknowledged that, in determining that SCC

Acquisition Corp.'s acquisition proposal(s) was a "superior proposal" to SHNM's acquisition

proposal(s), the Westland Board was aware of the *Rael* Action and its claims that the SHNM offer

significantly undervalued Westland.  *Id.*, ¶5.3.  The winning offer was $60 per share higher than the

$255 per share price offered by SHNM and agreed to by the Director Defendants on February 24,

2006.  *Id.*, ¶5.4.  Westland DevCo, LLC, as successor to SCC Acquisition Corp., was also aware of

the *Rael* Action and considered the allegations therein in connection with its May 23, 2006 $280 per

share offer, its June 6, 2006 $308 per share offer, and its June 30, 2006 $315 per share offer.  *Id.*,

¶5.5.  As the Supreme Court recognized in *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970) (Harlan,

J.), a "successful suit of this type, resulting in cancellation of the shares, does not bring a fund into

court or add to the assets of the corporation, but it does benefit the holders of the remaining shares

by enhancing their value."  *Id.* at 394.

For example, beyond the direct economic benefits received the Class, the Litigation yielded

significant non-economic benefits to the Class as well.  The Director Defendants also recognized that

the *Rael* Action was a factor in their decision to transfer the Santa Clara, San Jose de Armijo and

Evangelico cemeteries and the La Capillita Antiqua church to the Atrisco Heritage Foundation.  *See*

Stipulation, ¶5.2.

Plaintiffs' Counsel's efforts, as acknowledged by defendants, "rendered a substantial service

to the corporation and its shareholders."  *Mills*, 396 U.S. at 396.  "[P]rivate stockholders' actions of

this sort 'involve corporate therapeutics,' and furnish a benefit to all shareholders by providing an

- 19 -

important means of enforcement of the proxy statute." *Id*. (citation omitted). "To award attorneys' fees in such a suit to a plaintiff who has succeeded in establishing a cause of action is not to saddle the unsuccessful party with the expenses but to impose them on the class that has benefitted from them and that would have had to pay them had it brought the suit." *Id*. at 396-97.

In situations like this Litigation where the efforts of Plaintiffs' Counsel provides both substantial economic and non-economic benefits to the Class both pre- and post-merger, courts often assess the attorneys' fees as a percentage of any increase(s) in price to determine the fairness and reasonableness of the requested fee. *See In re Nationwide Fin. Servs. Litig.*, No. 2:08-CV-00249, 2009 U.S. Dist. LEXIS 126962, at *37-*38 (S.D. Ohio Aug. 18, 2009) (granting final approval to settlement and approving award of attorneys' fees and costs). Here, the final offer price of $315 per share was increased from $255 per share, a $60 difference. Multiplying the $60 per share value by the 794,927 Westland shares outstanding at the time of the Merger yields a total value of $47,695,620. Thus, the $3.1 million attorneys' fee amount represents 6% of the total cash benefit received by the Class, including the $3.8 million provided for in the Settlement. This percentage is below the 25%-33% range approved in similar securities class actions. *See generally Feerer*, 1998 U.S. Dist. LEXIS 22248.

Thus, the negative lodestar and less-than 10% percent-of-the-benefit received by the Class underscore the reasonableness of the negotiated fee and support the Court's approval of the attorneys' fee and expense amount.

### 2.     The Novelty and Difficulty of the Questions Raised by the Actions

There is no question that this Litigation was complex and raised significant legal and factual issues. As described in more detail in the Robbins Declaration, the parties fully briefed dozens of motions, including two rounds of full briefing on the defendants' motions to dismiss. The parties

680051_1

appeared before the Court on no less than 16 occasions, many of which were half or full-day hearings.

Some of the issues addressed over the course of the Litigation included: whether the statute of limitations terminated some of Lead Plaintiff's claims, whether Lead Plaintiff would be able to establish loss causation, and whether the Class suffered actual damages by accepting $315 per share, or a 1,500% premium to its pre-merger price. Plaintiffs' Counsel also addressed the issue of whether appraisal was the sole remedy afforded to shareholders challenging an unfair merger price under New Mexico law, and ultimately prevailed on this novel issue in the New Mexico Court of Appeals.

The novelty and difficulty of the questions presented in this Litigation support the attorneys' fee and expense amount.

### 3. The Skill Required to Perform the Legal Services Properly and the Experience and Reputations of Plaintiffs' Counsel

A "high degree of skill was required of [Plaintiffs'] Counsel, both from a legal and factual point of view." *Feerer*, 1998 U.S. Dist. LEXIS 22248, at *30. "In regard to legal issues, [Plaintiffs'] Counsel had to possess the requisite skill to obtain certification of the Class in the face of vigorous opposition by the Defendants." *Id.*; *Lane v. Page*, 272 F.R.D. 558, 577 (D.N.M. 2011) (noting that "Lane has also engaged qualified, experienced, and capable attorneys for this type of litigation"); *see also* Robbins Decl., ¶93. "Likewise, it took a great deal of skill to analyze the Class claims from a legal perspective, prepare and present those claims to the Court, and to respond to numerous dispositive motions filed by the Defendants." *Feerer*, 1998 U.S. Dist. LEXIS 22248, at *30; *Lane*, 272 F.R.D. at 577 (noting that Lead Counsel had "successfully defended the large majority of [Lead Plaintiff's] claims against the Defendants' motions to dismiss"); Robbins Decl., ¶7.

"In addition, [Plaintiffs'] Counsel also had to ensure that adequate and complete discovery was obtained throughout the course of the case in the face of numerous objections to discovery by the Defendants."  *Feerer*, 1998 U.S. Dist. LEXIS 22248, at *30-*31; Robbins Decl., ¶¶60-61. Defendants were also "represented by well known and respected national and local law firms." *Feerer*, 1998 U.S. Dist. LEXIS 22248, at *31.  "Given the high quality of the opposition, there was simply no way that this case could have been prosecuted successfully without a high level of skill exhibited on the part of [Plaintiffs'] Counsel." *Id.*  Indeed, the ability of Plaintiffs' Counsel to obtain favorable pre- and post-merger results for the Class in the face of such formidable opposition confirms the quality of the Class's representation.

As a result, Plaintiffs' Counsel's experience, skill, and acumen support the attorneys' fee and expense amount.

### 4. The Preclusion of Other Employment by Attorneys Due to Acceptance of the Case

The time spent by Plaintiffs' Counsel on the Litigation was at the expense of time counsel could have devoted to other matters.  Accordingly, to the extent applicable, this factor supports the negotiated fee and expense amount.

### 5. Whether the Fee Is Fixed or Contingent

Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. *See Feerer*, 1998 U.S. Dist. LEXIS 22248, at *33 (noting that "[s]uch a large investment of money [and time] placed incredible burdens upon [plaintiffs' counsel's] law practices and should be appropriately considered").  Plaintiffs' Counsel undertook this matter on a contingent basis with the expectation that they would have to devote substantial hours to the prosecution of this Litigation without any assurance of a fee or payment of their expenses.  In doing so, Plaintiffs' Counsel assumed a significant risk that the Litigation would

- 22 -

yield no recovery and leave them uncompensated for their efforts on behalf of the Class. Unlike counsel for defendants, who have been paid an hourly rate and paid their expenses on a regular basis since the inception of this Litigation in 2006, Plaintiffs' Counsel have not been compensated for any time since the Litigation began more than five years ago. Moreover, Plaintiffs' Counsel also expended more than $650,000 in connection with the prosecution of the Litigation.

Because the fee in this matter was entirely contingent, the only certainties were that there would be no fee without a successful result and that such a successful result would be realized only after considerable and difficult effort. Plaintiffs' Counsel committed substantial resources of both time and money to the vigorous and successful prosecution of the Litigation for the benefit of the Class. In view of the skill of defendants' counsel and the legal and factual difficulties of this Litigation, the risk of never being compensated was real.

The contingent nature of Plaintiffs' Counsel's representation strongly favors approval of the attorneys' fee and expense amount.

### 6.    The Amount Involved and the Results Obtained

Courts consistently recognize that the result achieved is a major factor to be considered in awarding a fee. *Hensley*, 461 U.S. at 436 ("most critical factor is the degree of success obtained"). As discussed herein and detailed in the Robbins Declaration, the Litigation has provided substantial economic and non-economic benefits to the Class. The substantial benefits achieved for the Class fully support the attorneys' fee and expense amount.

### 7.    The Experience, Reputation, and Ability of Plaintiffs' Counsel

In approving Lead Plaintiff's selection of the attorneys with Robbins Geller as Lead Counsel in 2007, this Court noted that "the members of the class will receive high caliber legal representation" from the attorneys with Robbins Geller. *Lane v. Page*, 250 F.R.D. 634, 647 (D.N.M.

- 23 -

2007); *see also Lane*, 272 F.R.D. at 577 (finding at the class certification stage that Lead Plaintiff had "engaged qualified, experienced, and capable attorneys for this type of litigation").  Few plaintiffs' law firms could have devoted the kind of time, skill, and financial resources over a five-year period necessary to achieve the pre- and post-Merger benefits obtained for the Class here. Furthermore, Lead Counsel successfully litigated this matter against some of the most respected defense law firms in the country.  In this regard, the attorneys' fee and expense amount should be deemed reasonable.

### 8.    The Undesirability of the Case

It is notable that, at the lead plaintiff stage, not a single motion was filed by any other Class Member or law firm seeking to represent the Class.  *See generally Lane*, 250 F.R.D. at 646.  Thus, but for Lead Plaintiff and his counsel stepping forward to represent the Class, it is likely that none of the benefits the Class received as a result of the Litigation would have been achieved.

### 9.    The Customary Fee and Awards in Similar Cases

Because the attorneys' fees and expenses were negotiated at arm's length by sophisticated parties with extensive experience in complex shareholder litigation, the negotiated amount mirrors the private marketplace, a result encouraged by the courts.  *See In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) (market factors best known by the negotiating parties themselves, should determine the quantum of attorneys' fees); *see also Robles v. Brake Masters Sys., Inc.*, No. Civ. 10 0135 JB/WPL, 2011 U.S. Dist. LEXIS 14432, at *55 (D.N.M. Jan 31, 2011) ("'Fees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingent fee basis.'") (quoting *Cimarron Pipeline Constr., Inc. v. Nat'l Council on Comp. Ins.*, No. CIV 89-822-T, 1993 WL 355466 at *2 (W.D. Okla. June 8, 1993)).

- 24 -

## B.     The Requested Expense Award Under the PSLRA for Lawrence Lane Should Be Approved

Under the PSLRA, the Court may also award "reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." *See* 15 U.S.C. §78u-4(a)(4).  Lead Plaintiff requests payment of $4,725.  Mr. Lane devoted some 270 hours to the oversight of, and participation in, this action, including reviewing pleadings, preparing for and giving his deposition, complying with defendants' discovery requests, and consulting with counsel.  Courts "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *30 (S.D.N.Y. Oct. 24, 2005); *Varljen v. H.J. Meyers & Co.*, No. 97 CIV. 6742 (DLC), 2000 U.S. Dist. LEXIS 16205, at *14 n.2 (S.D.N.Y. Nov. 8, 2000). Lead Plaintiff was highly involved in the litigation.  He attended nearly every Court hearing and almost every deposition that took place in New Mexico.[11]

Additionally, Lead Counsel advised the Class in both the Notice and the Summary Notice of its intention to request $4,725 for Mr. Lane for his service as Lead Plaintiff and Class Representative.  Dkt. No. 366, Ex. A-1 at 8, Ex. A-2 at 2; *compare Robles*, 2011 U.S. Dist. LEXIS 14432, at *5 ("The Notice made no mention of an [expense] award to Robles.").  And, any expense award will not reduce the amount available to Class Members.  Dkt. No. 366, Ex. A-1 at 8, Ex. A-2 at 2.  Moreover, the modest award requested is also justified as Mr. Lane stepped forward and

---

[11]     A handful of other depositions took place in New York and California, which Mr. Lane did not attend.

became a named representative when other class representatives were not forthcoming.  *See UFCW Local 880 – Retail Food v. Newmont Mining Corp.*, 352 Fed. Appx. 232, 235 (10th Cir. 2009). Here, Mr. Lane was the only Class Member who timely moved the Court for appointment as Lead Plaintiff.

In light of the extraordinary commitment to fulfilling his fiduciary duties to the Class as Lead Plaintiff and Class Representative, the Court should approve the modest award to Mr. Lane.

## V.     CONCLUSION

After more than five years of extensive, complex and vigorous litigation, both pre- and post-Merger, a settlement has been reached that is fair, reasonable, and in the Class's best interests.  As a result of their significant contribution in both time and out-of-pocket expenses over five years, Plaintiffs' Counsel also seeks Court approval of their modest and reasonable fee and expense payment.  The Court should grant Final Approval of the Settlement.

Date:  January 27, 2012                    Respectfully submitted,

                                    ROBBINS GELLER RUDMAN
                                      & DOWD LLP
                                    DARREN J. ROBBINS
                                    JEFFREY D. LIGHT
                                    DAVID W. MITCHELL
                                    BRIAN O. O'MARA
                                    ROBERT R. HENSSLER JR.
                                    DANIELLE S. MYERS


                                            s/ Darren J. Robbins
                                    _____
                                        DARREN J. ROBBINS

                                    655 West Broadway, Suite 1900
                                    San Diego, CA  92101
                                    Telephone:  619/231-1058
                                    619/231-7423 (fax)

                                    Lead Counsel for Plaintiff

- 26 -

LAW OFFICES OF NICHOLAS
   KOLUNCICH III, LLC
NICHOLAS KOLUNCICH III
6501 Americas Parkway NE
One Park Square – Suite 820
Albuquerque, NM  87110
Telephone:  505/881-2228
505/881-4288 (fax)

Liaison Counsel

KENDALL LAW GROUP, LLP
JOE KENDALL
3232 McKinney Avenue, Suite 700
Dallas, TX  75204
Telephone:  214/744-3000
214/744-3015 (fax)

JOHNSON & WEAVER, LLP
FRANK J. JOHNSON
110 West "A" Street, Suite 750
San Diego, CA  92101
Telephone:  619/230-0063
619/255-1856 (fax)

*Additional Counsel for Plaintiffs*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 27, 2012, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on January 27, 2012.

         s/ Darren J. Robbins
         DARREN J. ROBBINS

         ROBBINS GELLER RUDMAN
            & DOWD LLP
         655 West Broadway, Suite 1900
         San Diego, CA  92101-3301
         Telephone:  619/231-1058
         619/231-7423 (fax)

         E-mail:  darrenr@rgrdlaw.com

# Mailing Information for a Case 1:06-cv-01071-JB-ACT

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Christopher W. Ahart**
  ahartc@gtlaw.com

- **Yusuf A. Bajwa**
  bajway@gtlaw.com,worshamj@gtlaw.com,bryankat@gtlaw.com

- **Randall J Baron**
  rbaron@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Paul R. Bessette**
  bessettep@gtlaw.com,worshamj@gtlaw.com,daviskg@gtlaw.com,cisnerosc@gtlaw.com,auslitdock@gtlaw.com

- **Jacqueline E. Davis**
  jedavis@hollandhart.com,rsougstad@hollandhart.com,intaketeam@hollandhart.com

- **Kimberly G. Davis**
  daviskg@gtlaw.com,worshamj@gtlaw.com,bryankat@gtlaw.com

- **Paul M. Fish**
  pfish@modrall.com,michelle@modrall.com

- **Juan L Flores**
  jflores@stelznerlaw.com,jd@stelznerlaw.com,jgarcia@stelznerlaw.com

- **Jay D Hertz**
  jdh@sutinfirm.com,njf@sutinfirm.com

- **Joe Kendall**
  jkendall@kendalllawgroup.com,administrator@kendalllawgroup.com,hlindley@kendalllawgroup.com

- **Nicholas Koluncich**
  nkoluncich@newmexicoclassactions.com,lisay@newmexicoclassactions.com

- **John D. Lovi**
  jlovi@steptoe.com

- **Frank Martin**
  rsandoval@branchlawfirm.com

- **Kristina Martinez**
  kemartinez@rothsteinlaw.com,lstroud@rothsteinlaw.com

- **David W. Mitchell**
  davidm@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Danielle S. Myers**
  dmyers@rgrdlaw.com,e_file_sd@rgrdlaw.com,lmix@rgrdlaw.com

- **Brian K Nichols**
  bkn@modrall.com,doloress@modrall.com

- **Brian O. O'Mara**
  bomara@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Michelle M. Oliver**
  moliver@steptoe.com

- **Michelle Ostrye**
  mko@sutinfirm.com,njf@sutinfirm.com,tlr@sutinfirm.com

- **Darren J Robbins**
  e_file_sd@rgrdlaw.com

- **Lara E. Romansic**
  lromansic@steptoe.com

- **Richard A Sandoval**
  Rick@richardsandovallawoffice.com

- **Douglas G Schneebeck**
  dschneebeck@modrall.com,victoriaa@modrall.com,jlovi@steptoe.com,ericp@modrall.com

- **Mark F. Sheridan**
  msheridan@hollandhart.com,rsougstad@hollandhart.com,intaketeam@hollandhart.com

- **Andrew J. Simons**
  ajs@sutinfirm.com,amp@sutinfirm.com

- **Jesse Z. Weiss**
  weissjz@gtlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Lani A Adler
K&L Gates LLP
599 Lexington Avenue
New York, NY 10022-6030
```